DOWNEY BRAND LLP
TORY E. GRIFFIN (Bar No. 186181)
MEGHAN M. BAKER (Bar No. 243765)
555 Capitol Mall, Tenth Floor
Sacramento, CA  95814-4686
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
mbaker@downeybrand.com
tgriffin@downeybrand.com

Attorneys for Defendants GAULT SOUTH BAY,
INC. and ROBERT GAULT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEPUY ORTHOPAEDICS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GAULT SOUTH BAY, INC., a California<br>Corporation, and ROBERT GAULT,<br><br>    Defendants. | Case No.  C:07-cv-05897-JW<br><br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT OF MOTION**<br>**FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  April 7, 2008<br>Time:  9:00 a.m. |

902674.2

1

# TABLE OF CONTENTS

2

**Page**

3   I.     INTRODUCTION ............................................................................................................1

4   II.    BACKGROUND ............................................................................................................3

        A.    The Parties ..........................................................................................................3

5       B.    The Agreement ....................................................................................................4

6       C.    DePuy's Termination of the Agreement, the Covenant Not to Compete and
              the Resulting Legal Actions ...............................................................................5

7       D.    The California Action ..........................................................................................6

8       E.    The Indiana Action .............................................................................................6

9       F.    The Northern District of Indiana Transfers the Indiana Action to this Court ........7

        G.    Proceedings in this Court Since the Transfer of the Indiana Action......................7

10  III.   STANDARD OF REVIEW .............................................................................................9

11  IV.    LEGAL ARGUMENT ....................................................................................................9

12      A.    Indiana Law Follows the Choice-of-Law Test Set Forth in Restatement §
              187...................................................................................................................10

13      B.    Under the Restatement § 187 Test, California Law Applies to the Question
              of Whether the Covenant Not to Compete is Enforceable, Notwithstanding

14            the Provision in the Agreement Stating That Indiana Law Applies ...................15

15            1.    California has a Materially Greater Interest than Indiana ......................15

16            2.    Enforcement of the Covenant Not to Compete Would be Contrary
                    to the Well-Established Public Policy of the State of California ............16

17            3.    Two California Cases are Right on Point, and Hold that California
                    Law Applies to Invalidate a Covenant Not to Compete,

18                  Notwithstanding a Choice-of-Law Provision Stating that Another
                    State's Law Applies..........................................................................18

19  V.     CONCLUSION ............................................................................................................20

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

Page

## CASES

*ABF Capital Corp. v. Grove Properties Co.*
    126 Cal.App.4th 204, 216 (2005) ...................................................................................18

*Advanced Bionics Corp. v. Medtronic, Inc.*
    29 Cal.4th 697, 706 (2002) .........................................................................................17

*Allen v. Great American Reserve Ins. Co.*
    766 N.E.2d 1157, 1162 (Sup. Ct. Ind. 2002) ............................................... 11, 14

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 248 (1986) .............................................................................................9

*Application Group, Inc. v. Hunter Group, Inc.*
    61 Cal.4th 881, 900-02 (1998) ............................... 2, 3, 10, 15, 16, 18, 19, 20

*Austin Powder Co. v. Wallwork*
    761 F. Supp. 612, 615-17 (S.D. Ind. 1990) ................................................. 11, 13

*Bosley Medical Group v. Abramson*
    161 Cal.App.3d 284, 288 (1984) ................................................................... 10, 17

*Celotex Corp. v. Catrett*
    477 U.S. 317, 323 (1986) .............................................................................................9

*Cohoon v. Fin. Plans & Strategies, Inc.*
    760 N.E.2d 190, 194 (Ind. Ct. App. 2001) ...............................................................9

*D'Sa v. Playhut, Inc.*
    85 Cal.App.4th 927, 933 (2000) ...............................................................................17

*Davis v. Advanced Care Technologies*
    2007 WL 2288298, at *7-8 (E.D. Cal. August 8, 2007 ........................... 2, 3, 16, 19

*Dearborn v. Everett J. Prescott, Inc.*
    486 F.Supp.2d 802 (S.D. Ind. 2007) ............................................. 13, 14, 16, 18

*Gordon Termite Control v. Terrones*
    84 Cal.App.3d 176, 178 (1978) .................................................................................17

*Hill Medical Corp. v. Wycoff*
    86 Cal.App.4th 895, 900-901 (2001) .................................................... 9, 10, 17

*Homer v. Guzulaitis*
    567 N.E.2d 153, 156 (App. Ct. Ind. 1991) .............................................................11

*Kelton v. Stravinski*
    138 Cal.App.4th 941, 946 (2006) .............................................................................17

*KGB, Inc. v. Giannoulas*
    104 Cal.App.3d 844, 848 (1980) ...............................................................................17

*Kolani v. Gluska*
    64 Cal.App.4th 402, 405-07 (1998) .........................................................................17

*Licocci v. Cardinal Associates, Inc.*
    445 N.E.2d 556, 561 (Ind. S.Ct. 1983) ......................................................................9

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
475 U.S. 574, 586-587 (1986) ...................................................................9

*Metro Traffic Control, Inc. v. Shadow Traffic Network*
22 Cal.App.4th 853, 859 (1994) ...............................................................17

*Muggill v. Reuben H. Donnelley Corp.*
62 Cal.2d 239, 242-243 (1965)..................................................................17

*Nedlloyd Lines B.V. v. Superior Court*
3 Cal.4th 459, 464 (1992) ...................................................................18, 19

*Piper Aircraft Co. v. Reyno*
454 U.S. 235, 243 n.8, 102 S.Ct. 252 (1981) ...........................................10

*South Bay Radiology Medical Associates v. Asher*
220 Cal.App.3d 1074, 1080 (1990)...........................................................10

*South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*
572 F. Supp. 209, 212 (N.D. Ind 1983)...............11, 12, 13, 14, 16, 18

*Strategix, Ltd. v. Infocrossing West, Inc.*,
142 Cal.App.4th 1068 (2006) ....................................................................18

*Sullivan v. Savin*
560 F. Supp. 938, 939-40 (N.D. Ind. 1983)..............................................12

*United Rentals v. Pruett*
296 F.Supp.2d 220 (D. Conn. 2003) ...........................................16, 18, 20

*VL Systems, Inc. v. Unisen, Inc.*
152 Cal.App.4th 708 (2007) .....................................................................18

*Wright-Moore Corp. v. Ricoh Corp.*
908 F.2d 128, 132 (7th Cir. 1990)..............................................................14

**STATUTES**

28 U.S.C. § 1404(a) ................................................................... 1, 7, 10

28 U.S.C. § 1406 ...............................................................................6

28 U.S.C. § 2201 .............................................................................11

California Business & Professions Code Section 16600 (formerly Civ. Code
§1673)......................................................................... 10, 16, 17

