Mark A. Neubauer (No. 73728)
Rebecca Edelson (No. 150464)
Carla A. Veltman (No. 223910)
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA  90067
Telephone:     (310) 734-3200
Facsimile:     (310) 734-3300
Email: mneubauer@steptoe.com
Email: redelson@steptoe.com
Email: cveltman@steptoe.com

Attorneys for Plaintiff
DEPUY ORTHOPAEDICS, INC.,
an Indiana corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEPUY ORTHOPAEDICS, INC., an Indiana corporation,<br><br>               Plaintiff,<br><br>GAULT SOUTH BAY, INC. a California Corporation, and BOB GAULT, an individual,<br><br>               Defendants. | CASE NO. 5:07-cv-05897-JW<br><br>**PLAINTIFF DEPUY ORTHOPAEDICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**<br><br>The Honorable James Ware, Ctrm 8<br><br>Date:      April 28, 2008<br>Time:     9:00 a.m.<br>Place:    Courtroom 8<br>           280 South 1st Street<br>           San Jose, CA 95113 |

1

**Table of Contents**

2

**Page**

3

I.      INTRODUCTION ................................................................................. 1

4

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................... 2

5

      A.    DePuy ............................................................................................ 2

6

      B.    DePuy's Use Of Narrow Restraints To Protect Its Customer
           Goodwill, Including From Unfair Competition ............................................ 3

7

      C.    The Agreement Between DePuy And Gault South Bay ............................... 3

8

      D.    Defendants' Unfair Competition And Breaches Of Loyalty........................ 6

9

      E.    The Lawsuit ................................................................................... 6

10

III.    DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION MUST
      BE DENIED UNDER INDIANA LAW, WHICH APPLIES TO THE
      PARTIES' DISPUTE ................................................................................ 7

11

      A.    Indiana Conflict Of Law Principles Apply ........................................... 7

12

      B.    Indiana's Public Policy Exception Under Restatement Section 187
           Does Not Apply To The Situation Here ............................................... 9

13

      C.    California Does Not Have A Materially Greater Interest Than Indiana
           In The Determination Of The Enforceability Of The Agreement................ 10

14

           1.    Indiana's Interest In Protecting The Customer Goodwill Of
                 Its Businesses............................................................... 10

15

           2.    Defendants Miscite Indiana Law........................................ 12

16

IV.     Application Of Indiana Law To The Enforceability Of The Non-Compete
      Provisions is Not Contrary To Any Fundamental Policy Of California ............. 15

17

      A.    Indiana Allows Narrow Restrictive Covenants..................................... 15

18

      B.    California Also Allows Narrow Restrictive Covenants ............................ 16

19

      C.    Even If California And Indiana Law Conflict, An Indiana Court
           Would Still Enforce The Parties' Choice Of Indiana Law ...................... 20

20

V.      Regardless of Which State's Law Is Applied, Defendants' Summary
      Judgment Motion Must Be Denied In Light Of Triable Issues Of Fact And
      The Lack Of Discovery ......................................................................... 21

21

VI.     CONCLUSION ................................................................................... 24

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986) ............................................................................. 21-22

*Austin Powder Co. v. Wallwork*,
    761 F. Supp. 612 (S.D. Ind. 1990) ...................................................................................... 13

*Barnes Group, Inc. v. O'Brien*,
    591 F. Supp. 454 (N.D. Ind. 1984) ............................................................................... 11, 16

*Barnes Group Inc. v. Rinehart*,
    2001 WL 301433 (S.D. Ind. 2001) ............................................................................... 10, 14

*Board of Trustees v. Roche Molecura Systems*,
    487 F. Supp. 2d 1099 (N.D. Cal. 2007) .............................................................................. 18

*Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck
    Reservation*,
    323 F.3d 767 (9th Cir. 2003) ............................................................................................. 22

*Campbell v. Board of Trustees*,
    817 F. 2d 499 (9th Cir. 1987) ............................................................................................ 17

*Davis v. Advanced Care Technologies, Inc.*,
    2007 WL 2288298 (E.D. Cal. 2007) .................................................................................. 14

*Dearborn v. Everett J. Prescott, Inc.*,
    486 F. Supp. 2d 802 (S.D. Ind. 2007) ................................................................... 8-9, 12, 14

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
    504 U.S. 451, 112 S. Ct. 2072 (1992) ................................................................................ 21

*Gen. Commercial Packing, Inc. v. TPS, Package Eng.'g, Inc.*,
    126 F. 3d 1131 (9th Cir. 1997) .......................................................................................... 18

*Hart v. Schering-Plough Corp.*,
    253 F.3d 272 (7th Cir. 2001) ............................................................................................. 10

*Int'l Business Machines, Corp. v. Bajorek*,
    191 F.3d 1033 (9th Cir. 1999) .................................................................................... Passim

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*,
    2001 WL 283083 (C.D. Cal. 2001) .................................................................................... 18

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
    182 F.3d 157 (2nd Cir. 1999) ................................................................. 22

*Nelson v. Int'l Paint Co.*,
    716 F.2d 640 (9th Cir. 1983) .................................................................... 8

*S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*,
    641 F.2d 746 (9th Cir. 1981) ................................................................. 7-8

*Sarnoff v. American Home Products Corp.*,
    798 F.2d 1075 (7th Cir. 1986) ................................................................ 10

*Shannon-Vail Five Inc. v. Bunch*,
    270 F.3d 1207 (9th Cir. 2001) .................................................................. 7

*South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*,
    572 F. Supp. 209 (N.D. Ind. 1983) .................................................... 11-12

*St. Paul Travelers Cos. v. Corn Island Shipyard, Inc.*,
    495 F.3d 376 (7th Cir. 2007) .................................................................... 8

*United Rentals v. Pruett*,
    296 F. Supp. 2d 200 (D. Conn. 2003) ..................................................... 14

*Van Dusen v. Barrack*,
    376 U.S. 612, 84 S. Ct. 805 (1964) .......................................................... 8

*Wright-Moore Corp. v. Ricoh Corp.*,
    908 F.2d 128 (7th Cir. 1990) (en banc) ............................................. 9, 13

**STATE CASES**

*4408, Inc. v. Losure*,
    373 N.E.2d 899 (Ind. Ct. App. 1978) ............................................... 11, 16

*Allen v. Great American Reserve Ins. Co.*,
    766 N.E. 2d 1157 (Ind. 2002) ......................................................... 8-9, 20

*Boughton v. Socony Mobil Oil Co., Inc.*,
    231 Cal. App. 2d 188 (1964) .................................................................. 18

*Hahn v. Drees, Perugini & Co.*,
    581 N.E.2d 457 (Ind. Ct. App. 1991) ..................................................... 11

*Huong Que, Inc. v. Luu*,
    150 Cal. App. 4th 400 (2007) ........................................................... 19, 24

*Jones v. Humanscale Corp.*,
    130 Cal. App. 4th 401 (2005) ................................................................. 19

iii

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW

Doc. #177521

*Licocci v. Cardinal Assocs., Inc.*,
    445 N.E.2d 556 (Ind. 1983) ........................................................... 11, 16

*Loral Corp. v. Moyes*,
    174 Cal. App. 3d 268 (1985) ............................................................... 19

*McGlothen v. Heritage Env. Servs., LLC*,
    705 N.E.2d 1069 (Ind. Ct. App. 1999) ............................................... 11

*Miller v. Frankfort Bottle Gas, Inc.*,
    202 N.E. 2d 395 (Ind. Ct. App. 1964) ................................................. 15

*Potts v. Review Board of the Indiana Employment Security Div.*,
    475 N.E. 2d 708 (Ind. Ct. App. 1985) ................................................. 19

*ReadyLink Healthcare v. Cotton*,
    126 Cal. App. 4th 1006 (2005) .................................................. 18-19, 24

