**EXHIBIT A**

1
## DECLARATION OF MICHELLE M. REMS

2    I, Michelle M. Rems, declare:

3    1.    At all relevant times, I am and have been the Field Support Manager for DePuy

4    Orthopaedics, Inc. ("DePuy"). I first became employed by DePuy approximately eleven years

5    ago as a Senior Financial Analyst. I became the Finance Manager in 2000, and was promoted to

6    DePuy's Field Support Manager in 2004.

7    2.    I have personal knowledge of all of the facts set forth in this Declaration and, if

8    called and sworn as a witness at trial or any other hearing before this Court, would and could

9    testify as set forth herein.

10    3.    As DePuy's Field Support Manager, I have worked and do work in DePuy's

11    facilities in Warsaw, Indiana, which is the location of its corporate headquarters. Since 1999,

12    DePuy has employed and employs in Warsaw, Indiana over 1,000 of its approximately 2,028

13    total employees. No other DePuy location has this number of employees. The next largest

14    concentration of DePuy employees is in Massachusetts, with two locations there having

15    approximately 606 employees in the aggregate. There are less than 30 DePuy employees in

16    California. I know this because I have seen various HR lists identifying employees and their

17    area of responsibility. I have personally observed that for the past decade, among other areas,

18    those facilities in Indiana have consisted of and currently consist of:

19            a.    administrative, executive and corporate offices;

20            b.    research and development facilities;

21            c.    manufacturing facilities and equipment where DePuy's products are

22    manufactured before they are shipped to customers, sales representatives and other DePuy

23    locations; and

24            d.    facilities for shipment of products to DePuy's customers.

25    4.    Among DePuy's administrative offices in Indiana are those that perform

26    accounting functions for its operations nationally, including billing DePuy's customers across the

27    United States for their purchases of DePuy's products and including calculating and paying

28    commissions to DePuy's independent sales representatives across the United States. I know this

- 1 -
DECLARATION OF MICHELLE M. REMS

CASE NO. 5:07-CV-04659-JW
DOC. # CC-171960 V.1

1  because in my duties for DePuy, I am and have been involved with billing issues with customers

2  and commission and reimbursement issues with sales representatives and have worked with

3  accounting personnel in Indiana on such matters.

4      5.    In addition, originals or copies of all of DePuy's records related to its independent

5  sales representatives in the United States have been since the start of my tenure with DePuy up to

6  and including the current time, physically maintained in DePuy's headquarters in Indiana.

7      6.    As DePuy's Field Support Manager, my duties include maintaining the

8  contractual agreements with DePuy's independent sales representatives and administering DePuy

9  payments of commissions under those contractual relationships, including contracts with Robert

10  G. Galt ("Mr. Gault") and Gault South Bay ("GSB"). As part of my duties, I am required to be

11  personally familiar with those contracts and maintain true and correct copies of each of their

12  current contracts with DePuy.

13      7.    Among those records that have been and are maintained under my direction and

14  control are Mr. Gault's and GSB's contracts with DePuy, and any amendments thereto, from

15  1998 through the present.

16      8.    DePuy products that are the subject of the contracts (e.g., Total Hip Systems,

17  Total Knee Systems, Extremities, O.R. Products, Bone Cement and Accessories, and Trauma

18  Products) were primarily designed, manufactured and shipped from DePuy's facilities in Indiana.

19  I know this because I have had the opportunity to see products made and shipped directly from

20  our Warsaw facility, through which I regularly work.

21      9.    DePuy also handled in Indiana the accounting functions for the sales resulting

22  from Mr. Gault's and GSB's sales activities under the contracts. For example purchase orders

23  and invoices to customers generally identified on Appendix A to GSB's and Mr. Gault's

24  contracts were generated and sent to the customers from DePuy's offices in Indiana. During my

25  tenure with DePuy up to and including the present time, DePuy has maintained such business

26  records in its offices in Indiana. DePuy also calculated and paid from its offices in Indiana the

27  commissions and expense reimbursements due to Mr. Gault and GSB under the contracts.

28  DePuy maintains at least one copy of the business records related to such payments in its offices

1   in Indiana.  Such records are retained subject to DePuy Record Retention Policy.

2       10.    As DePuy's Field Support Manager, my duties include maintaining records of

3   payments to DePuy's independent sales representatives.  Among those records that have been

4   and are maintained under my direction and control include records of all sales generated and

5   commissions paid under the contracts with Mr. Gault and GSB.

6       I declare under penalty of perjury under the laws of the State of California and the United

7   States of America that the foregoing is true and correct.

8       Executed on November 16 , 2007, at Warsaw, Indiana.

9

10

MICHELLE M. REMS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEPUY ORTHOPAEDICS, INC.,          )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    Civil Action No. 3:07-CV-0425-RM
                                   )
GAULT SOUTH BAY, INC.              )
and ROBERT GAULT,                  )
                                   )
            Defendants.            )

## DECLARATION OF MICHELLE M. REMS

I, Michelle M. Rems, declare:

1.      At all relevant times, I am and have been the Field Support Manager for DePuy Orthopaedics, Inc. ("DePuy"). I first became employed by DePuy approximately eleven years ago as a Senior Financial Analyst. I became the Finance Manager in 2000, and was promoted to DePuy's Field Support Manager in 2004.

2.      I have personal knowledge of all of the facts set forth in this Declaration and, if called and sworn as a witness at trial or any other hearing before this Court, would and could testify as set forth herein.

3.      As DePuy's Field Support Manager, I have worked and do work in DePuy's facilities in Warsaw, Indiana, which is the location of its corporate headquarters. Since 1999, DePuy has employed and employs in Warsaw, Indiana over 1,000 of its approximately 2,028 total employees. No other DePuy location has this number of employees. The next largest concentration of DePuy employees is in Massachusetts, with two locations there having approximately 606 employees in the aggregate. There are less than 30 DePuy employees in California. I know this because I have seen various HR lists identifying employees and their area of responsibility. I have personally observed that for the past decade, among other areas, those facilities in Indiana have consisted of and currently consist of:

  a. administrative, executive and corporate offices;

  b. research and development facilities;

  c. manufacturing facilities and equipment where DePuy's products are manufactured before they are shipped to customers, sales representatives and other DePuy locations; and

  d. facilities for shipment of products to DePuy's customers.

  4. Among DePuy's administrative offices in Indiana are those that perform accounting functions for its operations nationally, including billing DePuy's customers across the United States for their purchases of DePuy's products and including calculating and paying commissions to DePuy's independent sales representatives across the United States. I know this because in my duties for DePuy, I am and have been involved with billing issues with customers and commission and reimbursement issues with sales representatives and have worked with accounting personnel in Indiana on such matters.

  5. In addition, originals or copies of all of DePuy's records related to its independent sales representatives in the United States have been since the start of my tenure with DePuy up to and including the current time, physically maintained in DePuy's headquarters in Indiana.

  6. As DePuy's Field Support Manager, my duties include maintaining the contractual agreements with DePuy's independent sales representatives and administering DePuy payments of commissions under those contractual relationships, including contracts with Robert G. Galt ("Mr. Gault") and Gault South Bay ("GSB"). As part of my duties, I am required to be personally familiar with those contracts and maintain true and correct copies of each of their current contracts with DePuy.

