DOWNEY BRAND LLP
TORY E. GRIFFIN (Bar No. 186181)
MEGHAN M. BAKER (Bar No. 243765)
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
mbaker@downeybrand.com
tgriffin@downeybrand.com

Attorneys for Defendants GAULT SOUTH BAY,
INC. and ROBERT GAULT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEPUY ORTHOPAEDICS, INC., | Case No. C:07-cv-05897-JW |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | Date: April 28, 2008 |
| GAULT SOUTH BAY, INC., a California Corporation, and ROBERT GAULT, | Time: 9:00 a.m. |
| Defendants. | |

917384.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL ARGUMENT ............................................................................................ 2

    A.    California Has a Materially Greater Interest in the Enforceability of the
Covenant Not to Compete ........................................................................................ 2

        1.    The Indiana Choice of Law Cases Cited in Defendants' Opening
Brief are on Point, and a Straightforward Application of the
Analysis Required by Those Cases Compels the Conclusion that
California Has the Greater Interest ............................................................. 2

        2.    The Facts Offered by DePuy Do Not Demonstrate that Indiana Has
a Sufficient Interest in this Matter to Justify Enforcement of the
Otherwise Illegal Covenant Not to Compete .............................................. 4

    B.    Indiana and California Law Do Conflict, Because the Covenant Not to
Compete is Plainly Invalid under California Law .................................................... 5

        1.    The Ninth Circuit's "Narrow-Restraint Doctrine," Relied on by
DePuy, is Far Narrower than DePuy Leads the Court to Believe .............. 5

        2.    The Covenant Not to Compete at Issue Here Does Not Fit Within
the "Narrow-Restraint" Exception ............................................................. 7

    C.    DePuy Erroneously Claims that, Even if California and Indiana Law
Conflict, an Indiana Court Would Enforce the Parties' Choice of Indiana
Law ......................................................................................................................... 10

    D.    DePuy's Various Arguments Regarding Alleged Breaches of the Duty of
Loyalty or Unfair Competition are Irrelevant, as Those are Separate Claims
Pled in DePuy's Complaint and are Not at Issue in this Motion ......................... 11

    E.    DePuy Erroneously Claims that Additional Discovery is Essential .................... 14

III.   CONCLUSION ..................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4    *Austin Powder Co. v. Wallwork et al.,*
        761 F. Supp 612 (S.D. Ind. 1990) ................................................................. 2, 10

5

    *Campbell v. Board of Trustees of Leland Stanford Junior University,*
6        817 F.2d 499 (9th Cir 1987).......................................................................... 6, 8

7    *Davis v. Advanced Care Technologies,*
        2007 WL 2288298, at *7-8 (E.D. Cal. August 8, 2007) ..................................... 3, 4

8
    *Dearborn v. Everett J. Prescott, Inc.,*
9        486 F.Supp.2d 802 (S.D. Ind. 2007) .................................................. 2, 4, 5, 10, 13

10   *General Commercial Packaging v. TPS Packaging Engineering Inc.,*
        126 F.3d 1131 (9th Cir. 1996)....................................................................... 6, 8

11
    *IBM v. Bajorek,*
12       191 F.3d 1033 (9th Cir. 1999)........................................................................ 8

13   *Latona v. Aetna U.S. Healthcare Inc.,*
        82 F.Supp.2d 1089 (C.D. Cal. 1999) ................................................. 6, 9, 10, 14, 15

14
    *Maximm Medical, Inc. v. Michelson,*
15       51 F.Supp.2d 773 (S.D. Tex. 1999),
        *rev'd on other grounds*, 182 F.3d 915 (5th Cir. 1999)........................................... 3

16
    *Merrill Lynch v. Chung,*
17       2001 WL 283083, *1 (C.D. Cal. 2001)........................................................... 9, 12

18   *Potts v. Review Board of the Indiana Employment Security Div.,*
        475 N.E.2d 708 (Ind. Ct. App. 1985)................................................................. 11

19
    *Rice v. Meridian Ins. Co.,*
20       751 N.E.2d 685 (Ind. App. 2001)..................................................................... 15

21   *Scott v. Snelling & Snelling,*
        732 F.Supp. 1034 (N.D. Cal. 1990) ............................................................... 6, 9, 14

22
    *South Bend Consumers Club, Inc. v. United Consumers Club, Inc.,*
23       572 F. Supp. 209 (N.D. Ind. 1983)................................................................ 3, 10

24   *State of California on Behalf of California Dept. of*
    *Toxic Substances Control v. Campbell,*
25       138 F.3d 772 (9th Cir. 1998).......................................................................... 14

26   *Tatum v. City and County of San Francisco,*
        441 F.3d 1090 (9th Cir. 2006).......................................................................... 14

27
    *United Rentals v. Pruett,*
28       296 F.Supp.2d 220 (D. Conn. 2003) ............................................................... 3, 4

# TABLE OF AUTHORITIES
## (continued)

Page

## STATE CASES

*Application Group, Inc. v. Hunter Group, Inc.,*
  61 Cal.App.4th 881 (1998)................................................................................ 2, 3, 5