California Business & Professions Code Section 16601 ...........................10

California Business & Professions Code Section 16602 ...........................10

California Business & Professions Code Section 16602.5...........................10

**RULES**

Federal Rule of Civil Procedure 12(b)(3)..........................................6

Federal Rule of Civil Procedure 56.................................................3, 9

Local Rule 3-12 ...............................................................................7

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

**OTHER AUTHORITIES**

4

Restatement (Second) of Conflict of Laws § 187 ................................................................ *passim*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

Defendant Gault South Bay, Inc. ("GSB") sold products in a defined California territory for Plaintiff DePuy Orthopaedics, Inc. ("DePuy"). The parties' relationship was governed by a sales representative agreement (the "Agreement"). The Agreement, which DePuy terminated on August 24, 2007, contains a broad covenant not to compete purporting to prohibit both GSB and its owner, defendant Robert Gault ("Gault"), from competing with DePuy for one year after such termination. Several of DePuy's claims against GSB and Gault are predicated in whole or in part of the validity of this covenant not to compete.

DePuy has its headquarters in Indiana, while GSB is a California corporation and Gault a long-time California resident. In Indiana, covenants not to compete are generally enforceable to the extent they are reasonable in scope. California, in contrast, has long declared covenants not to compete void as a matter of law except in very limited circumstances not applicable here. Thus, if California law applies here, the covenant not to compete is invalid. DePuy knows this, which is why its standard form agreement, like the one it required GSB to sign, contains a provision stating that Indiana law applies.

The question on this motion for partial summary judgment is whether a company doing business in California, such as DePuy, should be allowed to circumvent California's long-standing and unwavering public policy prohibiting covenants not to compete by simply requiring its employees or contractors in California to sign a standard agreement designating the law of another state as the applicable law. Stated differently, the question is whether the Indiana choice-of-law provision should be disregarded in light of California's strong public policy against covenants not to compete.

To answer this question, the court must apply the appropriate choice-of-law rules. Because this action was transferred from the Northern District of Indiana to this court under 28 U.S.C. § 1404(a), the court must apply the choice-of-law test under Indiana law. As it turns out however, Indiana applies the exact same test as California, and follows the Restatement (Second) of Conflict of Laws § 187 (hereinafter "Restatement § 187"). Under that test, a contractual choice-of-law provision is ignored when application of the law of the chosen state (here, Indiana)

1   would be contrary to a fundamental policy of a state (here, California) which has a materially

2   greater interest than the chosen state in the determination of the particular issue.

3       Under the Restatement § 187 analysis, the court must reject the Indiana choice-of-law

4   provision insofar as DePuy claims that such provision operates to validate the covenant not to

5   compete.  First, California certainly has a materially greater interest than Indiana in the

6   enforceability of the covenant not to compete at issue here.  GSB's performance of the

7   Agreement was to take place entirely in California.  Indeed, the gravamen of DePuy's complaint

8   is that GSB and Gault allegedly solicited *California doctors* and *California sales representatives*

9   in *California* and is allegedly wrongfully competing with DePuy *in California*.  In addition, the

10  Agreement was negotiated and signed in California.  GSB and Gault did not report to any DePuy

11  employee in Indiana, but rather were supervised by and reported directly to DePuy's territory

12  manager in Northern California.  The only meaningful connection with Indiana is that DePuy has

13  its headquarters there.

14      Second, under well-established California law, the covenant not to compete DePuy seeks

15  to enforce is directly contrary to California's strong public policy.  *See, e.g., Application Group,*

16  *Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 900-02 (1998).

17      Two California cases are directly on point.  In those cases—one from the California Court

18  of Appeal and one from the Eastern District of California—the court performed the Restatement

19  § 187 analysis and concluded that California's strong public policy against covenants not to

20  compete trumped the parties' choice of law.  *Application Group, Inc.*, 61 Cal.App.4th at 901-02

21  (declining to apply Maryland law to a non-compete agreement despite a choice-of-law provision

22  because California's policy regarding non-competes is "strong" and outweighs Maryland's

23  interest regarding the same); *Davis v. Advanced Care Technologies*, 2007 WL 2288298, at *7-8

24  (E.D. Cal. August 8, 2007) (rejecting Connecticut choice-of-law provision and finding covenant

25  not to compete invalid).  Because Indiana follows the same Restatement § 187 choice-of-law

26  analysis utilized in these cases, these California authorities are highly persuasive if not binding on

27  this court sitting in diversity.  While the relevant Indiana cases do not deal with covenants not to

28  compete under California law, they do deal with the enforceability of a covenant not to compete

902674.2                                        2

1    in the face of a contractual choice-of-law provision. The analysis in those cases is entirely

2    consistent with *Application Group* and *Davis*, and demand the same result.

3         GSB and Gault are entitled to move for summary judgment on all "or any part" of a claim

4    against them. Fed. R. Civ. P. 56. Based on the undisputed material facts, the court can only

5    conclude that the covenant not to compete is invalid as a matter of law. Accordingly, GSB and

6    Gault are entitled to partial summary judgment on DePuy's claims against them to the extent

7    DePuy's claims are predicated on such covenant not to compete.

8                              II. **BACKGROUND**

9    A.    **The Parties**

10        DePuy claims it is an Indiana company, with headquarters in Warsaw, Indiana. (Request

11   for Judicial Notice, Ex. A (Complaint), at ¶ 1.) DePuy manufactures, sells and distributes various

12   orthopedic products and instruments. (*Id.*, at ¶ 7.) DePuy is a subsidiary of Johnson & Johnson,

13   a New Jersey corporation. (*See* Declaration of Tory E. Griffin ("Griffin Decl."), at Ex. A (listing

14   DePuy as a subsidiary of Johnson & Johnson) and Ex. B (Johnson & Johnson Restated Certificate

15   of Incorporation).)

16        DePuy has been registered to business in California since 1992. (Griffin Decl., Ex. C.)

17   DePuy maintains four offices in California, in Emeryville, Hawthorne, Costa Mesa and San

18   Diego. (*See* Griffin Decl., Ex. D (list of California offices from DePuy website).) Prominently

19   displayed at the bottom of the homepage of DePuy's website is a link to "California Health Care

20   Compliance Information," which links to a lengthy "Declaration for California Compliance Law."

21   (*See* Griffin Decl., Ex. E.)