*The Harvest Insurance Agency, Inc. v. Inter-Ocean Insurance Co.*,
    492 N.E.2d 686 (1986) ................................................................ 11, 20

*VL Systems, Inc. v. Unisen, Inc.*,
    152 Cal. App. 4th 708 (2007) .............................................................. 18

*Wenzel v. Hopper & Galliher, P.C.*,
    830 N.E.2d 996 (Ind. Ct. App. 2005) ................................................... 19

**FEDERAL STATUTES**

28 U.S.C. § 1404(a) ..................................................................... 7-8

Fed. R. Civ. P. 26 .......................................................................... 23

Fed. R. Civ. P. 26(d)(1) ................................................................. 23

Fed. R. Civ. P. 56(c) ..................................................................... 22

Fed. R. Civ. P. 56(f) ..................................................................... 22

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600 ............................................... Passim

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws §187 ................................ 9

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    __INTRODUCTION__

Defendants' motion is premised on two *fallacies*: (1) under Indiana conflict of law principles, California law applies to the parties' dispute; and (2) under California law, the non-compete provision in the sales representative agreement at issue ("Agreement") is unenforceable. Neither is true.  By the parties' express Agreement, Indiana law applies.  Moreover, the Agreement is enforceable because both Indiana law and California law permit narrow non-compete restraints.  In addition, summary judgment at this premature stage is inappropriate because triable issues of fact exist and Plaintiff has not had a fair opportunity to conduct discovery.

Under Indiana conflict of law principles – which Defendants concede apply here – the enforceability of the Agreement must be determined by Indiana law in light of the parties' express agreement that Indiana law applies to their disputes.  The non-compete provision of the Agreement is clearly valid under Indiana law, which Defendants do not dispute.  Furthermore, there is no basis to ignore the parties' Agreement's designation of Indiana law given Indiana's material interest in enforcing narrow non-compete agreements to protect the legitimate interests of Indiana businesses.

This Court must address this motion in this action transferred from Indiana as if it were standing in the shoes of a court in Indiana.  From such a posture, this Court can only affirm the choice of law of the parties and apply Indiana law to determine the enforceability of the non-compete provision and, in turn, deny Defendants' motion.

Under California law,  as matter of law that the non-compete provision in the Agreement is also enforceable or at a minimum there are triable issues of fact preventing a summary judgment that the non-compete provision is unenforceable as a matter of law.  Defendants' motion improperly ignores that, under California law, non-compete agreements are enforceable under a variety of situations, including some present here.  Not only do Defendants mischaracterize the law concerning the enforceability of non-compete agreements, but they also mischaracterize the Agreement.  Defendants' assertion that the Agreement includes a "broad covenant" not to compete is insupportable, as the non-compete at issue here is limited to discrete

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1   customers in a limited area of California, a discrete series of products, and a limited time period.

2   Under either California or Indiana law, this narrow restraint is enforceable.

3        At a minimum, this Court's determination of the enforceability of the non-compete at

4   issue cannot be determined until DePuy has been provided an opportunity to conduct discovery.

5   At this juncture—where very limited discovery and no depositions have been taken—the Court

6   cannot decide on summary judgment that the non-compete provisions of the Agreement are

7   unenforceable where factual issues exist as to whether the Agreement's non-compete provisions

8   constitute lawful narrow restraints.  Whether a restraint is narrow depends of specific

9   circumstances of this case, including those outside of the Agreement.

10       Thus, Defendants' motion for partial summary judgment should be denied in its entirety.

11  **II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

12       **A.    DePuy**

13       DePuy Orthopaedics, Inc. ("DePuy") is a global leader in the design, manufacture and

14  sales of orthopedic implants and operating room products.  Declaration of Bradford LaPoint

15  ("LaPoint Decl.") ¶3.  DePuy's products include joint replacement products for the shoulders,

16  knees, hips, fingers, wrists, ankles and shoulders, and the operating room products used during

17  surgery.  *Id.*

18       DePuy is headquartered in Warsaw, Indiana.  Declaration of Audrey Frush ("Frush

19  Decl.") ¶3; Plaintiff's Request for Judicial Notice ("RJN") Ex. A at ¶3.  DePuy's headquarters

20  house DePuy's administrative offices as well as the vast majority of its manufacturing, design

21  and shipping functions.  Frush Decl. ¶3; RJN Ex. A at ¶¶3-4, 8; LaPoint Decl. ¶4.  DePuy

22  separately contracts with sales representatives across the nation to build relationships with

23  DePuy's customers, including hospitals and physicians, and to sell DePuy's products to those

24  customers in a defined territory.  LaPoint Decl. ¶¶5-6.  Sales representatives agreements

25  originate from Indiana and are subject to final approval in Indiana.  LaPoint Decl. ¶8; Frush

26  Decl. ¶5.  Customers across the United States are billed for their purchases through DePuy's

27  Indiana billing center.  Frush Decl. ¶5; RJN Ex. A at ¶4.  All commissions and reimbursements

28  to DePuy sales representatives are managed through DePuy's Indiana headquarters.  RJN Ex. A

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**

1    at ¶4, Ex. B at ¶¶9-16; Frush Decl. ¶4.  Product billing to customers in the United States are

2    processed through DePuy's facilities in Indiana and products are also shipped out of DePuy's

3    Indiana facilities.  RJN Ex. A at ¶¶6, 9; LaPoint Decl. ¶5.  DePuy employs over one thousand

4    people in Indiana, while DePuy employs fewer than 30 employees in California.  Frush Decl. ¶3;

5    RJN Ex. A at 3.

6    **B.    DePuy's Use Of Narrow Restraints To Protect Its Customer Goodwill,**

7    **Including From Unfair Competition**

8    Sales of orthopedic products is a highly competitive industry and a customer's purchasing

9    decisions between competing products are often driven by the relationship between the sales

10   representative and the customer.  LaPoint Decl. ¶10.  For example, a sales representative's

11   knowledge of a customer's preferences, needs and account history will often drive the

12   customer's purchasing decision.  *Id.*  The goodwill developed between a sales representative and

13   DePuy's customers in a territory is developed at significant expense of DePuy, including

14   expenses associated with training of the sales representative, providing educational materials to

15   the sales representative in order to further the training and education of the customers in the use

16   and utility of DePuy's products, and the compensation paid to a sales representative for his

17   efforts.  *Id.* at ¶¶9-10, 13.

18   Given the relationship between DePuy's sales and the relationship between customers

19   and sales representatives, DePuy's agreements with its sales representatives include restrictions

20   on competition for those customers by the sales representative in the event the contract is

21   terminated.  LaPoint Decl. ¶¶11-12.

22   **C.    The Agreement Between DePuy And Gault South Bay**

23   Defendants Robert Gault ("Gault"), as an individual and through his company Gault

24   South Bay, Inc. ("Gault South Bay") (collectively "Defendants"), was a DePuy sales

25   representative from February 1998 until August 2007, with a territory including certain specific

26   customers in a portion of Northern California.  LaPoint Decl. ¶¶11, 13 and Ex. 3; Declaration of

27   Robert Gault in Support of Defendants' Motion for Summary Judgment ("Gault Decl.") Ex. A;

28   RJN Ex. B at ¶14.  Gault or Gault South Bay entered into agreements with DePuy with one or

3

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**

two year terms over the course of their almost ten-year independent contractor relationship. RJN Ex. B at ¶7(a) to (m). Since 2001, every agreement Defendants entered into with DePuy provided an Indiana forum selection clause and Indiana choice of law provision. RJN Ex. B at ¶7 [Ex. C at pg. 5; Ex. D at pg. 7; Ex. F. at pg. 8; Ex. I at pg. 11; Ex. K at pg. 10]. The agreements also provided narrow restrictions on Defendants' ability to sell products on behalf of a DePuy competitor to the specific DePuy accounts that they solicited while working for DePuy. *Id.* The operative Gault South Bay Agreement with DePuy only restricted for a limited period of time Gault and Gault South Bay's ability to sell certain specific accounts within a small portion of California products that compete directly with a specific list of DePuy products that Defendants sold on behalf of DePuy. Gault Decl. Ex. A. at 8-9, 12-14; LaPoint Decl. ¶¶11, 13 and Ex. 3. Moreover, the agreements generously provided that Defendants would continue to be paid a percentage of the commissions earned in the prior year even after termination so that Defendants would not engage in restricted conduct during the limited non-compete period:

> As consideration for the foregoing agreement not to accept such a [competitive]
> position, upon termination of this Agreement, DePuy agrees to pay Contractor
> on a monthly basis during the one (1) year period after termination an amount
> equal to one-twelfth of the aggregate commissions paid to Contractor for the
> twelve months prior to such termination….