  7. Among those records that have been and are maintained under my direction and control are Mr. Gault's and GSB's contracts with DePuy, and any amendments thereto, from 1998 through the present. The following records were made in the course of a regularly conducted business activity at or near the time of the events recorded:

2

a.  Attached hereto as Exhibit A is a true and correct copy of the contract between Mr. Gault and DePuy dated February 9, 1998, appointing Mr. Gault as a DePuy independent sales representative until December 31, 2000, and a cover letter bearing the same date.

b.  Attached hereto as Exhibit B is a true and correct copy of the amendment to the February 9, 1998 contract dated October 12, 1999.

c.  Attached hereto as Exhibit C is a true and correct copy of the contract between Mr. Gault and DePuy dated December 11, 2000, appointing Mr. Gault as a DePuy independent sales representative until December 31, 2003.

d.  Attached hereto as Exhibit D is a true and correct copy of the contract between Mr. Gault and DePuy dated October 8, 2003, appointing Mr. Gault as a DePuy independent sales representative until December 31, 2004.

e.  Attached hereto as Exhibit E is a true and correct copy of the amendment to the October 8, 2003 contract dated June 20, 2004.

f.  Attached hereto as Exhibit F is a true and correct copy of the contract between Mr. Gault and DePuy dated October 21, 2004, appointing Mr. Gault as a DePuy independent sales representative until December 31, 2005.

g.  Attached hereto as Exhibit G is a true and correct copy of the amendment to the October 21, 2004 contract dated May 12, 2005.

h.  Attached hereto as Exhibit H is a true and correct copy of the amendment to the October 21, 2004 contract dated September 7, 2005.

i.  Attached hereto as Exhibit I is a true and correct copy of the contract between GSB and DePuy dated December 5, 2005, appointing GSB as a DePuy independent sales representative until December 31, 2006.

j.  Attached hereto as Exhibit J is a true and correct copy of the amendment to the December 5, 2005 contract dated April 1, 2006.

3

k.  Attached hereto as Exhibit K is a true and correct copy of the contract between GSB and DePuy dated November 22, 2006, appointing GSB as a DePuy independent sales representative until December 31, 2007.

l.  Attached hereto as Exhibit L is a true and correct copy of the amendment to the November 22, 2006 contract dated December 21, 2006.

m.  Attached hereto as Exhibit M is a true and correct copy of the letter sent to Mr. Gault and GSB dated August 23, 2007, terminating the November 22, 2006 contract.

8.  DePuy products that are the subject of the contracts (e.g., Total Hip Systems, Total Knee Systems, Extremities, O.R. Products, Bone Cement and Accessories, and Trauma Products) were primarily designed, manufactured and shipped from DePuy's facilities in Indiana. I know this because I have had the opportunity to see products made and shipped directly from our Warsaw facility, through which I regularly work.

9.  DePuy also handled in Indiana the accounting functions for the sales resulting from Mr. Gault's and GSB's sales activities under the contracts. For example, purchase orders and invoices to customers generally identified on Appendix A to the contracts were generated and sent to the customers from DePuy's offices in Indiana. During my tenure with DePuy up to and including the present time, DePuy has maintained such business records in its offices in Indiana. DePuy also calculated and paid from its offices in Indiana the commissions and expense reimbursements due to Mr. Gault and GSB under the contracts. DePuy maintains at least one copy of the business records related to such payments in its offices in Indiana. Such records are retained subject to DePuy Record Retention Policy.

10.  As DePuy's Field Support Manager, my duties include maintaining records of payments to DePuy's independent sales representatives. Among those records that have been and are maintained under my direction and control include records of all sales generated and commissions paid under the contracts with Mr. Gault and GSB. DePuy maintains its sales and commission records regarding its relationship with Mr. Gault and GSB in an Excel spreadsheet.

4

Each of the entries in that spreadsheet was made in the ordinary course of business at or near the time of the event reflected in the spreadsheet.

11.    DePuy submits commissions and any other payments due and payable to a sales representative through direct deposit into the sales representative's chosen bank account. In January 2006, Gault modified his direct deposit instructions for payment of commissions and any other payments due under the December 5, 2005 contract. Attached hereto as Exhibit N is a true and correct copy of the "Recurring ACH Direct Deposit Set Up Maintenance Form" submitted by Mr. Gault on or about January 18, 2006 (with the first portion of Mr. Gault's bank account number redacted). This document is an instruction from Mr. Gault to DePuy that DePuy should send future payments under the current contract to "Robert G. Gault" to his bank account number ending in 884 at Bank of the West, routing number 121100782. DePuy requests that sales representatives attach a voided check for the account where the payments are to be submitted to ensure the direct deposits are sent to the correct bank routing number and bank account number. Mr. Gault attached a voided check to his instruction bearing the names "Robert G. Gault" and "Patricia L. Gault."

12.    Pursuant to Mr. Gault's instructions, DePuy paid all commissions and other payments due under the December 5, 2005 contract and the November 22, 2006 contract to this account number for the Gaults. Mr. Gault has not modified his instructions on the account to which DePuy payments are made since his January 2006 instruction. I know this because I checked DePuy's ACH database and confirmed that the payment instructions as of September 27, 2007, was still set up for payment to "Robert G. Gault" to the Gaults' bank account number ending in 884 at bank routing number 121100782. A true and correct copy of a printout produced from the ACH database is attached herewith as Exhibit O (with the first portion of Mr. Gault's bank account number redacted).

13.    The ACH system is the only method DePuy uses to submit payments to sales representatives. All commissions due Mr. Gault or GSB under the contracts after January 2006 went to that account number for the Gaults as directed by Mr. Gault. To my knowledge, Mr.

5

Gault has never requested that DePuy make any payments to GSB, and DePuy has never made any payments to GSB.

14.    DePuy maintains a computer operating system called the AS400 system that, among other things, tracks information about a sales representative's sales.    Each sales representative has a unique identification number, often referred to as a "700" number.    Mr. Gault's identification number is 701940. This number appears on the Appendix A to Mr. Gault's contracts with DePuy referenced above, as well as on the contracts with GSB.    The AS400 system still lists "Bob Gault" as a DePuy sales representative.    Attached hereto as Exhibit P is a true and correct copy of a print-out from this system showing "Bob Gault" as the sales representative.    There is no sales representative listed under the name Gault South Bay or GSB. To my knowledge, Mr. Gault has never requested that his DePuy identification number, or the name associated with this account number, be changed.

15.    Gault has provided DePuy with information on how he wants his commissions treated for federal tax purposes.    Attached hereto as Exhibit Q is a true and correct copy of the "Request for Taxpayer Identification Number And Certification" W-9 form dated June 28, 2000, signed, and submitted to DePuy by Mr. Gault.    Mr. Gault listed "Gault South Bay, Inc." as the relevant entity for federal tax purposes.    At the time, the sales representative contract in effect was between Mr. Gault and DePuy.

16.    Attached hereto as Exhibit R is a true and correct copy of the "Request for Taxpayer Identification Number And Certification" W-9 form dated January 13, 2005, signed, and submitted to DePuy by Mr. Gault.    Mr. Gault listed "Gault South Bay, Inc." as the relevant entity for federal tax purposes.    At the time, the sales representative contract in effect was between Mr. Gault and DePuy.

I declare under penalty of perjury under the laws of the State of Indiana that the foregoing is true and correct.

Executed on October 12, 2007, at Warsaw, Indiana.

Michelle M. Rems

**EXHIBIT A**





DePuy Inc.

P.O. Box 988
700 Orthopaedic Drive
Warsaw, Indiana 46581-0988
U.S.A.

Telephone: + 1 (219) 267 8143
Fax: + 1 (219) 267 7196

February 9, 1998

Robert G. Gault
Suite 4
536 Weddell Drive
Sunnyvale, CA 94089

Dear Bob:

We have had many discussions concerning your business relationship with DePuy. Per
your correspondence and our conversations, you have not been pleased with all of the
past negotiations and communications concerning your financial arrangement as an
independent contractor associated with DePuy.

There seems to be some controversy regarding the payment of past commissions, growth
commissions and reimbursement for expenses. To resolve this issue, DePuy will pay you
$40,000 within fifteen (15) business days of its receipt of the enclosed copy of this letter
signed by you and both copies of the enclosed Sales Representative Agreement dated
February 9, 1998. You agree that in return for this payment of $40,000, you will release,
discharge and covenant not to sue DePuy, its parent corporation, affiliates or subsidiaries,
and any of their officers, directors, employees and/or shareholders from any and all
claims arising out of past commissions, growth commissions or reimbursement or rising
out of any agreement, whether written or oral, between yourself and DePuy. This release
will include any and all claims through the date of the enclosed Sales Representative
Agreement dated February 9, 1998.