*Boughton v. Socony Mobil Oil Co.,*
  231 Cal.App.2d 188 (1964)..................................................................................... 9

*Gardenhire v. Superior Court*
  127 Cal.App.4th 882 (2005)................................................................................... 15

*Huong Que, Inc. v. Luu,*
  150 Cal.App.4th 400 (2007)................................................................................... 11

*Kolani v. Gluska,*
  64 Cal.App.4th 402 (1998)......................................................................... 12, 13, 14

*Loral Corp. v. Moyes,*
  174 Cal.App.3d 268 (1985)........................................................................... 12, 13

*ReadyLink Healthcare v. Cotton,*
  126 Cal.App.4th 1006 (2005)................................................................................. 13

*VL Systems, Inc. v. Unisen, Inc.,*
  152 Cal.App.4th 708 (2007)..................................................................................... 9

## STATE STATUTES

Cal. Bus. & Prof. Code, § 16600 ............................................................ 6, 9, 10, 12, 13

## FEDERAL RULES

Fed. Rules of Civ. Proc., rule 56(f) .................................................................... 14, 15

## OTHER AUTHORITY

Restatement (Second) of Conflict of Laws, § 187 ........................................................ 1

917384.1

iii

# I. <u>INTRODUCTION</u>

DePuy does not dispute that both Indiana and California have adopted the choice of law test set forth in the Restatement (Second) of Conflict of Laws, Section 187 ("Restatement § 187"). DePuy's opposition is instead based on its argument that Indiana law should apply because, under the Restatement § 187 test, California does not have a materially greater interest in the dispute over enforceability of the covenant not to compete, and California and Indiana law do not conflict.

In carefully weaving its arguments, DePuy does its best to distract the court from the crucial issues and relevant case law. For example, while DePuy insists the court must utilize Indiana choice of law principles, DePuy dismisses as irrelevant the factually similar Indiana cases that set forth the relevant test yet reach a conclusion contrary to DePuy's interests. Meanwhile, DePuy offers no Indiana case applying the Restatement § 187 test and reaching the conclusion advocated by DePuy here.

In addition, DePuy does not dispute the facts presented by Defendants, yet remarkably claims the Agreement was performed in Indiana because some of the internal administration of the Agreement took place there. Even worse, in support of its argument that the covenant not to compete at issue fits within some "narrow restraint" exception to Business and Professions Code section 16600, DePuy completely misstates and misconstrues the scope of the covenant not to compete at issue. The undisputed facts presented by Defendants, in addition to the plain language of the covenant not to compete at issue, demonstrate that California has a materially greater interest in this dispute and that the covenant not to compete conflicts with California's long-standing public policy. California law therefore applies.

Finally, DePuy attempts to distract the court with claims regarding alleged breaches of the duty of loyalty and unfair competition. But DePuy's claims for breach of duty of loyalty and for unfair competition are the subject of separate claims set forth in DePuy's complaint. By this motion, Defendants seek only to invalidate the covenant not to compete, which forms part of the basis for DePuy's breach of contract claim. Thus, DePuy's claim that it must conduct discovery on issues related to Defendants' duties of loyalty or unfair competition must be rejected.

1    Ultimately, the court need look no further than the face of the Agreement to rule that the

2    covenant not to compete violates California law.  Defendants are therefore entitled to partial

3    summary judgment in their favor on the issue of the validity of the covenant not to compete.

## II. LEGAL ARGUMENT

### A.    California Has a Materially Greater Interest in the Enforceability of the Covenant Not to Compete

7    DePuy does not dispute California's long-standing public policy in favor of "protecting its

8    employers and their employees from anticompetitive conduct by out-of-state employers."

9    *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 901 (1998).  DePuy instead

10   argues that California's interest in protecting its citizens against illegal restrictive covenants foist

11   upon them by foreign employers is not "materially greater" than Indiana's interest in enforcing

12   the covenant not to compete.  In support of its argument, DePuy claims that because no Indiana

13   court has found a covenant not to compete invalid under another state's law in the face of an

14   Indiana choice of law clause, this court cannot make such a finding.  Second, DePuy offers

15   evidence to show the Agreement was partially performed in Indiana.  Both of DePuy's arguments

16   for why California's interest is not materially greater than Indiana's must be rejected.

#### 1.    The Indiana Choice of Law Cases Cited in Defendants' Opening Brief are on Point, and a Straightforward Application of the Analysis Required by Those Cases Compels the Conclusion that California Has the Greater Interest

19   Although DePuy repeatedly insists that this court must apply Indiana's choice of law test,

20   DePuy casually dismisses the three Indiana cases cited by Defendants on the ground that none of

21   those cases overruled the parties' choice of Indiana law and invalidated a covenant not to compete

22   under some other state's law.  The distinction DePuy makes between those Indiana cases and the

23   instant case is a distinction without a difference.  All three Indiana cases cited and analyzed by

24   Defendants in their moving papers involved the same issue presented to the court here—whether

25   a choice of law provision should be ignored in favor of the law of another jurisdiction with a

26   materially greater interest in the dispute.  *Dearborn v. Everett J. Prescott, Inc.*, 486 F.Supp.2d

27   802 (S.D. Ind. 2007); *Austin Powder Co. v. Wallwork et al.*, 761 F. Supp 612 (S.D. Ind. 1990);

28   *South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F. Supp. 209, 212-14

917384.1                                        2

1    (N.D. Ind. 1983). Moreover, all three of those cases applied the Restatement § 187 test—the

2    analytical framework DePuy concedes applies here.