22        Gault is a resident of California and has resided there continuously since 1968. (*See*

23   Declaration of Robert Gault ("Gault Decl."), at ¶ 2.) Gault resides with his wife and four

24   children. (*Id.*) Gault works in California, and has done so continuously and exclusively for

25   nearly 40 years. (*Id.*) Gault served as the President, sole shareholder, and sole employee of GSB,

26   a California corporation formed for the specific business purpose of allowing Gault to perform

27   sales activities on behalf of DePuy. (*Id.*, at ¶ 3.)

28

**B.    The Agreement**

In November of 2006, GSB entered into an agreement with DePuy whereby GSB agreed to act as the independent sales representative for DePuy products in a designated California territory (the "Agreement").  (Request for Judicial Notice, Ex. A, at ¶ 15 & Ex. A; Gault Decl., at Ex. A.)  The negotiations leading up to this Agreement occurred in California between Gault (on behalf of GSB) and Brad LaPoint ("LaPoint"), a DePuy employee from DePuy's Emeryville, California office.  (Gault Decl., at ¶ 4.)

Gault signed the Agreement (on behalf of GSB) in California.  (Gault Decl., at ¶ 5.) LaPoint signed the Agreement as DePuy's "Territory General Manager Northern California." (Gault Decl., Ex. A, at p.10; Griffin Decl., Ex. F, at 8:8-23 (9/17/07 Hearing Transcript of Proceedings before Judge Miller in the Northern District of Indiana).)  LaPoint's territory extends "just past Monterey to the south and up just to Eureka to the north."  (Griffin Decl., Ex. E, at 9:2-6.)  LaPoint resides in California and his office is located in Emeryville, California.  (*Id.*, at 38:10-13.)  LaPoint does not have an office in Warsaw, Indiana.  (*Id.*, at 35:11-12.)  DePuy's "Pacific Area Director" for the West also signed the Agreement on behalf of DePuy.  (Gault Decl., Ex. A, at p. 10; Griffin Decl., Ex. F, at 11:24-13:12.)

The only address for DePuy on the Agreement is a California address associated with DePuy's office in Emeryville, California.  (Gault Decl., Ex. A, at p.1.)  Indeed, LaPoint described the agreement as being between GSB and his "office" in California.  (Griffin Decl., Ex. F, at 11:24-12:4.)

GSB's customers were located in the Santa Clara Valley and the Peninsula area.  (Gault Decl., at ¶¶ 6-7.)  The list of customers assigned to GSB under the Agreement included 20 hospitals, all of which are located in California.  (*See* Request for Judicial Notice, Ex. B (Affidavit of Bradford C. LaPoint, filed September 11, 2007, at ¶ 13 & Ex. B thereto; Griffin Decl., Ex. F, at 37:20-38:9.)  GSB's customers also included numerous surgeons, all of whom are located in California.  (Gault Decl., at ¶¶ 6-7.)

While operating under the Agreement, Gault (on behalf of GSB) reported directly to LaPoint.  (Gault Decl., at ¶ 9.)  Gault estimates that ninety-five percent (95%) of his

1   communications with DePuy in connection with the Agreement took place in California with

2   DePuy's Emeryville, California office.  (*Id.*)

3   **C.    DePuy's Termination of the Agreement, the Covenant Not to Compete and the
            Resulting Legal Actions**

4

5          On August 24, 2007, Gault received a letter from LaPoint dated August 23, 2007

6   indicating that DePuy was terminating the Agreement effective August 24, 2007.  (Gault Decl., at

7   ¶ 10 & Ex. B.)  The termination letter, like the Agreement, listed DePuy's business address as

8   being in Emeryville, California.  (Gault Decl., Ex. B.)

9          The Agreement contains an extremely broad covenant not to compete following

10  termination of the Agreement.  (Gault Decl., Ex. A, at p.9.)  It provides, in pertinent part:

11              Contractor agrees that, if this Agreement is terminated for any
                reason, that for a period of one (1) year after termination of the
12              Agreement, that neither Contractor nor any of its employees,
                independent contractors, or agents who were involved in the
13              representation or sale of the Products, will, without DePuy's prior
                written consent, accept a position with a competitor of DePuy,
14              which involves direct or indirect sales of competitive products in
                the same Territory or sales to the same accounts covered by the
15              Agreement or engage, directly or indirectly in the sales of
                competitive products or in competitive activities as described
16              above.

17  (*Id.*)

18         The Agreement also includes a provision that purports to limit the ability of GSB

19  employees and independent contractors (such as Gault himself) from competing with DePuy,

20  notwithstanding the fact that they are not parties or signatories to the Agreement.  The Agreement

21  states, in pertinent part:

22              Contractor may hire its own employees or contract with other
                individuals or entities to assist Contractor in the performance of its
23              duties hereunder, which employees, individuals or entities shall be
                solely Contractor's responsibility and shall be compensated solely
24              by Contractor.  Contractor agrees that any such employees,
                individuals or entities will not be subject to DePuy's approval or
25              supervision, but will be bound by the same DePuy and Johnson &
                Johnson guidelines, policies and procedures, the non-compete
26              provisions and all other provisions of this agreement to which
                Contractor is subject.

27

28  (*Id.*, at p. 2.)

1    The termination of the Agreement by DePuy obviously raises issues as to whether the

2    non-compete provisions are valid and enforceable against GSB and/or Gault.  These issues were

3    raised in two separate actions—one filed by Gault and GSB in California (the "California

4    Action") and the other filed two weeks later by DePuy in Indiana (the "Indiana Action").

5    **D.    The California Action**

6    On August 24, 2007, after receiving the letter from DePuy terminating the Agreement,

7    Gault and GSB filed the California Action against DePuy in the Superior Court of California,

8    County of Santa Clara.  In that suit, Gault and GSB seek a judicial determination regarding the

9    validity and enforceability of the non-compete provisions in the Agreement.  (Request for Judicial

10    Notice, Ex. C, at ¶ 18.)  Specifically, GSB and Gault ask the court to declare the non-compete

11    provisions void, invalid and contrary to California law due to the strong public policy against

12    agreements restricting an individual from employment in his or her chosen trade or profession.

13    (*Id.*, at ¶ 14.)  In addition, GSB and Gault seek an injunction prohibiting the enforcement of the

14    provisions in the Agreement that purport to restrict their ability to complete with DePuy.  (*Id.*, at

15    ¶¶ 19-20.)

16    On September 10, 2007, DePuy removed the California Action to this court on the basis of

17    diversity jurisdiction.  (Request for Judicial Notice, Ex. D.)  That related case, Case No. C 07-

18    4659-JW, is also before this court.

19    DePuy subsequently moved to dismiss the California Action for improper venue under

20    Federal Rule of Civil Procedure 12(b)(3), or alternatively, to transfer the action to Indiana under

21    28 U.S.C. § 1406.