Gault Decl. Ex. A at 8.

Gault was paid handsomely under these sales representative agreements. In the years prior to termination of the Agreement, Gault and Gault South Bay were paid approximately $1 million in commissions on an annual basis. LaPoint Decl. ¶13.

Though Gault has attempted to portray all of his dealings with DePuy under his sales representation agreements as being conducted in California, such is not the case. As with all sales representatives, Gault's sales orders for his accounts were processed through DePuy's Indiana facility. RJN Ex. A at ¶¶3-4, 9. Gault's commissions were likewise processed through DePuy's Indiana facility. Frush Decl. ¶4; RJN at Ex. A at ¶¶3-9, Ex. B at ¶11. Products sold to the accounts Gault serviced were primarily manufactured and designed in Indiana and

4

1    shipped by DePuy directly from its plant in Indiana.  Frush Decl. ¶3; RJN at Ex. A at ¶¶3, 8;

2    LaPoint Decl. ¶4.  DePuy provided Defendants with training and product literature so that they

3    could educate customers about product features and how to use the products properly.  LaPoint

4    Decl. ¶9.  Finally, over the course of his relationship with DePuy, Gault has traveled to Indiana

5    for training and, on at least one occasion, brought a DePuy account to DePuy's Indiana facility

6    on DePuy's corporate jet.  RJN Ex. H at ¶12.

7         Defendants entered into the most recent agreement with DePuy on November 22, 2006,

8    with an effective date of January 1, 2007 and expiration date of December 31, 2007 (hereinafter

9    "Agreement").  LaPoint Decl. ¶6 Ex. 1; Gault Decl. Ex. A.  As with Gault's prior agreements,

10   the Agreement provided that Indiana law would apply to it and that all claims or matters relating

11   to the Agreement would take place in an Indiana forum.  Likewise, the Agreement provided that:

12             for or a period of one(1) year after termination of the Agreement,

13             that neither Contractor nor any of its employees, independent

14             contractors, or agents who are involved in the representation or

15             sale of the Products, will, without DePuy's prior written consent,

16             accept a position with a competitor of DePuy, which involves

17             direct or indirect sales of competitive products in the same

18             Territory or sales to the same accounts covered by the Agreement

19             or engage, directly or indirectly in the sales of competitive

20             products or in competitive activities as described above.

21   LaPoint Decl. ¶6 Ex. 1; Gault Decl. Ex. at 8.

22        Defendants had alternatives to their decision to work for a direct competitor to DePuy.

23   LaPoint Decl. ¶20.  The Territory in which Defendants were not allowed to directly compete did

24   not include all potential customers of orthopedic products, but only a fraction of them.  LaPoint

25   Decl. ¶11 and Exs. 1, 3.

26        Indeed, the Territory did not even include all of Northern California.  *Id.*

27        Moreover, there was no restriction on Defendants' sale of products within that Territory

28   if they did not directly compete with the select list of products Defendants had sold on behalf of

5

1  DePuy.  LaPoint Decl. Ex. 1; Gault Decl. Ex. A at 12-14.  Defendants therefore had many

2  options for continued employment that would not have violated the non-compete provisions of

3  the Agreement.  LaPoint Decl. ¶20.

4  **D.    Defendants' Unfair Competition And Breaches Of Loyalty**

5        In June 2007, unbeknownst to DePuy, Gault traveled to Warsaw, Indiana to interview for

6  a job with Biomet, Inc. ("Biomet").  RJN Ex. H at ¶12.  Biomet is a direct competitor to DePuy,

7  and, like DePuy, designs, manufactures and sells products for hip replacement, knee

8  replacement, shoulder replacement, elbow replacement, and other small joint replacement.

9  LaPoint Decl. ¶15.  Like DePuy, Biomet is headquartered in Warsaw, Indiana.  LaPoint Decl.

10 ¶15.

11       Thereafter, in August 2007, while still working under contract for DePuy, Gault began to

12 solicit DePuy sales representatives, including not only those in his territory but those in adjacent

13 territories, to go work for Biomet.  LaPoint Decl. ¶15; RJN Ex. C at ¶4.  At the same time, Gault

14 began to solicit his DePuy customers to switch to Biomet even though Gault and Gault South

15 Bay were still supposed to be selling products for DePuy through the end of the year.  LaPoint

16 Decl. ¶¶16-19; RJN Ex. C at ¶¶6, 10, 15; Declaration of Dwight Lueck ("Lueck Decl.") ¶3 Ex. 8.

17       On August 23, 2007, after learning about this misconduct, DePuy wrote to Defendants

18 and notified them that DePuy was terminating the Agreement, noting Defendants' recent

19 solicitations on behalf of Biomet in violation of the express terms of the Agreement.  LaPoint

20 Decl. ¶17 and Ex. 4.

21       Thereafter, DePuy learned of other instances of Defendants' solicitation of their prior

22 DePuy accounts and sales representatives on behalf of Biomet.  LaPoint Decl. ¶¶18-19.

23 **E.    The Lawsuit**

24       DePuy filed this lawsuit in the Northern District of Indiana on September 11, 2007.

25 Defendants' Request for Judicial Notice ("Defendants' RJN") Ex. A.  DePuy has been unable to

26 depose Robert Gault to determine the exact scope of his misconduct, both before and after the

27 termination of the Agreement.  RJN Exs. D-G; Defendants' RJN Ex. E; Neubauer Decl. ¶4.

28 Thus, the exact scope of his wrongdoing and harm Defendants have caused DePuy is unknown.

1    The court presiding over the lawsuit in Indiana transferred to the Northern District of

2    California (i.e., the Hon. Seeborg) on November 13, 2007.  Defendants' RJN Ex. E.  On

3    December 6, 2007, the Court reassigned this action to the Hon. James Ware.  RJN Ex. G.  The

4    Court has not yet held a scheduling conference pursuant to the December 6, 2007 Related Case

5    Order.  Neubauer Decl. ¶4.  Nor has it otherwise authorized the parties to commence discovery.

6    *Id.* at ¶5; RJN Ex. G.

7    Nevertheless, on February 13, 2008, Defendants filed this motion for partial judgment,

8    asking the Court to invalidate as a matter of law the non-compete provisions in the parties'

9    Agreement.  They do so even though the Agreement contains an Indiana choice of law provision

10   and Defendants concede that the non-compete provisions are valid under Indiana law.

11   Defendants' motion is without merit for the reasons detailed below and it should be summarily

12   denied.

13   **III.    DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION MUST BE**

14   **DENIED UNDER INDIANA LAW, WHICH APPLIES TO THE PARTIES'**

15   **DISPUTE**

16   **A.    Indiana Conflict Of Law Principles Apply**

17   In light of this action's status as an action transferred under 28 U.S.C. § 1404(a), this

18   Court must decide the issues presented as if it is a court sitting in Indiana.  *See S.A. Empresa de*

19   *Viacao Aerea Rio Grandense v. Boeing Co.,* 641 F.2d 746, 749 (9th Cir. 1981).  As such, Indiana

20   choice of law and the parties' chosen law of Indiana law must be applied by this Court to

21   determine the validity of the non-competition provisions in the parties' Agreement.