I have enclosed two (2) copies of that Independent Sales Representative Agreement,
dated February 9, 1998, between you and DePuy. This agreement will be effective
January 1, 1998. This agreement addresses our relationship for the future.

I would also like to congratulate you on a successful 1997 as an independent contractor
sales representative with DePuy. At the awards breakfast at the upcoming AAOS
meeting, your accomplishments will be recognized and you will be awarded an additional
$20,000 in bonus commissions. Please keep this information confidential as other
independent contractor sales representatives are not being informed of the outcome of our
sales contest until the morning of the breakfast at the AAOS meeting. .

Robert G. Gault
February 9, 1998
Page Two

Bob, I feel that our proposal resolves the outstanding commission issues. The Sales
Representative Agreement is fair and will allow us to move forward and to continue to
grow sales in the Territory.

Please call me if there are any questions. I look forward to working with you in 1998.

Sincerely,

David R. Barrett
Vice President, Sales

DRB/kd

Enclosures

AGREED & ACCEPTED:

Robert G. Gault

Date: 2-10-98

Feb. 9, 1998



Robert G. Gault
Suite 4
536 Weddell Drive
Sunnyvale, CA 94089

DePuy Orthopaedics, Inc.
PO Box 988
700 Orthopaedic Drive
Warsaw, Indiana 46581-0988
U.S.A.

Dear Bob:

Telephone: + 1 (219) 267 8143
Fax: + 1 (219) 267 7196

Effective January 1, 1998, (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of you as its exclusive sales representative for the specific DePuy Territory (Territory") and specific DePuy Products as outlined on the attached Appendix A, which appendix is incorporated herein by reference and which may be modified from time to time as mutually agreed by the parties.

You agree that you are an independent contractor and not an employee of DePuy. You shall be responsible for making sales calls representing DePuy and completing sales within the Territory in accordance with DePuy policies that are made known to you from time to time. You agree to devote your best efforts and sufficient working time to selling DePuy Products. The manner in which you perform your obligations under the Agreement is at your sole discretion, provided that you comply with DePuy's sales policies and procedures. You are required to submit orders to DePuy but you are not required to submit any reports to DePuy regarding your sales activities or results. You agree that neither you nor anyone in your employ, nor any member of your immediate family will during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy, or accepting remuneration of any kind from any person providing such goods and services. You are, of course, free to engage in any non-competitive activities.

You may, of course, hire your own employees to assist you in the performance of your duties hereunder, which employees shall be solely your responsibility and shall be compensated solely by you. You agree that any such employees will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy sales policies and procedures, the non-compete provisions and all other provisions of this agreement to which you are subject. You are responsible for maintaining your own office and/or office equipment for your employees' use.

You will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by you or your employees in the performance of this Agreement.

You will not in any way modify DePuy packaging or products and may only sell DePuy products which conform to the specifications and quality control procedures of DePuy. You will not

Robert G. Gault
Feb. 9, 1998
Page 2

knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in your possession. You will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition of a DePuy product which results in such third party being invoiced or charged for the product by you, someone in your control or in your employ, or by an entity in which you have a financial interest.

DePuy will pay you a monthly commission, as described on Appendix B, based on invoice sales completed to customers while this appointment is in effect. It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to you regarding sales of the products. DePuy will pay commissions on your sales based upon invoices generated by DePuy. The commission rate for a sale already completed will not be adjusted except by mutual written consent. You agree to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which you did not earn.

DePuy will reimburse you certain expenses in accordance with DePuy sales policies and procedures. In no event, however, will you be reimbursed for your travel or transportation expenses.

DePuy will supply you at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to you for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments.

This appointment will remain in effect until Dec. 31, 2000. The appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days notice prior to the end of the initial term or any renewal period.

The appointment may be terminated unilaterally by either party on thirty (30) days notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. Notwithstanding the above, however, you do agree that there will be sufficient cause to terminate this appointment immediately in the event that you or any of your employees sells a competitive product,

Robert G. Gault
Feb. 9, 1998
Page 3

knowingly provides to DePuy false and misleading information regarding products sold, or engages in direct billing. The appointment will automatically terminate in the event of your death.

Upon termination, you further agree to return to DePuy all DePuy owned inventory, instruments and promotional materials in your possession. You also agree to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party. You also agree within thirty (30) days of the termination of your appointment to pay to DePuy any sums that are outstanding. DePuy agrees to pay you any commissions due to you within thirty (30) days of your termination; however, DePuy may offset against such commissions any amounts owed by you to DePuy. Any office or other equipment purchased by you shall remain your property upon termination.

Finally, you agree that you have no rights of any kind concerning the Territory and cannot assign your appointment to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of your Territory. Any attempt to do so will be cause for DePuy to immediately terminate your appointment as DePuy's independent sales representative. We both agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, and that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and your relationship with DePuy.

If you agree to accept this appointment under these terms, please sign and return to me the enclosed copy of this letter. You agree that the above Agreement is not effective until approved by DePuy's Vice President for Sales or other appropriate officer of DePuy. If there are any questions please feel free to contact me. We look forward to working with you.

Very truly yours,

David R. Barrett
Vice President, Sales

Robert G. Gault
Feb. 9, 1998
Page 4

AGREED AND ACCEPTED

Name

Date: 3-2-98

APPROVED

DePuy Orthopaedics, Inc.

By: DR Barrett / un

Title: VP. Sales

Date: 3·8·98


DEPUY
Legal Dept.

## APPENDIX A

**Territory:** The state of California and those customers and institutions within the state of California as may be mutually agreed upon from time to time by DePuy and the Sales Representative.

**Products:** Any and all products sold by DePuy Orthopaedics, Inc. and DePuy ACE Medical Company.

## APPENDIX B

Twelve percent (12%) on sales of DePuy Orthopaedics, Inc. Products for the first year of the Agreement and sixteen percent (16%) on any increase in sales over those made in the Territory in the previous year.

Fourteen percent (14%) on sales of DePuy ACE Medical Company Products for the first year of the Agreement, and twenty percent (20%) on any increase in sales over those made in the Territory in the previous year.

Notwithstanding the above, for the period from the Effective Date of this Agreement through June 30, 1998, the Sales Representative shall receive an additional sum of $5000.00 per month. After June 30, 1998, the Sales Representative's commission shall only be equal to the above described commission.

**EXHIBIT B**



**DePuy** ®

a Johnson-Johnson company

**DePuy Orthopaedics, Inc.**

7060 Koll Center Parkway, Suite 32-
Pleasanton. CA 94566
Ph: (925) 600-0011
Fax: (925) 600-0050

October 12, 1999

COPY

Bob Gault
DePuy Inc.
536 Weddell Dr., Suite 4
Sunnyvale, CA 94089

RE:    Amendment of Sales Representative Agreement

Dear Bob,

Per our discussion, we have agreed to modifications of the February 9, 1998 Sales
Representative Agreement between yourself and DePuy Orthopaedics. All other
provisions of the February 9, 1998 Sales Representative Agreement and its subsequent
amendments shall remain unchanged and in effect.

1.    "Territory" shall no longer include Kaiser South San Francisco (C/N 234149).
      This change is effective August 5, 1999. You will receive a 4% override on the
      sales of DePuy products in this account from August 5, 1999 through December
      31, 2000. The override will apply to any DePuy products converted to J&J
      products (i.e. S-ROM hips) during the term of this Agreement.

2.    The Sales Representative Agreement dated February 9, 1998 shall be extended for
      1 additional year and its new expiration date shall be December 31, 2001.

If this Amendment is acceptable to you, please sign and return to Wayne Hill the
enclosed copy of this letter by Wednesday, October 20, 1999. Wayne's mailing address
is: DePuy Orthopaedics, 300 E. Carpenter Fwy., Suite 1405, Irving, TX 75062.

Thank you for your assistance.