3        DePuy additionally urges the Court to ignore two California cases and a Connecticut

4    district court case cited by Defendants on the ground that they did not involve an Indiana choice

5    of law provision. (Opp'n, at p. 7 fn. 1, p. 14:1-13.) DePuy does not and cannot dispute, however,

6    that in each of these cases the courts applied the same Restatement § 187 test adopted by Indiana.

7    Moreover, after extensive analysis of the Restatement § 187 factors, each of these cases

8    invalidated a choice of law provision and ruled that a covenant not to compete such as the one at

9    issue here was invalid under California law. *Application Group, Inc.*, 61 Cal.App.4th at 901-02;

10   *Davis v. Advanced Care Technologies*, 2007 WL 2288298, at *7-8 (E.D. Cal. August 8, 2007);

11   *United Rentals v. Pruett*, 296 F.Supp.2d 220, 230-33 (D. Conn. 2003); *see also Maximm Medical,*

12   *Inc. v. Michelson*, 51 F.Supp.2d 773, 778-83 (S.D. Tex. 1999), *rev'd on other grounds*, 182 F.3d

13   915 (5th Cir. 1999) (rejecting Texas choice of law provision and finding covenant not to compete

14   invalid under California law). At a minimum, these cases are highly persuasive authority in

15   support of Defendants' position, especially in light of the complete absence of contrary authority.

16       Ironically, despite DePuy's claims that the cases relied on by Defendants are irrelevant,

17   DePuy itself does not cite any cases applying the Restatement § 187 test to determine whether an

18   Indiana choice of law provision should be ignored, much less *any* case applying the Restatement

19   § 187 test and reaching a conclusion consistent with DePuy's arguments here. Thus, there is no

20   logical reason why this court, applying Indiana choice of law principles, should not follow the

21   logic of the three Indiana cases discussed at length in Defendants' opening brief, as well as the

22   logic of the several additional cases from California, Connecticut and Texas which are right on

23   point. As demonstrated in Defendants' opening brief and further demonstrated below, application

24   of those cases to the undisputed facts before this court compels the conclusion that California

25   does have a materially greater interest than Indiana, and that California law must be applied to

26   determine the validity of the covenant not to compete.

27

28

917384.1

                                            3

1

2.    **The Facts Offered by DePuy Do Not Demonstrate that Indiana Has a Sufficient Interest in this Matter to Justify Enforcement of the Otherwise Illegal Covenant Not to Compete**

2

3        In arguing that California's interest is not materially greater than Indiana's, it is notable

4    that DePuy does not dispute *any* of the facts submitted by Defendants. First, DePuy does not

5    dispute that the gravamen of its complaint is that Defendants allegedly solicited *California*

6    *doctors* and *California sales representatives* in *California* and is allegedly wrongfully competing

7    with DePuy *in California*. In fact, DePuy makes no allegation and offers no evidence of any

8    wrongful conduct in Indiana. Nor does DePuy dispute the extensive evidence that the Agreement

9    was to be performed solely in California, by a long-time California resident, and that such long-

10    time resident reported directly to his supervisor in California. (Defendants' P&As, at 4, 15-16.)

11        DePuy instead offers additional facts to demonstrate that Indiana has an interest, but the

12    additional facts offered by DePuy have nothing to do with the performance of services under the

13    Agreement. DePuy claims the orders for GSB's accounts and GSB's commissions were

14    processed in Indiana, DePuy's products were manufactured and designed in Indiana, DePuy

15    provided training literature from Indiana, and that Gault traveled to Indiana on a few occasions.

16    (Opp'n, at 4:23-5:6, 11:23-12:3.) These facts all have little connection to Defendants' actual

17    *performance* of the Agreement.

18        Importantly, courts have consistently held that facts of the type offered by DePuy are

19    insufficient to show that another state, such as California here, does not have a materially greater

20    interest in the dispute. In *Dearborn*, for example, the Indiana court determined that Indiana had a

21    materially greater interest in the dispute than Maine based on facts remarkably similar to those

22    before the court in this case. 486 F.Supp.2d at 818-19; Defendants' P&As, at 14. Other cases

23    have similarly found that California had a materially greater interest than another state, again

24    based on remarkably similar facts. *See Davis*, 2007 WL 2288298, at *7-8; *Pruett*, 296 F.Supp.2d

25    at 232-33. As in all of these cases, the impacts of any restriction on Defendants' ability to

26    compete will be felt entirely in California. Thus, these cases all compel the conclusion that

27    California has a materially greater interest than does Indiana in the present dispute.

28    / / /

917384.1

4

1    DePuy nevertheless cites several cases for the proposition that Indiana has an interest in

2   having Indiana law apply to its agreements with sales representatives, in order to have uniformity,

3   and for the proposition that Indiana has an interest in allowing its employers to protect their

4   businesses through the use of narrowly-tailored covenants not to compete. (Opp'n at 10-12.)