22    **E.    The Indiana Action**

23    On September 11, 2007, two weeks after Gault and GSB filed the California Action,

24    DePuy filed the mirror-image Indiana Action against Gault and GSB in the United States District

25    Court, District of Indiana.  (Request for Judicial Notice, Ex. A.)  In the Indiana Action, DePuy

26    alleges, among other things, that GSB breached the covenant not to compete in the Agreement by

27    going to work for DePuy's competitor after DePuy terminated the Agreement.  (*Id.*, at ¶¶ 21, 23,

28    30.)  DePuy further alleges various claims against both GSB and Gault, including claims for (1)

902674.2                                    6

1   "tortious interference with contractual relationship" against Gault, (2) tortious interference with

2   customer relationships against both Gault and GSB, (3) breach of duties owed to DePuy against

3   both Gault and GSB, and (4) unfair competition against both Gault and GSB.  These additional

4   claims appear to be based, in part, on the alleged violation of the covenant not to compete after

5   DePuy terminated the Agreement on August 24, 2007.  Based on these allegations, DePuy seeks

6   monetary damages and injunctive relief preventing Gault and GSB from further competing with

7   DePuy.  (*Id.*, at ¶¶ 31, 37, 42, 46, 53.)

8        On September 24, 2007, Gault and GSB moved to transfer the Indiana Action to this court

9   under 28 U.S.C. 1404(a), or alternatively, to stay the Indiana Action pending resolution of the

10  California Action.

11  **F.**    **The Northern District of Indiana Transfers the Indiana Action to this Court**

12       On November 13, 2007, the Northern District of Indiana issued an order transferring the

13  Indiana Action to this court.  (Request for Judicial Notice, Ex. E, at 24-25.)  In support of its

14  transfer decision, the court found that venue was proper in this court and that transfer to this court

15  would be more convenient for third party witnesses, would provide better access to documents

16  and other sources of proof, and would serve the interests of justice.  (*Id.*, at 18-24.)

17       In reaching its decision, the Northern District of Indiana acknowledged the mirror-image

18  California Action, noting that both cases involved "the same parties" and "the same legal and

19  factual issues." (*Id.*, at 23.)   The court reasoned that transferring the action to this court—the

20  venue of the California Action—would promote judicial efficiency and, to some degree, reduce

21  the risk of inconsistent judgments.  (*Id.*, at 24.)  Significantly, the court also found that California

22  had a greater interest in the outcome of the litigation because "[i]ts citizens are more closely

23  related to and interested in the dispute as DePuy seeks to restrict a California resident from

24  pursuing his livelihood in the state of California," and because "[m]ost of the material events . . .

25  occurred in California and concern California residents." (*Id.*)

26  **G.**    **Proceedings in this Court Since the Transfer of the Indiana Action**

27       On December 7, 2007, following a case management conference, the court related the

28  California Action and the Indiana Action under Local Rule 3-12.  (Request for Judicial Notice,

902674.2

7

1   Ex. F.)  The court further set a supplemental briefing schedule on the issue of whether the two

2   actions ought to be consolidated.  (*Id.*)  Moreover, noting the threshold issue of law forming the

3   basis of both actions—the enforceability of the covenant not to compete—the court tentatively set

4   a hearing date of February 25, 2008 for a motion for partial summary judgment on that issue.[1]

5        The court has not yet ruled on DePuy's motion to dismiss/transfer in the California Action

6   or on the issue of consolidation.  Certain issues raised in *this* motion, however, are relevant to the

7   court's determination on these issues.  Specifically, in DePuy's supplemental briefing on the

8   consolidation issue, DePuy argued that the choice-of-law analysis was different under Indiana law

9   and California law, and therefore argued that consolidation of the two actions was inappropriate.

10  While Gault and GSB did not have an opportunity to respond to DePuy's supplemental brief on

11  the consolidation issue under the briefing schedule set by the court, Gault and GSB note that

12  DePuy's claim that the choice-of-law analysis under Indiana law is different than under California

13  law is simply wrong, and borders on intentionally misleading.  As will be seen below, both states

14  follow the Restatement § 187 analysis, thus negating DePuy's primary argument against

15  consolidation.

16       Nevertheless, because the court has yet to rule on DePuy's motion in the California

17  Action, it does not appear the motion for partial summary judgment contemplated by the court

18  would be procedurally proper in *that* action at this time.  The instant motion, therefore, is directed

19  only to the claims alleged by DePuy in the Indiana Action.  Should the court later deny DePuy's

20  motion to dismiss/transfer, Gault and GSB will raise the same arguments raised herein in a

21  subsequent motion for summary judgment directed to the claims in the California Action.  As a

22  practical matter, however, because the choice-of-law analysis is the same, the outcome of this

23  motion will necessarily dictate the outcome of any future motion for summary judgment in the

24  California Action.

25

26

27  [1] Gault and GSB did not notice this motion for the February 25, 2008 date because of a conflict on the trial calendar for Gault and GSB's lead attorney in this action.  (Griffin Decl., at ¶ 8.)  In light of this conflict,

28  Gault and GSB confirmed with DePuy counsel that an April 7, 2008 hearing date was acceptable.  (*Id.*)

1

## III.  STANDARD OF REVIEW

2      Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to

3   "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to

4   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

6   of law."  *See* Fed. R. Civ. Proc. 56(b), (c).  Material facts are those that may affect the outcome of

7   the case.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a

8   material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict

9   for the nonmoving party.  *See id.*  In cases where the opposition evidence is merely "colorable" or

10  "not significantly probative," the court can grant summary judgment.  *Id.* at 249-50.

11     The moving party bears the initial responsibility of informing the district court of the basis

12  for its motion and identifying those portions of the pleadings, depositions, interrogatory answers,

13  admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of

14  material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a motion

15  for summary judgment "may not rest upon the mere allegations or denials of [that] party's

16  pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  *See*

17  Fed. R. Civ. Proc. 56(e); *see also Liberty Lobby*, 477 U.S. at 250.  "When the moving party has

18  carried its burden under Rule 56(c), its opponent must do more than simply show that there is

19  some metaphysical doubt as to the material facts….  Where the record taken as a whole could not

20  lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"

21  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

22

## IV.  LEGAL ARGUMENT

23     Under Indiana law, covenants not to compete are valid if they serve legitimate interests

24  and are reasonable in terms of scope, geography, and scope of activity.  *See Licocci v. Cardinal*

25  *Associates, Inc.*, 445 N.E.2d 556, 561 (Ind. S.Ct. 1983); *Cohoon v. Fin. Plans & Strategies, Inc.*,

26  760 N.E.2d 190, 194 (Ind. Ct. App. 2001).