22   Defendants concede that Indiana conflict of law principles apply to this action since this

23   action was transferred from Indiana.[1]  "After a transfer pursuant to 28 U.S.C. § 1404(a), the

24   transferee district court generally must apply the state law that the transferor district court would

25   have applied had the case not been transferred."  *Shannon-Vail Five Inc. v. Bunch,* 270 F.3d

26   _____

27   [1] Though, notably, Defendants subtly attempt to switch the focus to California conflict of laws principles by arguing at pages 18 through 20 of their moving papers that two California cases are directly on point concerning the enforceability of a covenant not to compete in the face of a

28   choice of law provision in an agreement.  These cases are irrelevant, however, as they reflect California choice of law, and not the choice of law rulings of Indiana courts, which is the law applicable here.

7

1207, 1210 (9th Cir. 2001).  The law of the transferor court is applied "to prevent parties from seeking a change in venue to take advantage of more favorable laws in another forum."  *Nelson v. Int'l Paint Co.,* 716 F.2d 640, 643 (9th Cir. 1983).  "'[T]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.'"  *Boeing Co.*, 641 F.2d at 749 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S. Ct. 805 (1964)).  The law of the transferor district court that the transferee court must apply includes the conflicts law of the transferor forum.  *Id.*  Thus, with respect to this action transferred by the Indiana court on Section 1404(a) grounds, Indiana law governs whether Indiana law should be applied to the parties' claims.

Here, an Indiana court would apply Indiana law under Indiana choice of law principles. "Indiana choice of law doctrine favors contractual stipulations as to governing law . . . ."  *Allen v. Great American Reserve Ins. Co.,* 766 N.E. 2d 1157, 1162 (Ind. 2002); *St. Paul Travelers Cos. v. Corn Island Shipyard, Inc*., 495 F.3d 376, 383 (7th Cir. 2007) (citing *Allen* under Indiana choice of law principles to uphold parties' selection of New York law).

> "The Indiana courts …'always weigh in the balance the parties'
> freedom to contract.' **The Indiana courts recognize that the**
> **power of courts to declare a contract void under public policy**
> **is 'a very delicate and undefined power,' requiring caution**
> **against its 'reckless use.'**  Indiana courts look for a clear
> manifestation of public policy, a tendency to injure the public, or
> contracts 'against the public good' or 'inconsistent with sound
> policy and good morals."

*Dearborn v. Prescott, Inc.,* 486 F. Supp. 2d 802, 814 (S.D. Ind. 2007) (citations omitted; emphasis added).  Given the parties' agreement that Indiana law would govern their disputes in multiple separate agreements over a period close to ten years and culminating in the Agreement, the stipulated law of the parties should be honored.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1    **B.**    **Indiana's Public Policy Exception Under Restatement Section 187 Does Not**

2    **Apply To The Situation Here**

3        Nor would any public policy exception under Indiana choice of law principles warrant

4    application of California law here.  Under Indiana's public policy exception, the parties'

5    selection of a chosen state's law in an agreement will not be followed only if either "(a) the

6    chosen state has no substantial relationship to the parties or the transaction and there is no other

7    reasonable basis for the parties' choice; or (b) application of the law of the chosen state would be

8    contrary to a fundamental policy of a state which has a materially greater interest than the chosen

9    state in the determination of the particular issue and which, under the rule of §188, would be the

10   state of the applicable law in the absence of an effective choice of law by the parties."[2]

11   *Dearborn*, 486 F. Supp. 2d at 812-13 (citing to Restatement (Second) of Conflicts of Laws

12   §187); *see also Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132-33 (7th Cir. 1990) (en

13   banc) (applying Indiana choice of law).

14       Here, Defendants do *not* argue that Indiana has no substantial relationship to the parties

15   or the transaction and there is no other reasonable basis for the parties' choice.  For good reason.

16   DePuy's corporate headquarters are located in Indiana.  The design, manufacture invoicing,

17   billing, and shipping of all products delivered to Gault's accounts originated in Indiana.  All of

18   DePuy's administrative and accounting offices were and are located in Indiana.  All payments to

19   Gault under the agreement originated from Indiana.  *See* Frush Decl. ¶¶4-5; RJN Ex. B at ¶¶4, 9-

20   14.

21       Instead, Defendants rely on Sectoin 187(b) of the Restatement and contend that an

22   Indiana court would hold that California has a materially greater interest than Indiana in the

23   _____

24       [2] Defendants claim that DePuy's earlier reliance on *Allen v. Great American Reserve Ins.*
     *Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) is "misleading," but DePuy did not mischaracterize or
25   misquote that Indiana Supreme Court case in any way.  Indeed, Defendants' claim that "DePuy
     omitted [that] … under Indiana law … a choice-of-law provision may be disregarded" (Mov. Br.,
26   11:11-12) is specious since DePuy's quote to the Court from the *Allen* case acknowledged that
     possibility.  *See* Mov. Br., 11:4-7.  Moreover, as Defendants must concede, in DePuy's brief
27   filed earlier in the parties' litigation, DePuy acknowledged that Defendants could argue that,
     under Indiana law, the Indiana choice of law provision in the parties' Agreement should be
28   disregarded.  *See* Mov. Br., 11:15-27.

9

1   determination of whether the non-compete provisions of the parties' Agreement are enforceable

2   and that application of Indiana law to the determination would be contrary to a fundamental

3   policy of California.  Defendants are wrong on both counts.

4       **C.    California Does Not Have A Materially Greater Interest Than Indiana In**

5   **The Determination Of The Enforceability Of The Agreement**

6               1.    Indiana's Interest In Protecting The Customer Goodwill Of Its Businesses

7           A court sitting in Indiana would not determine that California has a greater interest in the

8   determination of the enforceability of the non-compete provisions in the parties' Agreement,

9   such that the parties' agreement to apply Indiana law to their disputes should be overwritten.

10          DePuy, a corporation headquartered in Indiana, with manufacturing, design, billing and

11  shipment of products directed to its customers originating from Indiana, has a material interest in

12  having the law of its home state apply to the contractual relationships for its sales representatives

13  across the nation, including Defendants.  It is, thus, imminently reasonable that an Indiana-based

14  company like DePuy would want its sales representatives governed by the law of the state where

15  it is based.  *See Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1082 (7th Cir. 1986),

16  *superseded on other grounds as recognized in Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274

17  (7th Cir. 2001) (reversing district court's determination that choice of New York law provision

18  in contract containing no-competition condition was invalid and contrary to Illinois public policy

19  where employer "was reasonable in wanting all of its legal obligations with its employers to be

20  governed by the law of the headquarters state if the employees could be persuaded to agree").

21  *Accord Int'l Business Machines, Corp. v. Bajorek*, 191 F.3d 1033, 1038 (9th Cir. 1999) ("this

22  corporation headquartered in New York has an interest in having all its stock option agreements

23  with employees in different places construed according to the same law").

24          In furtherance of Indiana's interest in seeing that its businesses – including DePuy -- are

25  able to protect their goodwill and against unfair competition, Indiana has authorized the use of

26  narrowly tailored non-competition provisions in agreements.  *See Barnes Group Inc. v. Rinehart,*

27  2001 WL 301433, *17-22 (S.D. Ind. 2001) (holding enforcement of restrictive covenants under

28  Indiana law is "*necessary* to protect the employer's business, including customer goodwill," and

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1    noting that the loss of goodwill to an employer constitutes irreparable harm).  Moreover, the

2    Supreme Court of Indiana has held expressly that "a state has an interest in regulating the extent

3    to which it will allow parties to restrain trade through the use of restrictive covenants."  *The*

4    *Harvest Insurance Agency, Inc. v. Inter-Ocean Insurance Co.,* 492 N.E.2d 686, 691 (1986)

5    (citing *South Bend Consumers Club, Inc. v. United Consumers Club, Inc.,* 572 F. Supp. 209, 213

6    (N.D. Ind. 1983)).