Sincerely,

*Lauri H. Campbell*

Lauri H. Campbell
General Manager, Northern California    *JK 4 letter 5/22/00*

AGREED AND ACCEPTED:

Robert G. Gault

Date:    5-22-00

**EXHIBIT C**



December 11, 2000                    

a *Johnson-Johnson* company

**DePuy, Inc.**
**Northern California**

Bob Gault
18428 Twin Creeks Road
Monte Sereno, CA 95030

3140 Gold Camp Drive, Suite 140
Rancho Cordova, CA 95670
Phone   (916) 853-1888
Fax      (916) 853-2580

Dear Bob:

Effective January 1, 2001 (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of you as its sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products") as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to you. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

You agree that you are an independent contractor and not an employee of DePuy. You shall be responsible for making sales calls representing DePuy and completing sales within the Territory in accordance with DePuy and Johnson and Johnson guidelines, policies and procedures that are made known to you from time to time. You agree to devote your best efforts and sufficient working time to selling DePuy Products. The manner in which you perform your obligations under the Agreement is at your sole discretion, provided that you comply with DePuy's sales policies and procedures. You are required to submit orders to DePuy but you are not required to submit any reports to DePuy regarding your sales activities or results. You agree that neither you nor anyone in your employ, nor any member of your immediate family will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy, or accepting remuneration of any kind from any person providing such goods and services. You are, of course, free to engage in any non-competitive activities.

You may, of course, hire your own employees to assist you in the performance of your duties hereunder, which employees shall be solely your responsibility and shall be compensated solely by you. You agree that any such employees will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and Johnson & Johnson guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which you are subject. You are responsible for maintaining your own office and/or office equipment for your employees' use.

You will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by you or your employees in the performance of this Agreement.

Representative Name
Date
Page 2

You will not in any way modify DePuy packaging or products, and may only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. You will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in your possession. You will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a DePuy product or instrument which results in such third party being invoiced or charged a price or instrumental fee(s) for the product by you, someone in your control or in your employ, or by an entity in which you have a financial interest.

DePuy will pay you a monthly commission, as described on Appendix B, based on invoice sales completed to customers while this appointment is in effect. It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to you regarding sales of the products. DePuy will pay commissions on your sales based upon invoices generated by DePuy. The commission rate for a sale already completed will not be adjusted except by mutual written consent. You agree to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which you did not earn.

You agree to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, you agree to meet with DePuy representative(s) no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year. If you fail to meet with DePuy representative(s) or if you and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both of parties agree that the annual sales quotas for the next year will be equal to the prior year's sales for each Product Category in the Territory plus the following percentages: five percent (3%) for Total Hip Systems and Total Knee Systems; five percent (5%) for Extremities, Bone Cement, Reconstructive Orthobiologics, and all Trauma Products; and three percent (3%) for O.R. Products. In the event that you fail to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, you agree that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to you: (a) terminate this agreement: or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A. DePuy's exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

Representative Name
Date
Page 3


DePuy will reimburse you certain expenses in accordance with DePuy sales policies and procedures. In no event, however, will you be reimbursed for your travel or transportation expenses.

DePuy will supply you at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to you for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments.

This appointment will remain in effect until December 31, 2003. The appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days' notice prior to the end of the initial term or any renewal period.

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. Notwithstanding the above, however, you do agree that there will be sufficient cause to terminate this appointment immediately in the event that you or any of your employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, or engages in direct billing, or violates any written DePuy or J&J policy and procedure. The appointment will automatically terminate in the event of your death.

Upon termination, you further agree to return to DePuy all DePuy owned inventory, instruments and promotional materials in your possession. You also agree to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party. You also agree within thirty (30) days of the termination of your appointment to pay to DePuy any sums that are outstanding. DePuy agrees to pay you any commissions due to you within thirty (30) days of your termination; however, DePuy may offset against such commissions any amounts owed by you to DePuy. Any office or other equipment purchased by you shall remain your property upon termination. You also agree that, if this Agreement is terminated for any reason, that for or a period of one (1) year after termination of the Agreement, that you will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement. For purposes of this paragraph only, competitive products shall mean products that compete with or are similar to the Products listed or included on Appendix A at the time of termination of this Agreement.

Representative Name
Date
Page 4

You represent and warrant to DePuy that there are no other commitments or agreements that would prevent you from entering into this Agreement or performing the obligations required of you under this Agreement. Finally, you agree that you have no rights of any kind concerning the Territory and cannot assign your appointment to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of your Territory. Any attempt to do so will be cause for DePuy to immediately terminate your appointment as DePuy's independent sales representative. We both agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. We each specifically agree to waive our right to trial by jury in any litigation arising from this Agreement. We agree that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy including, without limitation, the agreement contained in the letter dated February 9, 1998 and any subsequent amendments to that agreement. We both agree that the language of this Agreement will construed as a whole, according to its fair meaning and not for or against either of us, regardless of who drafted such language.

If you agree to accept this appointment under these terms, please sign and return to me the enclosed copy of this letter. You agree that the above Agreement is not effective until approved by DePuy's Area Vice President for Sales or other appropriate officer of DePuy. If there are any questions please feel free to contact me. We look forward to working with you.

Very truly yours,

James K. Fletcher
General Manager


**AGREED AND ACCEPTED:**

Representative Name

Date: 12-19-00


**APPROVED:**

DePuy Orthopaedics, Inc.

By: _Scott Curet_

Title: AVP

Date: 1/8/01

## APPENDIX A

**Territory:** VA Palo Alto, Santa Clara Valley, St Louise, Los Gatos Community, Kaiser Redwood City, Stanford, Oconnor, El Camino, Watsonville, Seton, Good Samaritan, Fremont Surgery Center, San Jose Medical Center, Regional Medical Center of San Jose

**Products:**    The following DePuy and DePuy ACE product categories:

Total Hip Systems
Total Knee Systems
O.R. Products
Extremities (including shoulders, elbows, feet, ankles, fingers, wrists)
Bone Cement
Reconstructive Orthobiologics Products
Trauma Products
Trauma Orthobiologics Products

## APPENDIX B

**DePuy Orthopaedics, Inc. Products Commissions: 12% on all sales and 16% on growth sales.**

**DePuy ACE Medical Company Products (Trauma Products): 14% on all sales and 20% on growth sales.**

*** %4 commission on all DePuy Orthopedics Inc. products in the following accounts for the twelve commission pay periods of 2001: Sequoia (327550), Washington (364863), San Leandro (324319), Eden (180619).

12-1900

**EXHIBIT D**

October 8, 2003





DePuy Orthopaedics, Inc.

Bob Gault
420 Santa Rosa Dr.
Los Gatos, CA 95066

Dear Bob,

Effective January 1, 2004, (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of you as its sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products") as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to you. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

You agree that you are an independent contractor and not an employee of DePuy. You shall be responsible for making sales calls representing DePuy and completing sales within the Territory in accordance with DePuy and Johnson and Johnson ("J&J") guidelines, policies and procedures, including without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, that are made known to you from time to time. You agree to devote your best efforts and sufficient working time to selling DePuy Products. You agree to attend and participate in sales training and training related to DePuy and/or J&J guidelines, policies and procedures as required by DePuy. The manner in which you perform your obligations under the Agreement is at your sole discretion, provided that you comply with DePuy's sales policies and procedures. You are required to submit orders to DePuy and may from time to time be requested by DePuy to provide reports to DePuy regarding your sales activities or results. You agree that neither you nor anyone in your employ, nor any member of your immediate family will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services. You are, of course, free to engage in any non-competitive activities.

You may hire your own employees or contract with other individuals or entities to assist you in the performance of your duties hereunder, which employees, individuals or entities shall be solely your responsibility and shall be compensated solely by you. You agree that any such employees, individuals or entities will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and J&J guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which you are subject. You agree to provide DePuy with information regarding such employees and/or copies of any agreements between you and any such employees, individuals or entities as requested by DePuy.

Gault
October 8, 2003
Page 2

You further agree to modify such agreements as reasonably requested by DePuy to achieve the purposes of this paragraph. You are responsible for maintaining your own office and/or office equipment for your employees' use.

You will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by you or your employees in the performance of this Agreement.