5   None of the cases relied on by DePuy, however, involved a choice of law question such as the

6   one before this court. As such, none of those cases balanced Indiana's interest in promoting

7   uniformity for its employers with other states' interests in protecting their employees from

8   restrictive covenants. The Indiana cases which *have* balanced those interests have rejected the

9   argument DePuy makes here. In *Dearborn*, for example, the Indiana court expressly rejected the

10  employer's claim that Maine law must apply because the employer had a great interest in

11  uniformity among its employees in several states. *Dearborn*, 486 F.Supp.2d at 818. And,

12  essentially the same claim was rejected by the court in *Application Group,* 61 Cal.App.4th at 901-

13  02. Accordingly, DePuy has failed to show that California does not have a materially greater

14  interest than Indiana. Thus, if the laws of Indiana and California conflict, the court must apply

15  California law.

16  **B.      Indiana and California Law *Do* Conflict, Because the Covenant Not to Compete is
            Plainly Invalid under California Law**

17

18    DePuy argues that because Indiana and California law are the same, there is no conflict

19  between the law of the two states and, therefore, Indiana law must apply. DePuy's argument rests

20  on a misapplication of California law, and must be rejected.

21          **1.    The Ninth Circuit's "Narrow-Restraint Doctrine," Relied on by DePuy, is Far
                   Narrower than DePuy Leads the Court to Believe**

22

23    DePuy asserts that the "Ninth Circuit embraces a narrow restraint doctrine" when

24  analyzing whether restrictive covenants are enforceable under California law, but fails to describe

25  what that doctrine actually entails.[1] (*See* Opp'n, at 16:21-23.) It turns out that the Ninth Circuit's

26  ---
[1] Several recent California Court of Appeal decisions have criticized the Ninth Circuit's interpretation of

27  section 16600 and have rejected the so-called "narrow restraint" doctrine. The California Supreme Court
    has granted review of these cases. Defendants in no way concede that the narrow restraint doctrine is

28  consistent with California law, although whether or not it is is irrelevant to this motion.

1  narrow restraint doctrine is not nearly as broad as DePuy would lead the court to believe.

2      In interpreting Business and Professions Code section 16600, the Ninth Circuit has stated

3  that "while the cases are uniform in refusing to enforce a contract wherein one is restrained from

4  pursuing an entire business, trade or profession . . . where one is barred from pursuing only a

5  small or limited part of the business, trade or profession, the contract has been upheld as valid."

6  *General Commercial Packaging v. TPS Packaging Engineering Inc.*, 126 F.3d 1131, 1132 (9th

7  Cir. 1996) (citing *Campbell v. Board of Trustees of Leland Stanford Junior University*, 817 F.2d

8  499 (9th Cir 1987)).  Under this interpretation of section 16600, restrictive covenants are

9  enforceable when they only impose a partial or narrow restraint. *Id.*; *see also Latona v. Aetna*

10 *U.S. Healthcare Inc.*, 82 F.Supp.2d 1089,1094 (C.D. Cal. 1999) (referring to this doctrine as the

11 "narrow restraint exception" to section 16600).

12     The Ninth Circuit, however, has also recognized "that a contract does not have to impair .

13 . . access to every potential customer" in order to restrain a business, trade or profession in

14 contravention of section 16600. *General Commercial*, 126 F.3d at 1132; *see also Latona*, 82

15 F.Supp.2d at1094 ("a total ban on pursuit of a trade or business [is] not necessary to find a

16 violation of section 16600").  "Because most business cannot succeed with only a handful of

17 customers, a contract can effectively destroy . . . [the] ability [of an individual] to conduct a trade

18 or business by placing a substantial segment of the market off-limits." *General Commercial*, 126

19 F.3d at 1132.

20     Consequently, even if certain "partial" or "narrow" restraints on competition may be

21 permissible under the Ninth Circuit's interpretation of California law, "geographical and temporal

22 restrictions on competition" are not considered "merely partial restrictions" and would not be

23 upheld. *Scott v. Snelling & Snelling*, 732 F.Supp. 1034, 1042-1043 (N.D. Cal. 1990) (refusing to

24 enforce a restrictive covenant containing geographical and temporal limitations on the right to

25 compete); *Latona*, 82 F.Supp.2d at 1094 (same).

26     Under these principles, the restrictive covenant in the Agreement cannot pass muster even

27 under the Ninth Circuit's narrow-restraint doctrine.

28

2.    **The Covenant Not to Compete at Issue Here Does Not Fit Within the "Narrow-Restraint" Exception**

At various places throughout its brief, DePuy characterizes the covenant not to compete in the Agreement as a narrow restriction:

- "The Territory in which Defendants were not allowed to directly compete did not include all potential customers of orthopedic products, but only a fraction of them." (Opp'n, at 5:23-24.)

- "[T]here was no restriction on Defendants' sale of products within that Territory if they did not directly compete with the select list of products Defendants had sold on behalf of DePuy." (*Id.* at 5:27-6:1.)

- "The parties entered into a very narrow restrictive covenant that is limited to a discrete list of hospitals in a portion of Northern California for a discrete list of products during a period of only one year." (*Id.* at 13:5-7.)