27     In contrast, California has settled public policy in favor of open competition.  *Hill Medical*

28  *Corp. v. Wycoff*, 86 Cal.App.4th 895, 900-901 (2001) (citing cases).  "California codified its

902674.2                                          9

1  public policy and rejected the common law 'rule of reasonableness' in 1872, upon the enactment

2  of the Civil Code." *Id.*; *see Bosley Medical Group v. Abramson*, 161 Cal.App.3d 284, 288

3  (1984). California Business & Professions Code Section 16600 (formerly Civ. Code § 1673)

4  provides that, subject to limited exceptions, "every contract by which anyone is restrained from

5  engaging in a lawful profession, trade, or business of any kind is to that extent void." This

6  provision "sets out the general rule in California—covenants not to compete are void." *Hill*, 86

7  Cal.App.4th at 901 (citing *South Bay Radiology Medical Associates v. Asher*, 220 Cal.App.3d

8  1074, 1080 (1990). Under this well-settled law, "[i]t is quite clear that a covenant prohibiting a

9  California employee from working for a competitor after termination of his or her employment

10  violates section 16600" except in two limited circumstances not present here.[2] *Application*

11  *Group*, 61 Cal.App.4th at 895.

12     This material difference between California and Indiana law is relevant here because the

13  Agreement contains a choice-of-law provision. It reads: "Both parties agree that Indiana law

14  shall govern and interpret this appointment and the relationship between the parties…" (Gault

15  Decl., Ex. A, at p. 9.) Thus, the determinative issue on this motion is whether this choice-of-law

16  provision governs the question of whether the covenant not to compete in the Agreement is valid

17  and enforceable. If California law applies notwithstanding the choice-of-law provision, the

18  covenant not to compete is invalid and the court must grant the motion.

19  **A.    Indiana Law Follows the Choice-of-Law Test Set Forth in Restatement § 187**

20     Because this action was transferred from the Northern District of Indiana pursuant to 28

21  U.S.C. § 1404(a), this court must apply the choice-of-law test under Indiana law to the question

22  presented by this motion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8, 102 S.Ct. 252

23  (1981) (after transfer under 28 U.S.C. § 1404(a), transferee court "must apply the choice-of-law

24  rules of the State from which the case was transferred").

25  / / /

26

27     [2] The narrow exceptions to this general rule are set forth in Business & Professions Code §§
   16601, 16602, and 16602.5. Note of these exceptions apply here.

28

1    DePuy addressed the choice-of-law issue in conjunction with its argument against

2  consolidation of this action with the California Action.  In its December 14, 2007 brief to this

3  court, DePuy argued:

> Indiana choice of law doctrine favors contractual stipulations as to governing law.  [citations].  There is no reason here to disregard that presumption.  Accordingly, the contractual provision that Indiana law governs the construction of the contract is controlling on the choice of law issue."  *Allen v. Great American Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Sup. Ct. Ind. 2002); *see also Homer v. Guzulaitis*, 567 N.E.2d 153, 156 (App. Ct. Ind. 1991) ("When the parties to a contract agree on the law which should control the contract, we will give effect to their agreement").

9  (Request for Judicial Notice, Ex. G, at 8.)

10    DePuy misleadingly told the court only half the story.  While DePuy is correct that

11  Indiana courts may often uphold contractual choice-of-law provisions, DePuy omitted from its

12  argument the rules under Indiana law for where a choice-of-law provision may be disregarded.

13  DePuy cited *those* rules in its *first* brief in this court—in the context of the California Action—in

14  an attempt to convince the court that it should not stay the Indiana Action pending resolution of

15  the California Action.  DePuy argued:

> The parties' agreed forum, Indiana, provides a remedy to Plaintiffs to pursue their alleged grievances.  Plaintiffs are free to pursue a declaratory relief action in Indiana. See 28 U.S.C. § 2201. **Plaintiffs are free to argue to the court in Indiana that the choice of Indiana law in the Agreement should be disregarded and California law should apply instead.  *See South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F. Supp. 209, 212 (N.D. Ind. 1983) ("[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied…unless either, (a) … there is no …reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which…would be the state of the applicable law in the absence of an effective choice of law by the parties")**; *see also Austin Powder Co. v. Wallwork*, 761 F. Supp. 612, 615-17 (S.D. Ind. 1990) (examining covenants not to compete under the laws of two states to decide whether the public policy of the first state outweighed the public policy of the second state in choice of law determination).

27  (Request for Judicial Notice, Ex. H, at p.17 (emphasis added in part, emphasis in original in

28  part).)  So, it appears the choice-of-law test advocated by DePuy changes as necessary to suit

1   DePuy's desires in the context of the particular motion.

2           As it turns out, DePuy's first articulation of the rule is correct, and the one contained in its

3   December 14, 2007 brief to this court is incorrect.  As the *South Bend* case cited by DePuy

4   demonstrates, Indiana law follows the Restatement § 187.[3]   Under the Restatement § 187, a

5   state's public policy interest overrides a contractual choice-of-law provision when application of

6   the law of the chosen state "would be contrary to a fundamental policy of a state which has a

7   materially greater interest than the chosen state in the determination of the particular issue and

8   which…would be the state of the applicable law in the absence of an effective choice of law by

9   the parties."[4]   *South Bend,* 572 F.Supp. at 212-13; *see also Sullivan v. Savin*, 560 F. Supp. 938,

10  939-40 (N.D. Ind. 1983) (holding that "Restatement, Second, Conflicts of Law § 187 is

11  applicable" when parties have contractually "chosen the state law to be applied").

12          In at least three cases, federal courts in Indiana have applied the Restatement § 187 test to

13  the issue of whether a contractual choice-of-law clause controlled the issue of whether a covenant

14  not to compete was enforceable.  In *South Bend*, the court recognized that the parties' contract

15  clearly selected Illinois law, but found that Indiana law would apply if Illinois law would be

16  "contrary to the fundamental policy of Indiana" and if Indiana "has the most significant

17  relationship to the parties involved."  *South Bend*, 572 F.Supp. at 212.  Specifically, the court

18  _____

19  [3] California follows the exact same test.  (*See* Section IV.B.3, *infra*.)

20  [4] The relevant section of the Restatement (Second) Conflicts of Laws is Section 187(2), which reads, in
    pertinent part:

21
22              (2) The law of the state chosen by the parties to govern their contractual
                rights and duties will be applied, even if the particular issue is one which
23              the parties could not have resolved by an explicit provision in their
                agreement directed to that issue, unless either,

24              (a) the chosen state has no substantial relationship to the parties or the
25              transaction and there is no other reasonable basis for the parties' choice, or

26              (b) application of the law of the chosen state would be contrary to a
                fundamental policy of a state which has a materially greater interest than
27              the chosen state in the determination of the particular issue and which,
                under the rule of § 188, would be the state of the applicable law in the
28              absence of an effective choice of law by the parties.