7            Indeed, Indiana courts have held consistently that narrowly tailored restrictive covenants

8    are warranted when they protect the goodwill of a business, particularly one developed through

9    the personal relationships of a sales representative or employee.  *See McGlothen v. Heritage Env.*

10   *Servs., LLC,* 705 N.E.2d 1069, 1073 (Ind. Ct. App. 1999) ("an employer is entitled to contract to

11   protect the good will of the business" and thus was justified in seeking to restrict employee from

12   trading on that good will by contacting former customers with whom he was hired to generate

13   good will); *Licocci v. Cardinal Assocs., Inc.,* 445 N.E.2d 556, 563 (Ind. 1983) ("the business

14   advantage which may attend a salesman's close contact with a customer is a protected interest

15   sufficient to justify an employer's non-competition restriction"); *Hahn v. Drees, Perugini & Co.,*

16   581 N.E.2d 457, 460 (Ind. Ct. App. 1991) ("protectable good will interest is the right, via a

17   proper covenant not to compete, to restrict a former employee from enticing away the

18   employer's old customers");  *Barnes Group, Inc. v. O'Brien,* 591 F. Supp. 454, 460 (N.D. Ind.

19   1984) (restrictive covenant found necessary to protect the business' proprietary interest in its

20   customer goodwill).  Likewise, intense competition in an industry frequently justifies the need

21   for a covenant not to compete in order to protect a business from unfair competition.  *See 4408,*

22   *Inc. v. Losure*, 373 N.E.2d 899, 902 (Ind. Ct. App. 1978).

23           Indiana has a substantial interest in enforcing the Agreement here and, thus, protecting its

24   citizen DePuy from unfair competition by Defendants.  Not only is DePuy headquartered in

25   Indiana, but the Agreement was performed in Indiana.  The products sold to the accounts

26   serviced by Defendants in California were designed, manufactured and shipped from DePuy's

27   Indiana facilities.  *See* LaPoint Decl. ¶4; Frush Decl. ¶3; RJN Ex. A at ¶¶3, 8.  The

28   administrative functions to those accounts were likewise centered in Indiana, including billing

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**

1   and accounting.  *See* RJN Ex. A at ¶¶3-4, 9.  Likewise, all commissions and compensation paid

2   to Gault ultimately were processed out of Indiana.  *See* Frush Decl. ¶¶4-5; RJN Ex. B at ¶¶4, 9-

3   14.  DePuy has over one thousand employees in Indiana and Indiana has a substantial interest in

4   ensuring that the livelihood of these employees and the legitimate business interests of DePuy

5   which are all based in Indiana are not undermined by a rogue sales representative engaging in

6   unfair competition in violation of its agreement with DePuy.  *See* Frush Decl. ¶3.  Also, the

7   orthopedic products industry is highly competitive.  *See* LaPoint Decl. ¶10.  Defendants were

8   highly compensated to develop DePuy's goodwill with customers, and DePuy is highly

9   dependent on the relationship between the sales person and the customer.  *Id.* at ¶¶13, 19.

10   Finally, Gault has not only moved on to work for Biomet, a competitor of DePuy, **but a**

11   **competitor based in Indiana**.  *See* LaPoint Decl. ¶15.

12           2.    <u>Defendants Miscite Indiana Law</u>

13         None of the cases cited by Defendants otherwise indicate that an Indiana court would not

14   enforce the parties' Indiana choice of law provision.  Defendants do not cite a single case in

15   which an Indiana court, faced with an Indiana choice of law agreement and a restrictive covenant

16   valid under Indiana law, overruled the parties' choice of law in favor of the law of another

17   jurisdiction.  Rather, Defendants cite to cases in which Indiana courts refused to enforce foreign

18   (non-Indiana) choice of law agreements where a restrictive covenant was broader than that

19   allowed under Indiana law.  For example, the district court in *South Bend Consumers Club, Inc.*

20   *v. United Consumers Club, Inc.,* 572 F. Supp. 209, 212, 214 (N.D. Ind. 1983), held that Indiana

21   law would apply and overruled the parties' Illinois choice of law provision in their agreement,

22   because the restrictive covenant chosen by the parties conflicted with Indiana's requirement of a

23   geographically narrow restrictive covenant.  Similarly, the district court in *Dearborn v. Everett J.*

24   *Prescott, Inc.*, 486 F. Supp. 2d 802 (S.D. Ind. 2007), overruled the parties' selection of Maine

25   law only after holding that the restrictive covenant agreed to by the parties was broader than that

26   allowed in Indiana.  In another Indiana district court case relied on by Defendants, the district

27   court examined covenants not to compete under Indiana law and the Ohio law selected by the

28   parties, and ultimately determined that the two jurisdictions had more or less identical rules

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**

1   concerning restrictive covenants.  Finding the geographical range somewhat broader than that

2   allowed under Indiana law, the court proceeding to apply Indiana's "blue pencil" rule, and

3   enforced the restrictive covenant with a slightly modified geographic range.  *See Austin Powder*

4   *Co. v. Wallwork*, 761 F. Supp. 612, 615-17 (S.D. Ind. 1990).  However, no such issues would be

5   presented to an Indiana court in this case.  The parties entered into a very narrow restrictive

6   covenant that is limited to a discrete list of hospitals in a portion of Northern California for a

7   discrete list of products during a period of only one year.  LaPoint Decl. Exs. 1, 3.  None of the

8   cases relied on by Defendants supports their assumption that an Indiana court faced with a

9   narrow covenant enforceable under Indiana law and a stipulation by the parties that Indiana law

10  governs that agreement would overrule the choice of law of the parties.

11          Defendants' reliance on *Wright-Moore Corp.,* 980 F.2d at 132, likewise provides no

12  support for their contention that an Indiana court would overrule the parties' choice of Indiana

13  law when faced with a non-compete that is valid under Indiana law.  The Seventh Circuit refused

14  to apply the parties' choice of New York law in that case because the only connection between

15  the parties and the forum was the fact that one of the parties was incorporated in the state of New

16  York.  In stark contrast to the situation here, the New York entity was not headquartered in New

17  York and none of the transactions that were subject to the agreement originated from that state.

18  Thus, the Seventh Circuit applied Indiana law.  Here, DePuy is not only headquartered in

19  Indiana, but design, manufacturing and shipment of the products delivered to customers pursuant

20  to the parties' Agreement originated in Indiana, all commissions paid to Defendants under the

21  Agreement originated and were administered from Indiana, administrative functions for

22  Defendants were controlled out of Indiana, and the Agreement signed by Gault originated in

23  Indiana and required final approval by DePuy's administration in Indiana.  LaPoint Decl. ¶8.

24  Given the material interest that Indiana has in the legitimate business interests of its business to

25  protect their goodwill, which Indiana has clearly stated can be protected through the type of

26  narrow non-compete at issue here, the clear contacts of the parties to the forum, and the parties'

27  selection of Indiana law, no Indiana court would overrule the parties' choice in favor of another

28  jurisdiction.

1          Finally, Defendants' citation to non-Indiana law on the issues of whether Indiana or

2   California has a materially greater interest is a red herring.  Defendants early on concede that

3   Indiana choice of law applies to this analysis.  Thus, their attempt to argue an element of the

4   choice of law analysis by referencing the holdings of California courts and even a Connecticut

5   district court on choice of law are irrelevant and should be ignored.  *See* Mov. Br. at 16 (citing

6   *United Rentals v. Pruett*, 296 F. Supp. 2d 200 (D. Conn. 2003); *Davis v. Advanced Care*

7   *Technologies, Inc.*, 2007 WL 2288298 at *8-9 (E.D. Cal. 2007) and Mov. Br. at 18-20 (citing

8   California state and federal cases discussing whether California has a materially greater interest

9   than other states under California interpretations of choice of law principles).  Since Indiana law

10  does not support Defendants' position, Defendants improperly attempt to steer this Court to

11  California and other jurisdiction's law.  The only choice of law analysis relevant to this motion,

12  however, is that of the Indiana courts, and that Indiana law demonstrates that the parties' Indiana

13  choice of law agreement should be honored.