You will not in any way modify DePuy packaging or products, and may only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. You will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in your possession. You will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a DePuy product or instrument which results in such third party being invoiced or charged a price or fee(s) of any kind, including a delivery charge or fee, for the product or instrument by you, someone in your control or in your employ, or by an entity in which you have a financial interest. Pursuant to DePuy's and J&J's policies and procedures, you will immediately report to DePuy any reports of problems with any DePuy product which comes to your attention, including without limitation, adverse events regarding such products.

DePuy will pay you a monthly commission, as described on Appendix B, based on net sales (invoice less credits) completed to customers while this appointment is in effect. It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to you regarding sales of the products. DePuy will pay commissions on your sales based upon invoices, less credits, generated by DePuy, or in the case of Co-Marketed Products, its Affiliates and/or Business Partners, as defined below. The commission rate for a sale already completed will not be adjusted except by mutual written consent. You agree to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which you did not earn.

You agree to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, you agree to meet with DePuy representative(s) no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year. If you fail to meet with DePuy representative(s) or if you and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both parties agree that the annual sales quotas for the next year will be equal to the prior year's sales for each of the following Product or Product Categories, provided these Products or Product Categories are included in Appendix A, in the Territory plus the following percentages:

Gault
October 8, 2003
Page 3

Ten percent (10%) for Total Hip Systems and Total Knee Systems; ten percent (10%) for Extremities; fifteen percent (15%) for Bone Cement/Accessories; fifteen percent (15%) for Orthobiologics: fifteen percent (15%) for Trauma Products; and three percent (3%) for O.R. Products.  In the event that you fail to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, you agree that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to you: (a) terminate this agreement: or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A.  DePuy's exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

DePuy will reimburse you certain expenses you incur in connection with your performance of your obligations under this Agreement, in accordance with DePuy and J&J sales policies and procedures.  In no event, however, will you be reimbursed for your travel or transportation expenses. Notwithstanding the foregoing, DePuy may, at its sole option, reimburse you for travel and related expenses incurred by you in connection with sales training, trade, and educational meetings and seminars, you attend at DePuy's request.

DePuy will supply you at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate.  DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy.  Further, DePuy shall not be liable to you for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments.  You agree that DePuy may at any time this Agreement is in effect and for a period of three (3) years after termination of this Agreement for any reason audit and inspect your business record to ensure compliance with DePuy and J&J policies and procedures.

From time to time during the term of this appointment, DePuy may, but shall not be required to, offer new products for sale in the Territory ("New Products").  With regard to such New Products in the Territory, DePuy reserves the right, in its sole discretion, to (a) on thirty (30) days prior written notice to you, require you to market and solicit sales of New Products pursuant to the terms of this Agreement; or (b) on thirty (30) days prior written notice to you, require you to jointly introduce and market such New Products in conjunction with the efforts of DePuy and any other J&J company or companies ("Affiliate") and/or DePuy's business partners ("Business Partner").  For purposes of this Agreement, an "Affiliate" is any other company or entity controlling, controlled by or under common control with DePuy and a Business Partner shall include, without limitation, an individual or entity which is not an Affiliate and which has contracted with DePuy regarding the marketing or distribution of such New Product; or (c) introduce and market such New Product on DePuy's own behalf or through its Affiliates on an exclusive basis, in which event such New Products will not be made available to you or included in the Products covered by this Agreement.

Gault
October 8, 2003
Page 4

DePuy shall have the sole and exclusive right to establish the terms under which New Products
will be marketed and to make all decisions regarding such marketing arrangements, including but
not limited to, decisions regarding customer account representation, commission rates, credit for
sales, and/or commission splits (if applicable). Notwithstanding anything to the contrary
contained in this Agreement, DePuy shall not be liable to make any payment to you with regard
to a New Product if Company introduces and markets such New Product pursuant to (c) in the
immediately preceding paragraph. All of your obligations regarding Products shall also apply to
any New Products which are added to this Agreement.

Notwithstanding anything herein to the contrary, DePuy shall have the right to enter into Co-
Marketing Arrangements (as defined below) with its Affiliates related to the marketing,
representation and sale of New Products. As used herein, "Co-Marketing Arrangement" means
that New Products subject to a Co-Marketing Arrangement will be marketed, represented and
sold in the Territory through the sales forces of DePuy and/or its Affiliates and/or its Business
Partners. DePuy reserves the sole right to establish the terms under which New Products will be
co-marketed and to make all decisions regarding such Co-Marketing Arrangements, including
but not limited to, decisions regarding customer account representation, commission rates, credit
for sales, and/or commission splits (if applicable). Products currently subject to a Co-Marketing
Arrangement are identified on Appendix A, which may be modified from time to time by DePuy.
Products and New Products currently subject to a Co-Marketing Arrangement or which become
subject to a Co-Marketing Arrangement during the term of this Agreement will be referred to
herein as "Co-Marketed Products".

This appointment will remain in effect until December 31, 2004. The appointment shall be
automatically renewed for one (1) year periods thereafter unless terminated by either party on
sixty (60) days' notice prior to the end of the initial term or any renewal period. In the event that
DePuy provides written notice pursuant to this paragraph that this Agreement will not be
renewed or extended at the end of the initial term or any renewal term, you agree that anytime in
the sixty (60) day period immediately prior to termination or expiration of this Agreement,
DePuy may, at is sole option, immediately terminate this Agreement by paying you an amount
equal to one (1) month's average commissions based on the prior six (6) months commissions
paid to you, in which case the noncompetition period described below will commence upon your
receipt of such payment.

In the event that neither party provides sixty (60) days notice prior the end of the term that this
Agreement will not be extended for an additional year, DePuy may, on sixty (60) days written
notice prior to the end of the term or then current term, change or modify the Territory.
However, DePuy agrees, that, except as agreed to by the parties, changes or modifications in the
Territory will not occur more than once per year with while this Agreement is in effect.

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the
event of either (a) breach of any provision of this appointment which, if correctable, is not

Gault
October 8, 2003
Page 5

corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation. Notwithstanding the above, however, you do agree that there will be sufficient cause to terminate this appointment immediately in the event that you or any of your employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, engages in direct billing, violates any written DePuy or J&J policy and procedure, including, without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, is debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program, if you knowingly employ or contract with an individual or entity so debarred, excluded or prohibited. You agree to notify DePuy of any final adverse action, discovery of employment by or contract with an excluded individual or entity or exclusion as defined above within thirty (30) days of such an action. You further agree that DePuy may terminate this Agreement immediately if you commit any act or omission which in DePuy's sole determination has or will have a negative effect on the reputation of DePuy and/or J&J. The appointment will automatically terminate in the event of your death.

Upon termination, you further agree to return to DePuy all DePuy owned inventory, instruments and promotional materials in your possession. You also agree to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party or which is returned to DePuy in a damaged condition rendering such inventory incapable of sale. You also agree within thirty (30) days of the termination of your appointment to pay to DePuy any sums that are outstanding. DePuy agrees to pay you any commissions due to you within thirty (30) days of your termination; however, DePuy may offset against such commissions any amounts owed by you to DePuy. You further agree that DePuy may deduct from any commissions owed to you any outstanding amounts resulting from your failure to return to DePuy any inventory, instruments and promotional materials in your possession or for which there is no record of sale or any inventory which has been damaged to a point where it is no longer capable of sale. Any office or other equipment purchased by you shall remain your property upon termination.

You agree that, if this Agreement is terminated for any reason, that for or a period of one (1) year after termination of the Agreement, that you will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory or sales to the same accounts covered by the Agreement. For purposes of this paragraph only, competitive products shall mean products that compete with or are similar to the Products listed or included on Appendix A at the time of termination of this Agreement. In the event of termination of this Agreement as set forth above, the one year period of noncompetiton will start on the date such termination is effective. You agree that no claim that you may have against DePuy shall constitute a defense to enforcement of the noncompetition provisions of this Agreement. You also agree to waive any defense to entry of a preliminary injunction prohibiting your violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy.