DePuy's self-serving characterization of the Agreement for purposes of this motion is completely at odds with the language of the Agreement itself. The Agreement contains an extremely broad covenant not to compete following termination of the Agreement. It provides:

> Contractor agrees that, if this Agreement is terminated for any reason, that for a period of one (1) year after termination of the Agreement, that neither Contractor nor any of its employees, independent contractors, or agents who were involved in the representation or sale of the Products, will, without DePuy's prior written consent, accept a position with a competitor of DePuy, which involves direct or indirect sales of competitive products in the same Territory *or* sales to the same accounts covered by the Agreement *or* engage, directly or indirectly in the sales of competitive products or in competitive activities as described above.

(Gault Decl., Ex. A, at p.9 (emphasis added).) It is important to note that this provision is written in the *disjunctive*. The restrictions are not limited to just a "select list of products" or to a select territory. It prohibits any "direct or indirect" sales of *any* competitive products or the engaging of *any* "competitive activities as described above." The "competitive activities described above" are defined as "selling, offering for sale, promoting, receiving or soliciting orders for goods or services similar, or intended for similar use as those offered by DePuy or any other J&J company, or accepting remuneration of any kind from any person providing such goods and services." (Gault Decl., Ex. A, at p.1 (last sentence).) Accordingly, the Agreement does not even limit its restriction to the DePuy products sold by Defendants—it also prohibits sale of any products

917384.1                                                                                        7

1   offered by *any* of the numerous Johnson & Johnson companies.  A quick glance at Johnson &

2   Johnson's website reveals that its companies span nearly every aspect of the healthcare field.

3            Not surprisingly, *all* of the decisions DePuy cites in its Opposition that have upheld

4   restrictive covenants involved covenants that were *substantially* more limited in scope than the

5   one at issue here.  (*See* Opp'n, at 16:23-18:11.)  For example, in *IBM v. Bajorek*, 191 F.3d 1033

6   (9th Cir. 1999), the contract provided that if the defendant chose to work for a competitor in the

7   six months after he had excised his stock options, he would have to forfeit any payment he

8   received for those stock options.  *Id.* at 1040.  The Ninth Circuit found this "limited" restrictive

9   covenant enforceable, reasoning that the defendant was free to work in his profession and keep

10  the money from the stock options, so long as he did not work for a competitor, or alternatively

11  could choose to work for a competitor so long as he did not exercise his stock options in the

12  preceding six months.  *Id.* at 1041.  Therefore, the Ninth Circuit held that the covenant did not

13  preclude the defendant from pursing his business, trade or profession, but only placed certain

14  limitations on *when* he could exercise his stock options.  *See id.*

15           In *Campbell v. Board of Trustees*, 817 F.2d 499 (9th Cir. 1987), the restrictive covenant

16  only precluded the plaintiff, a psychologist, from publishing a work that might injure the sale of a

17  vocational interest test owned by the defendant, but did not otherwise preclude the plaintiff from

18  pursuing his profession.  *Id.* at 501-02.  Although this covenant was rather limited in scope, the

19  Ninth Circuit found that triable issues of fact precluded summary judgment in favor of the

20  defendant on the enforceability of the agreement.  *Id.* at 503 (noting that the covenant at issue

21  may completely restrain the plaintiff from his profession, trade or business).

22           In *General Commercial*, the restrictive covenant only precluded the defendant from

23  soliciting or working with one specific company for one year following the termination of its

24  agreement with the plaintiff.  126 F.3d at 1132.  The covenant did not preclude the defendant

25  from otherwise engaging in its packing and shipping business throughout California.  *Id.*  The

26  Ninth Circuit found this restrictive covenant enforceable because it only limited the defendant's

27  "access to a narrow segment of the packing and shipping market."  *Id.* at 1134.

28  */ / /*

917384.1

8

1    Finally, in *Boughton v. Socony Mobil Oil Co.*, 231 Cal.App.2d 188 (1964), the deed to a

2    parcel of land restricted the plaintiffs from using that property as a gasoline service station for a

3    period of twenty years. *Id.* at 190.  The court held that this restriction did not violate section

4    16600 because the restriction did not personally restrain the plaintiffs from engaging or carrying

5    on a profession, trade or business, but only restrained the use of a certain parcel of land. *Id.*

6    Therefore, all of the decisions cited by DePuy and upholding restrictive covenants under

7    the "narrow restraint" exception involved covenants substantially limited in scope and that in no

8    way placed geographic restrictions against an individual engaging or carrying on a profession,

9    trade or business.[2]  As a result, all of these decisions are easily distinguishable from the broad

10   restrictive covenant in the Agreement between DePuy and GSB.

11   In fact, the restrictive covenant in the Agreement is more closely akin to those found

12   invalid in *Scott* and *Latona*.  In *Scott*, the restrictive covenant precluded the plaintiff from

13   competing with the defendant in their former franchise area for two years following termination

14   of their agreement.  *See* 732 F.Supp. at 1036 & n. 3.  The Northern Distinct of California found

15   this covenant invalid because it "contained strict geographical and temporal limitations on the

16   right to compete" and "California courts do not give force to such restrictions." *Id.* at 1442-1043.