1    made a "two pronged inquiry." *Id.* It asked first whether Indiana has a "materially greater

2    interest" in the transaction and the parties, and second, would enforcement of the restrictive

3    covenant be "contrary to the public policy of the State of Indiana?" *Id.*

4         The court concluded that the state of Indiana had the "most significant contacts" with the

5    transaction and parties involved. *Id.* at 212-13. The court then found that, under Indiana law, the

6    restrictive covenant was unenforceable because it was too broad, and thus the Illinois choice-of-

7    law provision was invalid:

8              The restrictive covenant at issue is in clear violation of public
               policy and contrary to the well established law of this state…Since
9              the preferred policy of this state is unalterably opposed to the
               enforcement of this covenant, in any degree or manner, 2
10             Restatement 187(2)(b) would apply and consequently, this cause
               will be governed by Indiana law [despite the contractual choice of
11             law provision selecting Illinois law].

12   *Id.* at 213-14.

13        The court in *Austin Powder Co. v. Wallwork et al.*, 761 F. Supp 612 (S.D. Ind. 1990),

14   applied the same test, but reached a different result based on the facts of that case. There, the

15   federal district court in Indiana was presented with the issue of whether the parties' contractual

16   choice of Ohio law governed the question of whether a particular covenant not to compete was

17   enforceable. The court held it was "obligated to accept the intent of the parties unless the public

18   policy interests of this state outweigh those of the state chosen by the parties involved." *Id.* at

19   616 (citing *South Bend*, 572 F. Supp. at 212, and Restatement § 187). The *Austin Powder* court

20   went on to weigh both the Ohio public policy regarding covenants not to compete and the Indiana

21   public policy on that same issue. *Id.* at 616-17. Under both states' law, two years was a

22   reasonable time for such a covenant. *Id.* The court concluded that the covenant was consistent

23   with Indiana law, thus no reason existed to override the parties' choice of Ohio law. *Id.* at 617.

24        Finally, and most recently, the Southern District of Indiana followed the choice-of-law

25   test articulated in *South Bend* and applied in *Austin Powder. Dearborn v. Everett J. Prescott,*

26   *Inc.*, 486 F.Supp.2d 802 (S.D. Ind. 2007). In *Dearborn*, the contract at issue designated Maine

27   law as the applicable law. *Id.* at 807. The issue was whether the covenant not to compete should

28   be held invalid under Indiana law because it was too broad, notwithstanding the designation of

902674.2                                          13

Maine law in the contract.  The court began its analysis by noting that contractual choice-of-law

provisions are generally enforceable under Indiana law.  *Id.* at 811-12 (citing *Allen*, 766 N.E.2d at

1162).  Consistent with the ruling in *South Bend*, the court then stated an exception to this general

rule—"But Indiana will not enforce a contractual provision, including a choice of law provision,

if enforcement would be contrary to Indiana's public policy."  *Id.* at 812 (citing cases).  Applying

the Restatement § 187 test, and examining the public policy of Indiana law, the court concluded

that "overly broad covenants not to compete" were contrary to Indiana public policy.  *Id.* at 816-

17.  The court then determined that Indiana had a materially greater interest in the litigation than

Maine because (1) the plaintiff was an Indiana resident, (2) the plaintiff was employed in Indiana,

(3) Indiana was the center of gravity of the employment relationship at issue, (4) the plaintiff

visited Maine only occasionally, (5) nearly all of the plaintiff's customers were in Indiana, (6) the

plaintiff's employer was in Indiana, and (7) Indiana was the site of the activity which the

defendant sought to enjoin.  *Id.* at 818.  In contrast, Maine's only connection to the lawsuit was

that the defendant company was headquartered in Maine and would presumably benefit from

enforcement of the broad covenants not to compete.  *Id.*  The court concluded: "On balance,

Indiana has a materially greater interest in this litigation than Maine, so that Indiana courts could

and would apply Indiana public policy to bar enforcement to of the choice of law provision."  *Id.*

The court found its decision "consistent with Section 187 of the Restatement (Second) of

Conflicts of Law," and with the decisions in *South Bend* and in several other cases.  *Id.* at 819.

The Seventh Circuit confirmed the Indiana analysis utilized in the above cases.  *Wright-*

*Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 132 (7th Cir. 1990).  In *Wright-Moore*, the court

ignored a choice-of-law provision designating New York law.  *Wright-Moore,* 908 F.2d at 132.

The Seventh Circuit stated that because "New York's only connection to this litigation is that the

defendant is incorporated in New York," and because one party was "incorporated and located in

the state of Indiana," "its witnesses and documents are there," and the contract was negotiated and

performed there, Indiana franchise law was held to govern.  *Id.*

As demonstrated below, application of Indiana's choice-of-law test from the above cases

compels the conclusion that California law applies here, notwithstanding the contractual choice of

1    Indiana law.

2    **B.    Under the Restatement § 187 Test, California Law Applies to the Question of
        Whether the Covenant Not to Compete is Enforceable, Notwithstanding the
3        Provision in the Agreement Stating That Indiana Law Applies**

4        **1.    California has a Materially Greater Interest than Indiana**

5        California's interest in this litigation is great. "California has [an] interest in protecting its

6    employers and their employees from anticompetitive conduct by out-of-state employers."

7    *Application Group*, 61 Cal.App.4th at 901. GSB is a California corporation, and Gault has

8    resided in California for nearly 40 years. *All* of the alleged actions that are the subject of the

9    lawsuit or give rise to DePuy's claims took place in California. Indeed, GSB's performance of

10   the Agreement was to take place *entirely* in California, with GSB's customers being surgeons

11   who reside and work in a designated territory in California and hospitals located in that territory.

12   Gault (on behalf of GSB) reported to a DePuy employee located in California. The Agreement

13   was negotiated and executed in California.

14       Moreover, the relevant witnesses are nearly all located in California. (Gault Decl., at ¶¶

15   7-9, 11.) In fact, each and every surgeon identified by DePuy's witness at the TRO proceedings

16   in Indiana as allegedly having conversations relevant to the allegations in this case, including Drs.