14         Nor is there any rational basis to assert that California's interest in protecting Defendants

15  from an unenforceable (at least according to Defendants) restrictive covenant is greater than

16  Indiana's interest in seeing that an enforceable restrictive covenant is enforced to protect

17  DePuy's legitimate interest in its goodwill, especially where the parties' relationship spanned

18  both California and Indiana.

19         What must tip the scales in favor of the weight of Indiana's interest, is the fact that the

20  parties' expressly agreed that Indiana law was to govern here.  Indiana has a strong interest is

21  seeing that its citizen's contracts are enforced in accordance with their terms.  *See Barnes Group*

22  *Inc. v. Rinehart,* 2001 WL 301433, *24 (S.D. Ind. 2001) ("the public has a strong interest in

23  protecting the freedom of contract and enforcing parties' contractual obligations") (citing to

24  Indiana case law).  Party agreements concerning the choice of law are not to be lightly

25  overturned under Indiana law.  *Dearborn,* 486 F. Supp. 2d at 814.

26         Defendants misplace reliance on the Indiana Court's transfer order (Ex. E to Defendants'

27  RJN) to argue California's interest is greater here.  The Indiana Court was addressing whether

28  the action should be transferred to California for the convenience of the parties, *not* whether

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1    Indiana law should apply to the resolution of the issues.  In fact, Judge Miller's order appears to

2    assume that *Indiana*, not California, law would apply.

3            **The court's familiarity with applicable law is an important**

4            **factor, but is not determinative of a decision to transfer.**  For

5            example, "whether the law in question is neither complex nor

6            unsettled, the interest of justice remain neutral between competing

7            courts."  The 2006 sales agreement contains an Indiana choice of

8            law provision, but DePuy points to nothing so unusual about this

9            case as to make the California court's job [to apply Indiana law]

10           overly difficult.

11   *See* Ex. E to Defendants' RJN at p. 23 (citations omitted) (emphasis added).

12           Thus, Indiana has the greater interest here with respect to the determination of the

13   enforceability of the Agreement's restrictive covenants and there is no basis to deviate from the

14   parties' Indiana choice of law in the agreement.

15   **IV.    APPLICATION OF INDIANA LAW TO THE ENFORCEABILITY OF THE**

16           **NON-COMPETE PROVISIONS IS NOT CONTRARY TO ANY FUNDAMENTAL**

17           **POLICY OF CALIFORNIA**

18           There is also no basis to disregard the parties' Indiana choice of law agreement for an

19   additional reason – application of Indiana law to determine the enforceability of the Agreement's

20   restrictive covenants would *not* violate any fundamental policy of California.  Contrary to

21   Defendants' assertions, California's treatment of restrictive covenants is not diametrically

22   opposed to Indiana's treatment of them.  Under both California law and Indiana law, narrow

23   restraints are enforceable.

24           **A.    Indiana Allows Narrow Restrictive Covenants**

25           Like California courts, Indiana courts will enforce restrictive covenants if they are

26   narrowly tailored, promote legitimate business interests, and do not otherwise violate Indiana's

27   public policy concerns.  *See Miller v. Frankfort Bottle Gas, Inc.*, 202 N.E. 2d 395, 398 (Ind. Ct.

28   App. 1964).  Indiana courts have held restrictive covenants to be reasonable where they are

15

1    limited in time, scope and by geography.  Indeed, Defendants even concede that "[u]nder Indiana

2    law, covenants not to compete are valid if they serve legitimate interests and are reasonable in

3    terms of scope, geography, and scope of activity."  Mov. Br., 9:23-26 (citations omitted).  For

4    example, restrictive covenants of two or more years have been upheld.  *Barnes Group, Inc.*, 591

5    F. Supp. at 460 (summarizing cases).  A narrowly drawn scope includes a restriction referencing

6    a specific territory or customer accounts.  *Id.*  Limited two-year restrictive covenants preventing

7    an employee or contractor from working in a specific territory or with accounts with whom he

8    has directly worked on behalf of his employer are sufficiently narrow to be enforceable given the

9    countervailing concerns for preservation of a company's goodwill, especially in a competitive

10    market that depends on a sales representative's close relationship with a customer or account.

11    *See, e.g., Licocci*, 445 N.E.2d at 563; *4408, Inc.*, 373 N.E.2d at 902.  Defendants' covenants with

12    DePuy fall squarely within Indiana's requirement for narrowly drawn covenants.  Defendants are

13    only prohibited from selling directly competing products to accounts they represented on behalf

14    of DePuy for a limited period of one year.  LaPoint Decl. Exs. 1, 3.  DePuy requires such a

15    restrictive covenant to protect its goodwill with its customers, which is highly dependent on the

16    relationship developed between the salesperson and the customer in a highly competitive market.

17    LaPoint Decl. ¶¶10, 12.  Finally, nothing in Defendants' agreement with DePuy completely

18    restrains Gault or Gault South Bay from pursuing a chosen profession.  LaPoint Decl. ¶20 &

19    Ex. 3.

20           **B.**       **California Also Allows Narrow Restrictive Covenants**

21         When analyzing whether a restrictive covenant is enforceable under California law, the

22    Ninth Circuit embraces a narrow restraint doctrine similar to the standard applied under Indiana

23    law.  In *IBM v. Bajorek*, 191 F.3d 1033 (9th Cir. 1999), the Ninth Circuit considered whether the

24    New York law the parties selected in an employee stock option agreement should be applied to

25    determine the enforceability of restrictive covenant in that agreement, or whether California

26    would apply.  191 F.3d at 1036-37.  Ultimately the Ninth Circuit determined that it need not

27    determine whether New York or California had a greater material interest in the enforceability of

28    the restrictive covenant such that the parties' choice of law need be overruled, because the

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**

1    restrictive covenant was not contrary to a fundamental policy under California law.  *Id.* at 1042.

2    The Court noted that California Business & Professions Code Section 16600 ("Section 16600"),

3    which Defendants argue invalidates their restrictive covenant, did not make all restrictions

4    unenforceable.

5            We [previously have] held [] that **section 16600 "did not make all**

6            **restrictions unenforceable**."  Although the California statute does

7            not except "reasonable" restraints of trade, it "only makes illegal

8            those restraints which preclude one from engaging in a lawful

9            profession, trade, or business."  Thus **a contract is valid, despite a**

10           **restriction on competition, if the promissor is "barred from**

11           **pursuing only a small or limited part of the business, trade or**

12           **profession**...."

13                                    * * *

14           **Because of the limited scope of the restriction, we are bound to**

15           **hold… that the covenant did not violate section 16600**.

16   *Id.* at 1040-41(citations and footnotes omitted; emphasis added).

17           The Ninth Circuit reasoned that California law provides that a restraint that is "'limited in

18   nature and [that] furthers sound public policies'" is enforceable and that the restrictive covenant

19   applicable to the employee in that case was expressly enforceable because it was limited in time

20   to six months and would only exclude the employee from "a small corner of the market but

21   would not preclude him from engaging in his profession, trade or business."  *Id.* at 1041.  Thus,

22   **the Ninth Circuit held that the district court erred when it failed to honor the choice of law**

23   **of the parties made in their contract**.  *Id.* at 1042 (emphasis added).