Gault
October 8, 2003
Page 6

As consideration for the foregoing agreement not to accept such a position, upon termination of this Agreement, DePuy agrees to pay you on a monthly basis during the one (1) year period after termination an amount equal to one-twelfth of the aggregate commissions paid to you for the twelve months prior to such termination, beginning with the first month following such termination. DePuy will pay you this amount unless this Agreement is terminated by DePuy due to your sale of a competitive product, or your providing DePuy with false and misleading information about the sale of products, or direct billing or your failure to comply with DePuy and/or J&J policies and procedures. Notwithstanding the foregoing, however, if DePuy should inform you in writing before it begins such payments that it chooses not to make such payments or if during the one year (1) period after termination DePuy should inform you that it will cease making such payments, then you will be released from any and all restrictions on accepting a position with a competitor of DePuy and/or on sales of product competitive to DePuy. In addition, if you should accept a position with a competitor or enter into any agreement or arrangement with any third party which involves, directly or indirectly, the sales of products competitive to DePuy during the one (1) year period after terminate, such payments shall immediately cease and DePuy shall have no further obligation to make such payments. In each such event described above, will you have no right or claim to any further payments from DePuy.

You represent and warrant to DePuy that the execution, delivery, and performance of this Agreement by you will not conflict with, breach, cause a default under, or result in the termination of any contract, employment relationship, agreement, or understanding, oral or written, with any third party, including without limitation any noncompetition covenant to which or by which you are bound and that there are no other commitments or agreements that would prevent you from entering into this Agreement or performing the obligations required of you under this Agreement.

You further represent and warrant that you are not now and have not at any time in the past been debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program and you have not knowingly employed or contracted with an individual or entity so debarred, excluded or prohibited. Finally, you agree that you have no rights of any kind concerning the Territory and cannot assign your appointment to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of the Territory. Any attempt to do so will be cause for DePuy to immediately terminate your appointment as DePuy's independent sales representative. We both agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. We each specifically agree to waive our right to trial by jury in any litigation arising from this Agreement. We agree that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy. We both agree that the language of this Agreement will be

Gault
October 8, 2003
Page 7

construed as a whole, according to its fair meaning and not for or against either of us, regardless
of who drafted such language. If a court of competent jurisdiction or an arbitrator finds or
determines any provision of this Agreement invalid or unenforceable, such provision shall not
affect the remainder of this Agreement, which shall remain in full force and effect.

If you agree to the terms set forth above, please sign and return to the undersigned the enclosed
copy of this document.  You agree that the above Agreement is not effective until approved by
DePuy's Area Vice President for Sales or other appropriate officer of DePuy. .

If there are any questions please feel free to contact me.  We look forward to working with you.

Very truly yours,

Bradford C. LaPoint
Territory General Manager


**AGREED AND ACCEPTED:**

Representative Name

Date: _11-11-03_


**APPROVED:**

DePuy Orthopaedics, Inc.

By: _Scott Cun___

Title: _AVP_____

Date: _11/13/03____

J & J
Low Dept
Worsow

## APPENDIX A

**Territory:**       **All accounts currently listed under customer #701940**

**Products:**       DePuy and DePuy ACE Product categories to include:

Total Hip Systems
Total Knee Systems
O.R. Products (Excluding Hall Power Equipment)
Extremities
Bone Cement and Accessories
Trauma Products

Co-Marketed Product categories to include:

Orthosorb
Restore
Conduit
Alpha BSM
Symphony
Hall Surgical Power Instruments

## APPENDIX B

**DePuy Orthopaedics, Inc. Product Commissions:**
> 12% up to last year's sales and 16% on sales in excess of last year's sales, unless otherwise noted, for the following Product Categories:

- Hips
- Knees
- Extremities
- OR Medical
- Bone Cement/Accessories
- Co-Marketed Products
  - Hall Power Equipment

**DePuy ACE Medical Company Product Commissions:**
> 14% up to last year's sales and 20% on sales in excess of last year's sales, unless otherwise noted, for the following Product Categories:

- Trauma Products
- Co-Marketed Products
  - Orthosorb

**Orthobiologic Product Commissions:**

- Restore:
  12% up to last year's sales and 16% on sales in excess of last year's sales.

- Alpha BSM:
  14% up to last year's sales and 20% on sales in excess of last year's sales

- Conduit/Symphony/Optium/IC Graft Chamber:
  The base commission rate will match the Sales Representative's Orthopaedic base commission rate (12%). Base commission will be paid on 100% of the net sales billed by DePuy and/or its Affiliate companies.

  Growth commissions are calculated by adding DePuy Orthopaedic and Conduit/Symphony/Optium/IC Graft Chamber sales (at 100%) and measured against prior year sales. Standard growth commission will be paid on DePuy Orthopaedic product sales. Growth commissions for will be calculated on 40% of the Conduit/Symphony/Optium/IC Graft Chamber sales growth dollars. The growth commission percentage rate will be the same additional percentage as the Sales Representative's growth commission for DePuy Orthopaedic Products.

**EXHIBIT E**





● **DePuy**

a *Johnson-Johnson* company

**DePuy Orthopaedics, Inc.**

June 20, 2004

Bob Gault
18435 Twin Creeks Road
Monte Sereno, CA 94025



Dear Bob,

Per our discussion on June 10th concerning your Sales Agreement (the "Agreement") dated November 11, 2003, we agree that effective July 11, 2004 the Agreement will be amended by adding the following to Appendix B:

Account Responsibility will include all in account # 701940 with the exception of Kaiser Redwood City #234146. You will receive a 4% commission over ride on account #234146 through December 31, 2004.

All other provisions and terms of the Agreement will remain in effect and unmodified.

If the above changes are acceptable to you, please sign and return to me the two copies of this letter. You agree that this amendment is not effective until approved by DePuy's Area Vice President for Sales or other appropriate officer of DePuy. If there are any questions please feel free to contact me.

Sincerely,

Brad LaPoint
Territory General Manager Northern California

J & J
Low Dept
Warsaw

Agreed and Accepted:

Bob Gault

Print _Bob Gault_

Date: _12-1-04_

Approved:

DePuy Orthopaedics, Inc.

By: _____

Title: _Area Director_

Date: _12/17/04_

**EXHIBIT F**



October 21, 2004

Bob Gault
18435 Twin Creeks Road
Monte Sereno, Ca 95030

DePuy Orthopaedics, Inc.

Dear Bob,

Effective January 1, 2005, (the "Effective Date") please accept this letter as DePuy Orthopaedics, Inc.'s ("DePuy") appointment of you as its independent sales representative for the specific DePuy Territory ("Territory") and specific DePuy product categories (the "Products") as outlined on the attached Appendix A, which appendix is incorporated herein by reference. DePuy may add or delete any or all Product category or categories included on Appendix A or change the category or classification of any or all of the Products included in the Product categories listed on Appendix A at any time on sixty (60) days prior written notice to you. Except as set forth herein, the Territory described on Appendix A may be modified from time to time only as mutually agreed by the parties.

You agree that you are an independent contractor and not an employee, agent or representative of DePuy. You shall be responsible for making sales calls regarding the Products and completing sales within the Territory in accordance with DePuy and Johnson and Johnson ("J&J") guidelines, including without limitation, policies and procedures concerning prevention of healthcare fraud and abuse, that are made known to you from time to time. You agree to devote your best efforts and sufficient working time to selling DePuy Products. You agree to attend and participate in sales training and training related to DePuy and/or J&J guidelines, policies and procedures as required by DePuy. The manner in which you perform your obligations under the Agreement is at your sole discretion, provided that you comply with DePuy's sales policies and procedures. You are required to submit orders to DePuy, or, in the case of Co-Marketed Products, (as defined below) to other parties, and may from time to time be requested by DePuy to provide reports to DePuy regarding your sales activities or results. You agree that neither you nor anyone in your employ, nor any member of your immediate family will, during the time that this appointment is in effect, sell any competitive products or engage in any competitive activities without obtaining DePuy's prior written consent. Competitive activities mean selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for a similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services. You are, of course, free to engage in any non-competitive activities.