17   Likewise, in *Latona*, the restrictive covenant precluded the plaintiff from working for a

18   competitor in the healthcare industry, "unless her new responsibilities exclude[d] the very area in

19   which she had been working and living."  82 F.Supp.2d at 1094-1095.  As a result, if the plaintiff

20

---

21   [2]    DePuy additionally cites *Merrill Lynch v. Chung*, 2001 WL 283083, *1 (C.D. Cal. 2001), and *VL
     Systems, Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708 (2007) for the proposition that "restrictive covenants
22   are not invalid [under section 16600] if they restrain only a portion of a profession, trade or business."
     (*See* Opp'n at 17:24-18:11.)  Neither of these cases are on point, however.  *Merrill Lynch* does not address
23   the "narrow" or "partial" restraint exception, but rather the trade secret exception to section 16600.  *See*
     2001 WL 283083 at *5.  As demonstrated in Section II.D, *infra*, that exception to section 16600 is
24   irrelevant to this motion because the Agreement does not contain a non-solicitation provision.  *VL Systems*
     also did not address the "narrow" or "partial" restraint exception.  In that action, the restrictive covenant
25   prohibited the defendant from "hiring" any employee of the plaintiff for twelve months after their
     agreement terminated.  *See* 152 Cal.App.4th at 710.  The court found this "broad provision" unenforceable
26   under section 16600.  *Id.* at 718.  However, the court speculated in dicta that a more narrowly drawn
     clause prohibiting the "soliciting" of employees "might pass muster." *Id.* at 713 & n4, 718.  The
27   Agreement between GSB and Gault does not merely prohibit the solicitation of employees, thus the dicta
     in *VL Systems* does not apply.

28

917384.1                                          9

1    "wanted to remain in the health care industry and aimed to comply with the . . . [restrictive

2    covenant], she would have to take a job at least 50 miles outside of San Bernardino County,

3    Riverside County, and parts of Los Angeles County, or move out of state . . . ." *Id.* at 1095.  The

4    Central District of California found that this "broad" restrictive covenant did not fall within the

5    "narrow restraint" exception to section 16600.  *Id.*  "Just as a law firm could not prevent a legal

6    secretary from working the same capacity for any other law firm in greater Southern California,

7    neither can [the defendant] impose a broad prohibition on [the plaintiff], preventing her from

8    engaging in her work as a health care professional . . . in Southern California."  *Id.*

9           As in *Latona* and *Scott*, DePuy cannot prevent Defendants from working in the same

10   capacity for any other orthopedics distributor in the Santa Clara Valley and Peninsula area.  Such

11   a prohibition is not a "narrow restraint" under Ninth Circuit law.

12   **C.    DePuy Erroneously Claims that, Even if California and Indiana Law Conflict, an**
         **Indiana Court Would Enforce the Parties' Choice of Indiana Law**
13

14          DePuy boldly claims that even if California and Indiana law did conflict (which they do),

15   "no Indiana court would hold that its interests are so subordinate to the interests of California,"

16   and no Indiana court would ignore the parties' choice of law.  (Opp'n, at 20-21.)  The only way to

17   know what an Indiana court would do, however, is to examine the Indiana decisions applying the

18   Restatement § 187 test.  If California and Indiana law do conflict, the question under Restatement

19   § 187 becomes whether California has a materially greater interest than Indiana.  If it does, then

20   California law applies notwithstanding the choice of law provision.

21          As demonstrated in Defendants' opening brief and further discussed above, the facts and

22   analysis set forth in the relevant Indiana decisions (*Dearborn, Austin Powder Co.* and *South*

23   *Bend*) all support the conclusion, based on the undisputed facts of this case, that California *does*

24   have materially greater interest than Indiana.  Several other cases have reached the same

25   conclusion using the same analysis adopted by Indiana.  Absent case law on point, which DePuy

26   does not provide, there is certainly no reason to believe that an Indiana court would stray from its

27   analysis in similar cases.

28

917384.1                                      10

**D.    DePuy's Various Arguments Regarding Alleged Breaches of the Duty of Loyalty or Unfair Competition are Irrelevant, as Those are Separate Claims Pled in DePuy's Complaint and are Not at Issue in this Motion**

In conjunction with its discussion of the Ninth Circuit's "narrow restraint" exception, DePuy bleeds into its analysis various arguments regarding Defendants' alleged breaches of the duty of loyalty and unfair competition. (*See* Opp'n, at 18-19.) These additional arguments have nothing to do with the so-called narrow restraint exception. Once again, DePuy's arguments are nothing but red herrings designed to distract the court from what is at issue on this motion.

To focus on what is really at issue here, it is helpful to examine DePuy's complaint, the claims pled therein, and the allegations on which each of those claims is based. DePuy's first claim, against GSB only, is for breach of contract. That claim is based on two allegations: (1) that GSB breached the "covenant not to compete contained in" the Agreement; and (2) that GSB "breached its agreement with DePuy to devote its best efforts to selling DePuy product." (Complaint, ¶ 30.) As DePuy's complaint acknowledges, those two allegations are based on two *separate* provisions in the Agreement. (*Id.*, ¶¶ 17-18.) The covenant not to compete purports to limit GSB's ability to compete with DePuy *after* the Agreement was terminated. (*Id.*, ¶ 18.) The "best efforts" provision, in contrast, expressly applied only "during the time that [GSB's] appointment" was in effect. (*Id.*, ¶ 17.) By this motion, Defendants only seek to have the court invalidate the covenant not to compete in the Agreement, not the best efforts provision.