17   Steve Woolson, John Lannin, Ed Littlejohn and Terrence Delaney, reside and practice medicine

18   in California. (Id., at ¶ 11; Griffin Decl., Ex. F, at 25:2-26:9; 34:24-35:10; *see* Request for

19   Judicial Notice, Ex. B, at ¶¶ 21-24.) Additionally, each and every sales representative whom

20   DePuy's witness testified purportedly possesses knowledge regarding Gault's supposed wrongful

21   conduct, including Craig Frey, Candice Polich, John Angileri, Mike Olmes and Eulis Haselden,

22   work and reside in California. (Gault Decl., at ¶ 8; Griffin Decl., Ex. F, at 23:13-16; 26:10-22;

23   Request for Judicial Notice, Ex. B, at ¶ 20.)

24       Finally, DePuy does extensive business in California, maintains four offices there, is

25   subject to jurisdiction there and therefore resides in California for venue purposes under 28

26   U.S.C. 1391(c). (Griffin Decl., Exhs. C, D.)

27       In contrast, Indiana's interest in this litigation is slight. Even though DePuy's corporate

28   headquarters are located in Indiana, its Emeryville, California office is the one involved in this

1    dispute.  Both the Agreement and the letter terminating the Agreement list DePuy's sole business

2    address as being in Emeryville, California.  (Gault Decl., Exhs. A-B.)  At the TRO hearing in

3    Indiana in this matter, DePuy's only witness was flown in from California in order to testify on

4    DePuy's behalf.  (*See* Griffin Decl., Ex. F.)  In this case, all roads lead back to California.

5         Based on these undisputed facts, the cases discussed above make clear that California has

6    a materially greater interest in this litigation than does Indiana.  *Dearborn*, 486 F.Supp.2d at 816-

7    19; *South Bend*, 572 F.Supp. at 212-13; *see also United Rentals v. Pruett*, 296 F.Supp.2d 220 (D.

8    Conn. 2003) (California has materially greater interest than Connecticut on ultimate decision

9    regarding enforceability of non-compete provision where the impact of the litigation "will be felt

10   entirely in California").

11        Indeed, based on these same facts, the district court in Indiana *in this case* already ruled

12   that California had a greater interest in the outcome of the litigation because "[i]ts citizens are

13   more closely related to and interested in the dispute as DePuy seeks to restrict a California

14   resident from pursuing his livelihood in the state of California," and because "[m]ost of the

15   material events . . . occurred in California and concern California residents."  (Request for

16   Judicial Notice, Ex. E, at p. 24.)

17        These facts also make clear that, absent a choice-of-law provision, California law would

18   apply.  *See South Bend*, 572 F.Supp. at 212-14 (applying Indiana law under test set forth in

19   Restatement § 187(2)(b) where Indiana was the state having the "most significant contacts with

20   the transaction and the parties involved"); *Davis*, 2007 WL 2288298, at *8-9 (finding that

21   because the most significant contacts were with California, and the alleged breach occurred in

22   California, California law would apply in the absence of a valid choice-of-law provision).

23        The only question, therefore, is whether the covenant not to compete in the Agreement is

24   contrary to California's public policy.  It clearly is, and so the choice-of-law provision must be

25   ignored and California law applied.

26        **2.    Enforcement of the Covenant Not to Compete Would be Contrary to the
             Well-Established Public Policy of the State of California**

27

28        Business & Professions Code Section 16600 reflects a "strong public policy" of the State

1   of California.  *Application Group*, 61 Cal.App.4th at 900.  California's public policy is "to ensure

2   that every citizen shall retain the right to pursue any lawful employment and enterprise of their

3   choice."  *Hill*, 86 Cal.App.4th at 901 (citing *Metro Traffic Control, Inc. v. Shadow Traffic*

4   *Network*, 22 Cal.App.4th 853, 859 (1994)); *see Kelton v. Stravinski*, 138 Cal.App.4th 941, 946

5   (2006); *D'Sa v. Playhut, Inc.*, 85 Cal.App.4th 927, 933 (2000); *KGB, Inc. v. Giannoulas*,104

6   Cal.App.3d 844, 848 (1980).

7        In light of this strong public policy, "California courts have held that the interests of the

8   employee in his own mobility and betterment are deemed paramount to the competitive business

9   interests of the employers. . . ."  *Id.*.  The "law protects Californians, and ensures that every

10  citizen shall retain the right to pursue any lawful employment and enterprise of their choice."

11  *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal.4th 697, 706 (2002) (quoting *Metro Traffic*

12  *Control*, 22 Cal.App.4th at 859).  Stated differently, "California has a strong interest in protecting

13  its employees from noncompetition agreements under section 16600."  *Id.*

14       True to the mandate of Section 16600, California courts consistently have held a variety of

15  noncompetition agreements invalid.  *See, e.g., D'Sa*, 85 Cal.App.4th at 930-931 (agreement not to

16  render services to any person or entity in connection with competing products for one year is

17  invalid); *Metro Traffic Control*, 22 Cal.App.4th at 859-860  (covenant by traffic reporters not to

18  provide traffic reporting services or related activities); *Kolani v. Gluska*, 64 Cal.App.4th 402,

19  405-07 (1998) (prohibition on competing with employer for one year within a 40-mile radius or

20  soliciting former employer's past, current, or potential customers); *Bosley Medical Group*, 161

21  Cal.App.3d at 292 (agreement by physician not to open a competitive practice).

22       California's public policy behind Section 16600 is so strong that even contractual

23  provisions prohibiting less than all competition have been declared invalid.  *Any* covenant that

24  penalizes an employee for competing with a former employer is invalid under Section 16600.

25  *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242-243 (1965) (forfeit of pension

26  benefits if retiree worked for competitor); *Gordon Termite Control v. Terrones*, 84 Cal.App.3d

27  176, 178 (1978) (contract requiring a former employee to pay $ 50 per account if he solicited

28  former customers).

1    Finally, the fact that the contract at issue here was between two corporations does not alter

2   the analysis.  The plain language of Business & Professions Code § 16600 applies to "every"

3   contract where anyone is restrained from engaging in a profession or trade.  Indeed, California

4   courts have routinely applied Section 16600 to disputes between two corporate entities.  *See VL*

5   *Systems, Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708 (2007); *Strategix, Ltd. v. Infocrossing West,*

6   *Inc.*, 142 Cal.App.4th 1068 (2006).

7    Under these authorities, there can be no doubt that the covenant not to compete contained

8   in the Agreement is invalid under California law.

9    Accordingly, because California has a materially greater interest in this litigation, and

10  because enforcement of the covenant not to compete would be violate California's longstanding

11  public policy against such provisions, the court must disregard the parties' choice of Indiana law

12  for purposes of determining whether the covenant not to compete is enforceable.  *Dearborn*, 486

13  F.Supp.2d at 816-19 (ignoring choice-of-law provision and holding covenant not to compete

14  invalid); *South Bend*, 572 F.Supp. at 212-13 (same); *see United Rentals*, 296 F.Supp.2d at 232-33

15  (same).