24           The Ninth Circuit's decisions regarding the scope of Section 16600, which preceded the

25   Court's decision in *IBM*, likewise embrace a reading of Section 16600 that restrictive covenants

26   are not invalid if they restrain only a portion of a profession, trade or business.  *See Campbell v.*

27   *Board of Trustees*, 817 F. 2d 499, 503 (9th Cir. 1987) (Section 16600 makes illegal only those

28   restraints which **entirely** preclude one from engaging in a lawful profession, trade, or business")

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1   (emphasis added);  *Gen. Commercial Packing, Inc. v. TPS, Package Eng.'g, Inc.*, 126 F. 3d

2   1131, 1133 (9th Cir. 1997) ("section 16600 does not impair General Commercial's contract with

3   TPS unless it **entirely** precludes TPS from pursuing its trade or business") (emphasis added); *see*

4   *also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, 2001 WL 283083, *6 (C.D. Cal.

5   2001) (enjoining former employees from soliciting and accepting business from Merrill Lynch

6   clients whose accounts they serviced) (citing *Boughton v. Socony Mobil Oil Co., Inc*., 231 Cal.

7   App. 2d 188, 192 (1964) ("where one is barred from pursuing only a small or limited part of a

8   business, trade or profession, the contract has been upheld as valid")); *VL Systems, Inc. v.*

9   *Unisen, Inc.,* 152 Cal. App. 4th 708, 713, n.4 (2007) ("we caution against any inference that all

10  such clauses are unenforceable.  Perhaps a more narrowly drawn clause limited to soliciting

11  employees who had actually performed work for the client might pass muster") (italics omitted).

12      Indeed, Defendant Gault South Bay's own agreements with its contractors include non-

13  compete provisions.  *See* Lueck Decl. ¶3 Exs. 6-7.  Under these circumstances, Defendants

14  should be estopped from claiming that California has an absolute prohibition against non-

15  compete agreements.

16      Moreover, California courts also have carved out an exception to Section 16600,

17  enforcing restrictive covenants when a former employee engages in unfair competition.

18  *ReadyLink Healthcare v. Cotton,* 126 Cal. App. 4th 1006, 1021-22 (2005).  "We note that 'if a

19  former employee uses a former employer's trade secrets or **otherwise commits unfair**

20  **competition**, California courts recognize a judicially created exception to section 16600 and will

21  enforce a restrictive covenant in such a case.'"  *Id*. at 1022 (emphasis added); *see also Board of*

22  *Trustees v. Roche Molecura Systems*, 487 F. Supp. 2d 1099, 1115 (N.D. Cal. 2007) (holding

23  restrictive covenants are enforceable under Section 16600 to the extent necessary to prevent

24  unfair competition).

25      The focus of DePuy's case against Defendants concerns their unfair competition and

26  breaches of duty of loyalty to DePuy.  While still under contract with DePuy, Defendants

27  commenced soliciting for DePuy's competitor, Biomet, customers and other DePuy sales

28  representatives.  LaPoint Decl. ¶¶15-17; RJN Ex. C at ¶¶4-15; Lueck Decl. Ex. 8.  This

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1   misconduct, while Defendants were working for DePuy, is a classic breach of loyalty under

2   California or Indiana law.  *See Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410-414 (2007)

3   (holding agents of a principal, including employees, are bound by a duty of loyalty to the

4   principal that prohibits them from competing with the principal, including by soliciting

5   customers); *Potts v. Review Board of the Indiana Employment Security Div.*, 475 N.E. 2d 708,

6   712 (Ind. Ct. App. 1985) ("Prior to his termination, an employee must refrain from actively and

7   directly competing with his employer for customers and employees and must continue to exert

8   his best efforts on behalf of his employer."); *Wenzel v. Hopper & Galliher, P.C.*, 830 N.E.2d

9   996, 1000-01 (Ind. Ct. App. 2005) (discussing duty of loyalty of agent to principal).  Such

10  unfairly competitive behavior is precisely the type of conduct *ReadyLink* recognizes can be cured

11  through a restriction on employment for a period of time.  *ReadyLink*, 126 Cal. App. 4th at 1021.

12  DePuy built in restrictions on Defendants' ability to compete with DePuy both during and

13  immediately after termination of their relationship, that are consistent with California and

14  Indiana law against unfair competition, breaches of the duty of loyalty and narrow restraints in

15  furtherance of the legitimate business interests of DePuy.

16          Finally, under California law, a court is bound to interpret agreements containing non-

17  competes to be lawful to the extent possible.  "The potential impact on trade must be considered

18  before invalidating a noninterference agreement.  A contract must be construed to be lawful if

19  possible." *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 278 (1985); *see also Jones v.*

20  *Humanscale Corp.*, 130 Cal. App. 4th 401, 411 (2005) (holding when a court interprets a

21  noncompete provision subject to Section 16600, a court "'must ... construe [it] to be lawful if

22  possible'") (citing *Loral Corp.,* 174 Cal. App. 3d at 278-79).  Given the threat to DePuy's

23  customer goodwill by Defendants' conduct and the narrow scope of the restrictions applicable to

24  Defendants, the Agreement would be enforced under California law.

25          The exceptions to Section 16600 make clear that Defendants wrongfully suggest that

26  Indiana and California law are diametrically opposed.  The narrow restraint agreed to by the

27  parties in their Agreement could easily be enforced in either jurisdiction.  Thus, there is not basis

28  for determining that California has a materially greater interest than Indiana, and the parties'

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

1  choice of Indiana law must be applied.

2        **C.    Even If California And Indiana Law Conflict, An Indiana Court Would Still**

3  **Enforce The Parties' Choice Of Indiana Law**

4        Ninth Circuit authority on the scope of California's Section 16600 clearly includes a

5  narrow restraint doctrine satisfied in this case.  Defendants, however, ignore the binding Ninth

6  Circuit interpretation of California law and contend that under a series of California cases, this

7  Court must hold that California's law is in conflict with the law of Indiana and that California's

8  policies bear greater weight than the countervailing concerns of Indiana in the legitimate

9  business interests of its citizens.

10       Defendants ignore the fact that it is not for this Court to overrule binding Ninth Circuit

11  authority concerning the narrow restraint limitation to Section 16600.  "We are not free to read

12  California law without deferring to our own precedent on how to construe it." *IBM*, 191 F.3d at

13  1041.

14       However, even if this Court were to conclude that California law is in conflict with

15  Indiana law, no Indiana court would hold that its interests are so subordinate to the interests of

16  California that the Indiana court would not protect the legitimate business interests of its own

17  citizen in the face of unfair competition of a former salesperson now working for another Indiana

18  company.  Thus, even if Defendants' characterization of California law were correct– that

19  covenants not to compete are void and businesses cannot use them to protect what Indiana deems

20  *legitimate* interests such as the protection of goodwill (Mov. Br., 9:28-10:10)—this Court,

21  standing in the shoes of an Indiana court and applying the transferee court's law, cannot hold that

22  an Indiana court would ignore the choice of law of the parties to hold California's interests

23  materially greater than the interests of Indiana.   As held by the Supreme Court of Indiana, "a

24  state has an interest in regulating the extent to which it will allow parties to restrain trade through

25  the use of restrictive covenants." *The Harvest Insurance Agency, Inc.,* 492 N.E.2d at 691.  No

26  Indiana Court would overturn the parties' decision to apply Indiana law to their agreement given

27  the interests of Indiana in this case. *See Allen,* 766 N.E.2d at 1162.

28       In sum, even assuming for a moment that California would have been the state of the

1  applicable law in the absence of the parties' choice of Indiana law (which assumption is not

2  necessarily correct in light of the evidence of Indiana's substantial connections to the

3  Agreement's performance), Indiana's public policy exception would not apply here to negate the

4  parties' agreement that Indiana law would apply.  DePuy has demonstrated that California does

5  not have a materially greater interest than Indiana in the Agreement's enforcement.  Moreover,

6  DePuy has also demonstrated that application of Indiana law to the enforcement of the

7  Agreement would not be contrary to a fundamental policy of  California even if California had

8  the material greater interest in the dispute, which it does not.  Thus, under Indiana choice of law

9  principles, the Court must apply Indiana law to determine the enforceability of the Agreement's

10  non-compete provisions.