You may hire your own employees or contract with other individuals or entities to assist you in the performance of your duties hereunder, which employees, individuals or entities shall be solely your responsibility and shall be compensated solely by you. You agree that any such employees, individuals or entities will not be subject to DePuy's approval or supervision, but will be bound by the same DePuy and Johnson & Johnson guidelines, policies and procedures, the non-compete provisions and all other provisions of this agreement to which you are subject. You agree to provide DePuy with information regarding such employees and/or copies of any agreements between you and any such employees, individuals or entities as requested by DePuy.

Bob Gault
October 21, 2004
Page 2

You further agree to modify such agreements as reasonably requested by DePuy to achieve the purposes of this paragraph. You are responsible for maintaining your own office and/or office equipment for your employees' use.

You will be responsible for all federal, state and local income taxes, social security, unemployment compensation, workers compensation and insurance coverage and all expenses incurred by you or your employees in the performance of this Agreement.

Prices for the Products will be set by DePuy at its sole discretion and commissions will be paid based on the actual price charged by DePuy to the customer. You shall not offer or otherwise communicate any discount on any Product without DePuy's prior written consent. DePuy may change the price of any Product at any time. You agree that you will not enter into any agreement with any customer of DePuy or any third party regarding the sale or delivery of the Products and that you have no authority to bind DePuy to such agreements or any other agreements of any kind.

You will not in any way modify DePuy packaging or products, and may only sell DePuy products, which conform to the specifications and quality control procedures of DePuy. You will not knowingly submit to DePuy any false, inaccurate or misleading information regarding the sales of products, the customers to whom the products were sold, or the inventory of products in your possession. You will not engage in direct billing of products to any customer or any other person. Direct billing means any transaction involving a third party's acquisition, use or lease of a DePuy product or instrument which results in such third party being invoiced or charged a price or fee(s) of any kind, including a delivery charge or fee, for the product or instrument by you, someone in your control or in your employ, or by an entity in which you have a financial interest. Pursuant to DePuy's and J&J's policies and procedures, you will immediately report to DePuy any reports of problems with any DePuy product which comes to your attention, including without limitation, adverse events regarding such products.

DePuy will pay you a monthly commission, as described on Appendix B, based on invoice sales completed to customers while this appointment is in effect. It is DePuy's normal business practice to pay earned commissions by the 20th day of the month following the generation of the invoice. This will be the only compensation paid by DePuy to you regarding sales of the products. DePuy will pay commissions on your sales based upon invoices generated by DePuy. The commission rate for a sale already completed will not be adjusted except by mutual written consent. You agree to repay DePuy on demand any commission paid in error, any commission for which DePuy is unable to collect the underlying invoice, or any advance or any other commission which you did not earn. Commissions on Co-Marketed Products will be paid as set forth below.

You agree to meet mutually agreed upon annual sales quotas for each Product category. Provided this agreement has not been terminated, you agree to meet with DePuy representative(s)

Bob Gault
October 21, 2004
Page 3

no later than thirty (30) days prior to the anniversary of this agreement to discuss such sales quotas for the next year. If you fail to meet with DePuy representative(s) or if you and DePuy cannot reach agreement on such sales quotas before the anniversary date of this agreement, then both parties agree that the annual sales quotas for the next year will be equal to the prior year's sales for each of the following Product or Product Categories, provided these Products or Product Categories are included in Appendix A, in the Territory plus the following percentages: ten percent (10%) for Total Hip Systems and Total Knee Systems; fifteen percent (15%) for Extremities; twenty percent (20%) for Bone Cement and/or Orthobiologics and/or Trauma Products; and three percent (3%) for O.R. Products. In the event that you fail to meet such annual sales quotas for any or all Product categories for two (2) successive calendar quarters on an annualized basis, you agree that DePuy may, at its sole option, may take the following actions on thirty (30) days prior written notice to you: (a) terminate this agreement; or (b) remove any Product category(ies) from the Products listed on Appendix A; or (c) modify the Territory described in Appendix A. DePuy's exercise of any of the foregoing options a, b or c shall not be considered or construed as a waiver of DePuy's right or option to future exercise of any such option for continued failure to meet any sales quota(s).

DePuy will reimburse you certain expenses you incur in connection with your performance of your obligations under this Agreement, in accordance with DePuy sales policies and procedures. In no event, however, will you be reimbursed for your travel or transportation expenses. Notwithstanding the foregoing, DePuy may, at its sole option, reimburse you for travel and related expenses incurred by you in connection with sales training, trade, and educational meetings and seminars, you attend at DePuy's request.

DePuy will supply you at no charge with reasonable quantities of descriptive literature, promotional materials and catalogs describing the products and access to inventory and instrument as DePuy feels is appropriate. DePuy at its option may accept or refuse orders and will not be bound by an order until it is accepted by DePuy. Further, DePuy shall not be liable to you for any loss or damages caused by non-acceptance of orders, by failure to deliver products or by delays in making shipments. You agree that DePuy may at any time this Agreement is in effect and for a period of three (3) years after termination of this Agreement for any reason audit and inspect your business record to ensure compliance with DePuy and J&J policies and procedures.

From time to time during the term of this appointment, DePuy may, but shall not be required to, offer new products for sale in the Territory ("New Products"). With regard to such New Products in the Territory, DePuy reserves the right, in its sole discretion, to (a) on thirty (30) days prior written notice to you, require you to market and solicit sales of New Products pursuant to the terms of this Agreement; or (b) on thirty (30) days prior written notice to you, require you to jointly introduce and market such New Products in conjunction with the efforts of DePuy and any other J&J company or companies ("Affiliate") and/or DePuy's business partners ("Business Partner"). For purposes of this Agreement, an "Affiliate" is any other company or entity controlling, controlled by or under common control with DePuy and a Business Partner shall

Bob Gault
October 21, 2004
Page 4

include, without limitation, an individual or entity which is not an Affiliate and which has contracted with DePuy regarding the marketing or distribution of such New Product; or (c) introduce and market such New Product on DePuy's own behalf or through its Affiliates on an exclusive basis, in which event such New Products will not be made available to you or included in the Products covered by this Agreement. DePuy shall have the sole and exclusive right to establish the terms under which New Products will be marketed and to make all decisions regarding such marketing arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Notwithstanding anything to the contrary contained in this Agreement, DePuy shall not be liable to make any payment to you with regard to a New Product if Company introduces and markets such New Product pursuant to (c) in the immediately preceding paragraph. All of your obligations regarding Products shall also apply to any New Products which are added to this Agreement.

Notwithstanding anything herein to the contrary, DePuy shall have the right to enter into Co-Marketing Arrangements (as defined below) with its Affiliates related to the marketing, representation and sale of New Products. As used herein, "Co-Marketing Arrangement" means that New Products subject to a Co-Marketing Arrangement will be marketed, represented and sold in the Territory through the sales forces of DePuy and/or its Affiliates and/or its Business Partners. DePuy reserves the sole right to establish the terms under which New Products will be co-marketed and to make all decisions regarding such Co-Marketing Arrangements, including but not limited to, decisions regarding customer account representation, commission rates, credit for sales, and/or commission splits (if applicable). Products currently subject to a Co-Marketing Arrangement are identified on Appendix A, which may be modified from time to time by DePuy. Products and New Products currently subject to a Co-Marketing Arrangement or which become subject to a Co-Marketing Arrangement during the term of this Agreement will be referred to herein as "Co-Marketed Products". Commissions from the sale of Co-Marketed Products will be included in commission payments made to you within forty-five (45) days of the first to occur of (a) receipt by DePuy of the actual commission from the applicable Business Partner or Affiliate or (b) receipt by DePuy of a report from the Business Partner or Affiliate confirming the sale and/or commission due from the sale of the Co-Marketed Product.