This temporal distinction is important when examining the remainder of DePuy's complaint. In addition to DePuy's claim for breach of contract, DePuy asserts *separate* claims for "breach of duties owed to DePuy" and for "unfair competition." (Complaint, Counts IV and V.) DePuy's claim for breach of duties owed to DePuy is based solely on the alleged breach of the duty of loyalty that existed "during the duration of the agency with DePuy." (Complaint, ¶ 44.) Not surprisingly, the case law cited by DePuy clearly states that the duty of loyalty of an employee only prohibits competition with the employer *prior to the termination of the relationship*. (Opp'n, at 19 (citing *Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400, 410-14 (2007) and *Potts v. Review Board of the Indiana Employment Security Div.*, 475 N.E.2d 708, 712 (Ind. Ct. App. 1985). As such, the alleged breaches of the duty of loyalty based on conduct that

1  occurred while the Agreement was in effect are completely irrelevant to the instant motion.  This

2  motion only addresses the validity of the covenant not to compete, which by its terms only applies

3  *after* the Agreement was terminated.  Therefore, DePuy's reliance on case law regarding any duty

4  of loyalty, or facts it claims it may develop to support a claim for breach of such duty against

5  Defendants, does not provide any basis for denial of the instant motion.[3]

6         Finally, DePuy's reliance on anticipated evidence in support of its claim for unfair

7  competition is also misplaced.  DePuy cites several cases and makes numerous arguments to

8  establish that certain exceptions to section 16600 exist when a former employee uses the former

9  employer's trade secrets or otherwise engages in unfair competition.  DePuy asserts that, in light

10  of these judicially created exceptions to section 16600, the restrictive covenant at issue here is

11  enforceable under California law (and thus California law does not conflict with Indiana law).

12        In support of its unfair competition claim, however, DePuy does not even allege that

13  Defendants misappropriated its trade secrets, or that DePuy even has any trade secrets.  (*See*

14  Complaint, Count V.)  Nor does DePuy allege that Defendants have solicited DePuy's customers

15  utilizing DePuy's confidential information.  (*Id.*)

16        More importantly, the Agreement does *not* contain an non-solicitation provision that is

17  narrowly tailored to protect DePuy's trade secrets.  The limited restrictive covenants enforced by

18  California courts to protect an employer's trade secrets are non-solicitation provisions or

19  provisions restricting disclosure of trade secrets, *not* broad covenants not to compete.  *See, e.g.,*

20  *Merrill Lynch*, 2001 WL 283083, at *5 (citing California cases); *Kolani v. Gluska*, 64

21  Cal.App.4th 402, 406 (1998) (same); *Loral Corp. v. Moyes,* 174 Cal.App.3d 268, 279 (1985)

22  (enforcing agreement not to raid former employer's employees).  A covenant not to compete is

23  _____

24  [3] In light of the obvious difference between a best efforts clause and a covenant not to compete, it is
shamelessly misleading for DePuy to argue that because GSB's own agreements with its contractors
25  contain non-compete agreements, Defendants should be estopped from claiming that the covenant not to
compete is invalid. (Opp'n, at 18:12-15.) In fact, the former agreements between GSB and its contractors
26  themselves (submitted by DePuy) do not contain any covenant not to compete. Instead, they contain a
provision requiring the contractor to devote "best efforts" to GSB and not to sell "competitive products."
27  (DePuy Declarations, at Exhs. 6-7.) These are prohibitions that exist only during the life of the
agreements, and thus are not covenants not to compete. Those agreements have no bearing on the issue
28  before the court.

1    markedly different from, and far broader than, a non-solicitation or non-disclosure provision.

2    *See, e.g., Loral Corp.*, 174 Cal.App.3d at 275-76, 278-80 (distinguishing covenants not to

3    compete from non-solicitation or non-disclosure agreements); *Dearborn*, 486 F.Supp.2d at 806

4    (discussing contract with three separate provisions—a covenant not to compete, a covenant not to

5    disclose confidential information, and a covenant not to solicit employees or customers).

6         DePuy does not cite any case, nor does one exist, where a California court has examined a

7    broad covenant not to compete—such as the one in the Agreement—and construed that covenant

8    not to compete as being a mere prohibition against the solicitation of customers on the employer's

9    trade secret customer list. California law does not permit a court to rewrite a covenant not to

10   compete and construe it as a non-solicitation or non-disclosure provision. *Kolani*, 64 Cal.App.4th

11   at 406-07. Because this motion only addresses the validity of the Agreement's broad covenant

12   not to compete, not the issue of whether Defendants violated some hypothetical non-solicitation

13   or non-disclosure provision based on non-existent allegations of trade secret misappropriation, the

14   narrow trade secret exception relied on by DePuy is simply irrelevant here.