16   **3.    Two California Cases are Directly on Point, and Hold that California Law**
        **Applies to Invalidate a Covenant Not to Compete, Notwithstanding a Choice-**
17      **of-Law Provision Stating that Another State's Law Applies**

18   Two California cases are directly on point.  In those cases, the California courts applied

19  California's choice-of-law test to determine whether a covenant not to compete was

20  unenforceable.  These cases are highly instructive, if not binding, because California's choice-of-

21  law test is the same as Indiana's.  California, like Indiana, applies the Restatement § 187 to

22  determine whether choice-of-law provisions are valid.  *Nedlloyd Lines B.V. v. Superior Court*, 3

23  Cal.4th 459, 464 (1992)("[i]n determining the enforceability of arm's-length contractual choice-

24  of-law provisions, California courts shall apply the principles set forth in Restatement section

25  187"); *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal.App.4th 204, 216 (2005) (citing

26  Restatement § 187).  Utilizing this same Restatement § 187 analysis as applied in the Indiana

27  cases cited above, these California courts each invalided a covenant not to compete on the ground

28  that such covenant was contrary to California's strong public policy, even though the contract at

902674.2                                    18

1    issue in those cases designated another state's law as controlling.

2         In *Application Group*, the California Court of Appeal invalidated a contractual provision

3    prohibiting competition for one year after termination of the employment agreement.  The

4    contract stated it was to be governed by Maryland law, which permitted covenants not to compete

5    so long as they were reasonable in scope and duration.  *Application Group*, 61 Cal.App.4th at

6    887.  The court nevertheless declined to apply Maryland law, and found the covenant not to

7    compete invalid under California law.  The court, utilizing the Restatement § 187 approach

8    adopted by the California Supreme Court in *Nedlloyd Lines B.V.*, 3 Cal.4th at 464-66, found that

9    (1) California had a "materially greater interest" than Maryland, (2) Maryland's law permitting

10   certain covenants not to compete was contrary to a fundamental public policy of the State of

11   California, and (3) California's interests would be more seriously impaired if its policy were

12   subordinated to the policy of Maryland.  *Id.* at 896-902.  The court therefore found the covenant

13   not to compete invalid.  *Id.* at 902.  To hold otherwise "would have been to allow an out-of-state

14   employer/competitor to limit employment and business opportunities in California."  *Id.*

15        Recently, the Eastern District of California reached the same decision in *Davis*, 2007 WL

16   2288298.  In *Davis*, the court granted summary judgment for the employee, rejected a

17   Connecticut choice-of-law provision, and found the covenant not to compete invalid under

18   California law.  *Id.* at *7-8.  To reach this conclusion, the court, like the court in *Application

19   Group* and like the courts in the Indiana cases cited in Section IV.A, *supra*, applied the

20   Restatement § 187 test to determine whether to ignore the choice-of-law provision in the contract.

21   *Id.* at *4.  The court concluded that California had a "materially greater interest" than Connecticut

22   and would be "more seriously impaired by enforcement of the parties' contractual choice of law

23   provision" because (1) the plaintiff resided in California, (2) worked out of California for both his

24   past and present employer, (3) was responsible for sales in the western region of the United

25   States, including California, but not Connecticut, (4) reported to supervisors in Arizona and

26   Colorado, not Connecticut, and (5) the defendant corporation did business nationwide and had its

27   headquarters in Connecticut.  *Id.* at *7-8.  Finally, the court found that because the most

28   significant contacts in the case were with California, and the alleged breach occurred in

1  California, California law would apply in the absence of a valid choice-of-law provision. *Id.* at

2  *8-9.  Accordingly, the court held: "California law is applicable to this dispute.  As such, the

3  court holds that the Non-Competition Agreement is invalid and unenforceable as a matter of law.

4  The agreement violates California's well-settled public policy prohibiting covenants not to

5  compete." *Id.* at *9.

6          A recent federal decision from the District of Connecticut is also on point, and reached the

7  same conclusion as did the above California courts.  *United Rentals*, 296 F.Supp.2d at 230-33

8  (because California had a strong public policy against non-compete provisions, and had a

9  materially greater interest than Connecticut in the outcome of the litigation, California law

10  applied to the question of whether a covenant not to compete was valid, even though the contract

11  specified Connecticut law as being applicable).

12          The facts before the court here are nearly identify to the facts in *Application Group* and

13  *Davis*.  As in those cases, an out-of-state employer (DePuy) is seeking to restrict the ability of a

14  California employee (Gault) to compete.  Moreover, as in those cases, the impacts of any such

15  restriction on competition will be felt entirely in California.  Thus, as in those cases, California

16  law applies notwithstanding the choice-of-law provision, and the covenant not to compete must

17  be declared invalid.  Again, no reason not to follow these cases exist, since the courts in these

18  cases followed the Restatement § 187 choice-of-law test—the exact same test required by Indiana

19  law to be applied to this motion.  In fact, because Indiana and California follow the same

20  Restatement § 187 test, the *Application Group* case is binding on this court.

21          In any event, once the court concludes that California law applies, the court, sitting in

22  diversity, is bound to follow California law on the issue of the enforceability of the non-compete

23  provision.  Under California law, as demonstrated above, the covenant not to compete is

24  unenforceable as a matter of law.

25                            **V.  CONCLUSION**

26          Despite the somewhat complicated procedural history, the actual issue before the court on

27  this motion is simple—should an out-of-state employer be able to circumvent California's strong

28  public policy against covenants not to compete by simply forcing the employee to sign a contract

1  designating another state's law as being applicable?  Under Indiana's choice-of-law test, the

2  answer is equally as simple—no.  California by far has the greater interest in the enforceability of

3  the covenant not to compete at issue here, and enforcing the covenant not to compete would run

4  directly counter to California's strong, unwavering public policy.

5      Indeed, three courts, two from California, have looked at this exact issue based on similar

6  underlying facts.  Each of those courts concluded that California law invalidated the covenant not

7  to compete, even in the face of a choice-of-law clause stating that some other state's law applied.

8  Those courts all utilized the same choice-of-law test utilized by Indiana courts applying Indiana

9  law.  Accordingly, the result in this case should not and cannot be any different from the result in

10  the other cases addressing the exact same issue.

11      Gault and GSB are therefore entitled to partial summary judgment.

12  DATED:  February 13, 2008                DOWNEY BRAND LLP

14                                By:_____/s/ Tory E. Griffin_____

15                                        TORY E. GRIFFIN
                                        Attorney for Defendants
16                                    GAULT SOUTH BAY, INC. and ROBERT
                                            GAULT