11  **V.    <u>REGARDLESS OF WHICH STATE'S LAW IS APPLIED, DEFENDANTS'</u>**

12  **<u>SUMMARY JUDGMENT MOTION MUST BE DENIED IN LIGHT OF TRIABLE</u>**

13  **<u>ISSUES OF FACT AND THE LACK OF DISCOVERY</u>**

14      Defendants concede that the covenant not to compete in the Agreement is enforceable

15  under Indiana law. Mov. Br. At 9:23-26, 10:12-13.   Thus, if Indiana law is applied (which it

16  must for the reasons stated above), Defendants' motion for partial summary judgment must be

17  denied.  However, even if California law is applied, Defendants' motion to have the non-

18  compete declared invalid under California law must likewise be denied.  If the Ninth Circuit's

19  narrow restraint doctrine is applied, the Agreement is valid because there is evidence that

20  Defendants were not restrained from pursuing their trade. *See* Part D, *infra*.  If the unfair

21  competition exception is applied, then the enforceability of the parties' Agreement cannot be

22  decided solely by reference to the language of the Agreement itself.   Thus, Defendants' motion

23  for summary adjudication on the validity of the Agreement cannot be granted at this stage

24  without providing Plaintiff an opportunity for discovery on its claims.

25      Summary judgment is a drastic remedy and is therefore to be granted cautiously.

26  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513–14 (1986). Inferences

27  drawn from the evidence must be viewed in the light most favorable to the nonmoving party,

28  which here is DePuy. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456,

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

112 S. Ct. 2072, 2077 (1992).  Defendants have failed to meet their "heavy" the burden to demonstrate that there is "no genuine issue as to any material fact and that [they] are entitled to judgment as a matter of law" on their claim that the non-compete provisions in the Agreement are unenforceable. Fed. R. Civ. P. 56(c); *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999).

Summary judgment should not be granted when a party opposing the motion has not had an adequate opportunity to conduct discovery. *See Anderson*, 477 U.S. at 250 (holding discovery is required "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition."); Fed. R. Civ. P. 56(f).  "Where . . . a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).  "Further, where, as in the present litigation, no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Id.* at 774.

This action commenced in Indiana and, just as discovery was commencing, was transferred to the instant Court.  Plaintiff, in fact, attempted to conduct discovery, including the deposition of Robert Gault, on an expedited basis in the Indiana proceeding before transfer. However, Defendants stonewalled discovery, including by bringing an unmeritorious motion to quash the deposition of Robert Gault.  RJN Exs. D-F.  Before DePuy could take Robert Gault's deposition in accordance with the Indiana Court's November 6, 2007 Order denying Defendants' motion to quash or commence more detailed discovery in accordance with the Federal Rules, this action was transferred to this Court on November 13, 2007.  RJN Ex. F; Defendants' RJN Ex. E. Following transfer, a status conference was held before this Court on December 7, 2007, at which time this Court set a briefing schedule for summary adjudication.  Neubauer Decl. ¶5. Therefore, DePuy's ability to conduct any discovery in this matter has been extremely limited. Neubauer Decl. ¶¶4-5.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**
CASE NO. 5:07-cv-05897-JW
Doc. #177521

DePuy's first opportunity to take discovery is still in limbo, as the parties cannot proceed with discovery until such time as a Rule 26 conference is scheduled and initial disclosures exchanged pursuant to that meeting.  RJN Ex. G; Fed. R. Civ. P. 26(d)(1); Neubauer Decl. ¶4. Once DePuy is able to take discovery, DePuy anticipates investigating the following topics, including through Requests for Production of Documents, depositions of Gault and Gault South Bay, depositions of Biomet, Inc., Interrogatories and Requests for Admission:

- Gault's solicitation of DePuy's customers both before and after the termination of his agreement with DePuy;
- The nature of products Gault is selling to his former DePuy accounts on behalf of Biomet,
- The amount of products, in terms of units of each product, sales figures, and commissions paid to Gault, that Gault is selling to his former DePuy accounts on behalf of Biomet,
- Whether Gault and Gault South Bay are selling products on behalf of Biomet to customer accounts outside of the territory he most recently serviced on behalf of DePuy, where those accounts are located, and how much of his total commissions these account sales represent;
- Whether Gault interviewed with companies other than Biomet and for which territories;
- Why Gault uses similar restrictive covenants in contracts with his own independent contractors;
- Why the narrowness of the restrictive covenants are appropriate; and
- Why Gault has a similar restrictive covenant with Biomet.

Neubauer Decl. ¶6.

DePuy believes that the proposed discovery would lead to evidence of Defendants' unfair competition and breaches of loyalty in light of the LaPoint Declaration (*see* ¶¶15-18), the Affidavit of Jake Daneman (RJN Ex. C ¶¶4-16), and the Declaration of Dwight Lueck (*see* ¶3 Ex. 8).  DePuy also believes that the proposed discovery would result in admissions by

1  Defendants that there are potential customers and products concerning which the Agreement

2  does not restrict Defendants' competitive activities (*see* LaPoint Decl. ¶¶16-18) and, thus, the

3  Agreement's covenant not to compete is narrow.

4       These factual matters, concerning which Defendants, and not DePuy, have personal

5  knowledge, can only be learned through discovery.  They are also directly relevant to the issues

6  of Defendants' breaches of the duty of loyalty to DePuy, the nature of Defendants' unfairly

7  competitive conduct, and the fact that the numerous alternatives to direct competition with

8  DePuy in violation of the Agreement were available to Gault and Gault South Bay.  Neubauer

9  Decl. ¶¶8-9.

10      In the absence of any factual development of these issues, the Court cannot grant

11  Defendants' motion for summary adjudication.  DePuy must be provided an opportunity to

12  discover the facts underlying the existence of the unfair competition and duty of loyalty claims

13  set forth in its complaint because the existence of these claims raises exceptions to Section 16600

14  under which restraints of trade are permitted under California law.  *See ReadyLink*, 126 Cal.

15  App. 4th at 1021; *Huong Que, Inc.,* 150 Cal. App. 4th at 411.  Likewise, the fact that Gault had

16  available to him multiple avenues of employment other than just accepting a position with

17  Biomet in which he was directly soliciting the discrete list of customer accounts he serviced on

18  behalf of DePuy is directly relevant to the fact that the Agreement contains only a narrow

19  restraint and thus is not subject to Section 16600.  *See IBM*, 191 F.3d at 1036-37, 1042.

20      Whether the restraint is appropriately narrow is a triable issue of fact and necessarily

21  precludes a grant of partial summary judgment at this early juncture of the case.

22  **VI.    CONCLUSION**

23      Defendants concede that Indiana choice of law applies to the operative agreement

24  between DePuy and Defendants and they concede that under Indiana law, the agreement is fully

25  enforceable.  It defies logic that an Indiana court would overrule the parties' own stipulation that

26  Indiana law applies to an agreement fully binding under Indiana law.  Defendants cannot point to

27  a single case under Indiana law in which an Indiana court has done so.  This Court, standing in

28  the shoes of an Indiana court as it must do with respect to this transferred action, can do no more

24

1    than any other Indiana court would do:  apply Indiana law in the face of an agreement

2    enforceable under Indiana law that protects the legitimate business interests of an Indiana citizen

3    conducting business in the state of Indiana pursuant to that agreement.  At a minimum, if the

4    Court determines that California law applies (which it does not), DePuy should be provided an

5    opportunity to conduct discovery into the facts of its claims which support enforcement of the

6    agreement under California law.  Thus, Defendants' motion for summary adjudication must be

7    denied.

8    DATED: March 24, 2008                    STEPTOE & JOHNSON LLP

9

10                         By    /s/ Rebecca Edelson

                               REBECCA EDELSON

11                         Attorneys for Plaintiff

                        DEPUY ORTHOPAEDICS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND FRCP 56(f) APPLICATION**