This appointment will remain in effect until December 31, 2005. The appointment shall be automatically renewed for one (1) year periods thereafter unless terminated by either party on sixty (60) days' notice prior to the end of the initial term or any renewal period. In the event that DePuy provides written notice pursuant to this paragraph that this Agreement will not be renewed or extended at the end of the initial term or any renewal term, you agree that anytime in the sixty (60) day period immediately prior to termination or expiration of this Agreement, DePuy may, at its sole option, immediately terminate this Agreement by paying you an amount equal to one (1) month's average commissions based on the prior six (6) months commissions paid to you, in which case the noncompetition period described below will commence upon your receipt of such payment.

Bob Gault
October 21, 2004
Page 5

In the event that neither party provides sixty (60) days notice prior the end of the term that this Agreement will not be extended for an additional year, DePuy may, on sixty (60) days written notice prior to the end of the term or then current term, change or modify the Territory. However, DePuy agrees, that, except as agreed to by the parties, changes or modifications in the Territory will not occur more than once per year with while this Agreement is in effect.

The appointment may be terminated unilaterally by either party on thirty (30) days' notice in the event of either (a) breach of any provision of this appointment which, if correctable, is not corrected within the thirty (30) days notice period; or, (b) if either party becomes bankrupt or enters into any arrangement with its creditors or enters into liquidation.   Notwithstanding the above, however, you do agree that there will be sufficient cause to terminate this appointment immediately in the event that you or any of your employees sells a competitive product, knowingly provides to DePuy false and misleading information regarding products sold, engages in direct billing, violates any written DePuy or J&J policy and procedure, is debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program, if you knowingly employ or contract with an individual or entity so debarred, excluded or prohibited.   You agree to notify DePuy of any final adverse action, discovery of employment by or contract with an excluded individual or entity or exclusion as defined above within thirty (30) days of such an action.   You further agree that DePuy may terminate this Agreement immediately if you commit any act or omission which in DePuy's sole determination has or will have a negative effect on the reputation of DePuy and/or J&J.   The appointment will automatically terminate in the event of your death.

Upon termination, you further agree to return to DePuy, all DePuy owned inventory, instruments and promotional materials in your possession.   Any inventory, instruments and promotional materials related to Co-Marketed Products shall be returned either to DePuy or another party, as directed solely by DePuy.   You also agree to reimburse DePuy for any such inventory which is not returned and for which there is no record of sale to any other party or which is returned to DePuy in a damaged condition rendering such inventory incapable of sale.   You also agree within thirty (30) days of the termination of your appointment to pay to DePuy any sums that are outstanding.   DePuy agrees to pay you any commissions due to you within thirty (30) days of your termination; however, DePuy may offset against such commissions any amounts owed by you to DePuy.   You further agree that DePuy may deduct from any commissions owed to you any outstanding amounts resulting from your failure to return to DePuy any inventory, instruments and promotional materials in your possession or for which there is no record of sale or any inventory which has been damaged to a point where it is no longer capable of sale.   Any office or other equipment purchased by you shall remain your property upon termination.

You agree that, if this Agreement is terminated for any reason, that for a period of one (1) year after termination of the Agreement, that you will not, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive

Bob Gault
October 21, 2004
Page 6

products in the same Territory or sales to the same accounts covered by the Agreement.   In the event of termination of this Agreement as set forth above, the one year period of noncompetiton will start on the date such termination is effective.   You agree that no claim that you may have against DePuy shall constitute a defense to enforcement of the noncompetition provisions of this Agreement. You also agree to waive any defense to entry of a preliminary injunction prohibiting your violation of the noncompetition provisions of this Agreement based on the existence of an adequate remedy at law by DePuy.

You represent and warrant to DePuy that the execution, delivery, and performance of this Agreement by you will not conflict with, breach, cause a default under, or result in the termination of any contract, employment relationship, agreement, or understanding, oral or written, with any third party, including without limitation any noncompetition covenant to which or by which you are bound and that there are no other commitments or agreements that would prevent you from entering into this Agreement or performing the obligations required of you under this Agreement. In the event that you are so bound or have commitments or agreements that prevent you from entering into this Agreement or performing your obligations under this Agreement, you agree that this Agreement will not commence until you are free of any such agreements or commitments, and that you will not perform any of your obligations under this Agreement while such agreements or commitments are in existence.   In the event that the foregoing should delay the Effective Date of this Agreement, you agree that DePuy may, at its sole discretion and without further obligation to you, terminate this Agreement at any time prior to the actual start of this Agreement.   You agree to indemnify, hold harmless and defend DePuy, its employees, officers and directors, against any causes of action, claims, suits, proceedings, damages and judgments arising out of any claim by any third party arising out of any alleged or actual misrepresentation or violation of the provisions of this paragraph.

It is expressly stipulated, agreed and understood between the parties that the business relationship between you and DePuy shall be that of independent contractor and not employer-employee or principal-agent.   You further agree that the only monetary or economic obligation of DePuy to you shall be to provide commissions as set forth herein that you shall not be entitled to receive and shall not receive from DePuy any medical coverage, vacation pay, pension benefits, stock options, insurance, or any other type of employee or fringe benefit.   Should you otherwise have any right to receive any such benefit from DePuy, you hereby expressly waive the right to receive same.   Neither you nor DePuy shall have the authority to legally bind the other in contract, debt or otherwise.

You further acknowledges that you may be receiving and processing Protected Health Information ("PHI") as that term is defined in 45 C.F.R.Section 164.501 from DePuy or on its behalf, that has been disclosed subject to a HIPAA authorization, under 45 C.F.R. Section 164.508 or to a Business Associate Agreement(s) between DePuy and a healthcare provider or institution, copies of which shall be provided to you by DePuy upon request by you.   You will

Bob Gault
October 21, 2004
Page 7

collect, hold, use and disclose such information only for the purposes authorized in the Business Associate Agreement and as expressly directed by DePuy. You shall not disclose any PHI to any third party or use PHI for any purpose, commercial or otherwise. You shall either (a) remove any PHI from your records and/or systems no later than thirty (30) days after receipt of such PHI or (b) take reasonable measures to ensure the security and confidentiality of such PHI. Your failure to comply with this Section shall be considered a material breach of this Agreement and DePuy shall have the right to terminate this Agreement pursuant immediately without payment of any penalty or termination fee.

You further represent and warrant that you are not now and have not at any time in the past been debarred, excluded or otherwise prohibited from participation in any Federal or state healthcare program as defined in 42 U.S.C Sect. 1320a-7b(f) for the provision of items or services for which payment may be made by a federal healthcare program and you have not knowingly employed or contracted with an individual or entity so debarred, excluded or prohibited. Finally, you agree that you have no rights of any kind concerning the Territory and cannot assign your appointment to any other party or recover any money from any party to whom DePuy may subsequently assign all or part of the Territory. Any attempt to do so will be cause for DePuy to immediately terminate your appointment as DePuy's independent sales representative. We both agree that Indiana law shall govern and interpret this appointment and the relationship between the parties, that any and all jurisdiction and/or venue for any claims or matters related to or arising from this Agreement shall be reside in the state and/or federal courts located in the state of Indiana. We each specifically agree to waive our right to trial by jury in any litigation arising from this Agreement. We agree that this Agreement supersedes any and all other agreements, written or oral, regarding this appointment and relationship with DePuy including, without limitation, the letter dated October 8, 2003. We both agree that the language of this Agreement will be construed as a whole, according to its fair meaning and not for or against either of us, regardless of who drafted such language. If a court of competent jurisdiction or an arbitrator finds or determines any provision of this Agreement invalid or unenforceable, such provision shall not affect the remainder of this Agreement, which shall remain in full force and effect.

Bob Gault
October 21, 2004
Page 7

If you agree to the terms set forth above, please sign and return to the undersigned the enclosed copy of this document.  You agree that the above Agreement is not effective until approved by the appropriate DePuy Area Director for Sales or other appropriate officer of DePuy.

If there are any questions please feel free to contact me.  We look forward to working with you.

Very truly yours,

Brad LaPoint
Territory General Manager


**AGREED AND ACCEPTED:**

Representative Name

Date: _12-1-04_


**APPROVED:**

DePuy Orthopaedics, Inc.
By:

Title: _Area Director_
Date: _12/14/04_