15        *ReadyLink Healthcare v. Cotton*, 126 Cal.App.4th 1006 (2005), on which DePuy relies

16   heavily, is also of no help to DePuy. In *ReadyLink*, the plaintiff alleged a separate claim for

17   misappropriation of trade secrets, and the court issued a preliminary injunction against the former

18   employee based on evidence that the former employee misappropriated his former employer's

19   trade secrets. *Id.* at 1010, 1017-21. As a result of such evidence, the court stated that it "need not

20   consider ReadyLink's contract claim." *Id.* at 1022 (noting that "injunctive relief is proper under

21   the tort of misappropriation of trade secrets even without an enforceable confidentiality or

22   nondisclosure agreement"). *ReadyLink*, therefore, similarly provides no support for DePuy's

23   position that a court can rewrite a broad covenant not to compete and construe it as a narrow non-

24   solicitation or non-disclosure provision designed solely to protect the employer's trade secrets.

25        Accordingly, neither the duty of loyalty nor the trade secret exception to California's

26   prohibition against restraints of trade set forth in section 16600 act to save the validity of the

27   Agreement's otherwise unenforceable covenant not to compete.

28

917384.1                                    13

**E.    DePuy Erroneously Claims that Additional Discovery is Essential**

Rule 56(f) requires a party to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (citations omitted). "[F]ailure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." *State of California on Behalf of California Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

The affidavits submitted by DePuy claim that further discovery will lead to "evidence of Defendants' unfair competition and breaches of loyalty," and would also result in "admissions by Defendants that there are potential customers and products concerning which the Agreement does not restrict Defendants' competitive activities and, thus, the Agreement's covenant not to compete is narrow." (Opp'n, at 23-24 (internal citations omitted); *see* Neubauer Decl. ¶¶ 6-9.) These affidavits do not warrant a continuance under Rule 56(f).

DePuy's anticipated evidence supporting the "unfair competition and duty of loyalty claims set forth in its complaint" is completely irrelevant to the motion before the court. For the same reasons set forth in Section II.D, *supra*, evidence to support DePuy's claims for breach of the duty of loyalty or unfair competition has nothing to do with the issue of whether the covenant not to compete is enforceable, and thus will not affect the outcome of this motion.

Evidence about what other career opportunities might be available to Defendants is similarly irrelevant, and thus does not justify relief under Rule 56(f). Federal courts in California have determined that the facial validity of a covenant not to compete is appropriate for summary adjudication. *Latona*, 82 F.Supp.2d at 1093 (citing *Scott*, 732 F.Supp. at 1038). As in those cases, the issue before the court here is not whether Defendants' actions violated the Agreement, "but whether the Agreement, *on its face*, purports to bar [Defendants] from engaging in lawful conduct, in clear derogation of [California Business and Professions Code] section 16600." *Latona*, 82 F.Supp.2d at 1093 (emphasis added). Indeed, as stated, courts will not rewrite an otherwise invalid restrictive covenant. *Kolani*, 64 Cal.App.4th at 406-07. Moreover, it is solely a judicial function to interpret the parties' written contract. *See Rice v. Meridian Ins. Co.*, 751

1    N.E.2d 685, 688 (Ind. App. 2001) (summary judgment on contract interpretation issue is

2    especially appropriate "because construction of a written contract is a question of law");

3    *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 888 ("the interpretation of a written

4    instrument…is essentially a judicial function to be exercised according to generally accepted

5    canons of interpretation").

6        *Latona* is instructive, and refutes DePuy's claim that additional discovery is essential to

7    determine whether the covenant not to compete violates California law.  In *Latona*, the court

8    rejected the defendant's contention that the court could not make an enforceability determination

9    without knowing whether the plaintiff was engaged in competition with it, has threatened to

10   disclose or has in fact disclosed its proprietary information.  *Id.*  "[T]he application of the

11   Agreement is secondary to its facial validity."  *Id.*  As in *Latona*, DePuy's discovery into the

12   issues of whether and to what extent Defendants are allegedly violating the Agreement is

13   secondary to the facial validity of the covenant not to compete—which is an issue of law for the

14   court to decide—and such discovery therefore is not essential to oppose the instant motion.

15       DePuy's Rule 56(f) application should therefore be rejected.

16                          **III.  CONCLUSION**

17       Applying the Restatement § 187 test adopted in both Indiana and California to the facts of

18   this case yields an obvious conclusion—California has a materially greater interest in this

19   litigation, and enforcement of the covenant not to compete would violate California's

20   longstanding public policy against such provisions.  The court, therefore, must disregard the

21   parties' choice of Indiana law for purposes of determining whether the covenant not to compete is

22   enforceable.  Because the covenant plainly violates California law, Defendants are entitled to

23   partial summary judgment.

24   DATED:  March 31, 2008          DOWNEY BRAND LLP

25                          By:_____ /s/ Tory E. Griffin_____
                                        TORY E. GRIFFIN
26                                    Attorney for Defendants
                              GAULT SOUTH BAY, INC. and ROBERT GAULT
27

28

917384.1                                    15

REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT -- Case No. C:07-cv-05897-JW