1  DOWNEY BRAND LLP
   TORY E. GRIFFIN (Bar No. 186181)
2  MEGHAN M. BAKER (Bar No. 243765)
   555 Capitol Mall, Tenth Floor
3  Sacramento, CA  95814-4686
   Telephone: (916) 444-1000
4  Facsimile: (916) 444-2100
   mbaker@downeybrand.com
5  tgriffin@downeybrand.com

6  Attorneys for Defendants GAULT SOUTH BAY,
   INC. and ROBERT GAULT
7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12 | DEPUY ORTHOPAEDICS, INC.,        | Case No. C:07-cv-05897-JW
13 |        Plaintiff,                | **OBJECTIONS TO EVIDENCE SUBMITTED BY DEPUY ORTHOPAEDICS INC. IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**
14 | v.                               |
15 | GAULT SOUTH BAY, INC., a California Corporation, and ROBERT GAULT, | Date: April 28, 2008
16 |                                  | Time: 9:00 a.m.
17 |        Defendants.               |

18   Defendants Gault South Bay ("GSB") and Robert Gault ("Gault") object, as set forth

19 below, to the evidence submitted by Plaintiff DePuy Orthopaedics Inc. ("DePuy") in Support of

20 its Opposition to the Motion for Partial Summary Judgment.

21 **A.   Objections to the Declaration of Bradford C. LaPoint**

22     1.    In Paragraph Fifteen of his Declaration, Bradford LaPoint states:

23         [I]n August 2007, I began receiving calls from sales representatives
           and customers stating that Gault had commenced solicitation of
24         business for DePuy's competitor, Biomet, Inc. . . . . [Specifically]
           [o]n or about August 12, 2007, I received a call from Jake
25         Daneman, a DePuy sales representative working under Gault in the
           South Bay. Daneman told me that Gault had solicited him to work
26         for Biomet. I also learned from Daneman and other sales
           representatives that Gault had approached three other sales
27         representatives working under him, including John Angeleri,
           Candice Polich and Craig Fry, and two other DePuy sale
28         representatives working in adjacent territories to Gault's territory,

917430.1                                1

        Mike Olmes and Euluis Haselden, to solicit them also to leave
        DePuy and work for Biomet.

Defendants object to these statements in Paragraph Fifteen as **hearsay**. Fed. R. Evid. 801. The statements made by Jake Daneman to Bradford LaPoint (as well as any other statements made by other DePuy sales representatives to Mr. LaPoint) were made out of court and are offered by DePuy for the truth of the matter asserted, namely, that Gault solicited DePuy sales representatives to work for a competitor. *See id.* No hearsay exception applies to these statements. Therefore, these statements in Paragraph Fifteen should be stricken as hearsay.

    2.    In Paragraph Sixteen of his Declaration, Bradford LaPoint states:

> On or about August 14, 2007, I received a call from Dr. Steven Woolson, a physician with Stanford University Medical Center, who was an account in Gault's territory who ordered DePuy products through Gault. Dr. Woolson said to me that Gault had solicited him to purchase Biomet products rather than competing DePuy products. Dr. Woolson told me that Gault had promised him that Biomet would make Dr. Woolson his own implant if Dr. Woolson agreed to switch to Biomet products. On or about August 15, 2007, I spoke with Dr. Ed Littlejohn, a physician at Los Gatos Hospital, another account that ordered DePuy products through Gault. Dr. Littlejohn told me that Gault told him he was intending to move to Biomet and had solicited him to purchase Biomet products rather than DePuy products. On August 21, 2007, I spoke with Dr. John Lannin at Stanford University Medical Center who told me that Gault had left him a voicemail, asking him to write a letter stating that he was discontent with DePuy's services and products.

Defendants object to these statements as **hearsay**. Fed. R. Evid. 801. The statements made by Doctors Woolson, Littlejohn and Lannin to Bradford LaPoint were made out of court and are offered by DePuy for the truth of the matter asserted, namely, that Gault solicited physicians on behalf of a competitor. *See id.* No hearsay exception applies to these statements. Therefore, the entire paragraph should be stricken as hearsay.

    3.    In Paragraph Eighteen of his Declaration, Bradford LaPoint states:

> Gault has continued to solicit his former DePuy customers on behalf of Biomet. I learned that Gault arranged and held a meeting on September 10, 2007 with DePuy customers in Gault and Gault South Bay's territory for the purpose of soliciting those customers to purchase product from Biomet.

1  Defendants object to this statement on the following grounds: **lack of foundation, lack of personal knowledge and hearsay**. Fed. R. Evid. 602, 801. The statement lacks foundation because Mr. LaPoint has not explained how he has personal knowledge of the alleged September 10, 2007, meeting between Gault and DePuy customers, or how he has any personal knowledge that Gault has solicited DePuy customers on behalf of Biomet. Id. 602. In fact, based on earlier statements in his Declaration, Mr. LaPoint appears to have "learned" about the supposed September 10, 2007, meeting and the alleged solicitation based on statements made by other sales representatives and/or doctors, all of which are hearsay for which no exception applies. Id. 801. Therefore, this entire paragraph should be stricken for a lack of foundation, lack of personal knowledge and hearsay.

4.  In Paragraph Twenty of his Declaration, Bradford LaPoint states:

> Gault had other options for employment other than accepting a job in which he was directly competing with DePuy. Gault's skills as a salesperson are translatable to other products that do not compete with the products he sold for DePuy. Gault also could have easily found work outside of the territory he serviced on behalf of DePuy. For example, he could have sold the same type of products he sold on behalf of DePuy to hospitals in San Francisco, outside of his territory for DePuy, or to other hospitals in Northern California outside of the limited list of hospitals that were his customers on behalf of DePuy, without violating his agreement. Examples of such potential customers outside of Gault South Bay's territory (as defined by the Agreement) include-hospitals such as UCSF, Alta-Bates-Summit Medical Center, and St. Francis Memorial Hospital, to name just a few.

Defendants object to Paragraph Twenty on the following grounds: **lack of foundation, lack of personal knowledge, speculation, impermissible opinion, and relevancy**. Fed. R. Evid. 401, 602, 701, 801. Preliminarily, the statement lacks foundation because Mr. LaPoint does not have personal knowledge regarding the other options Defendants supposedly had for employment or whether their skills are transferable to the sale of other non-competing products. See Fed. R. Evid. 602. Also, the statement that "Gault also could have easily found work outside of the territory he serviced on behalf of DePuy" and the list of potential hospitals where Gault "could have sold the same products" lacks foundation and constitutes impermissible speculation as well as improper opinion testimony. Id. 602, 701. Additionally, to the extent that Mr. LaPoint

917430.1                                    3

opines about what activities Defendants could have engaged in "without violating [the] Agreement," that testimony also constitutes an impermissible lay opinion. *Id.* 701.

Finally, any evidence about what other opportunities might be available to Defendants is irrelevant for purposes of the Motion for Partial Summary Judgment. Fed. R. Evid. 401. Federal courts in California have determined that the facial validity of a covenant not to compete may be appropriately resolved on summary adjudication. *Latona v. Aetna U.S. Healthcare Inc.*, 82 F.Supp.2d 1089, 1093 (C.D. Cal. 1999); *Scott v. Snelling & Snelling*, 732 F.Supp. 1034, 1038 (N.D. Cal. 1990). As in these two cases, the issue here before this court is "whether the Agreement, on its face, purports to bar [Defendants] from engaging in lawful conduct, in clear derogation of [California Business and Professions Code] section 16600." *Latona*, 82 F.Supp.2d at 1093. Thus, on a motion for summary adjudication, "the application of the Agreement is secondary to its facial validity." *Id.* Therefore, any evidence or testimony regarding the application or effect of the Agreement, or what alternative opportunities are available to Defendants under that Agreement, are irrelevant for purposes of the Motion for Partial Summary Judgment.

**B.     Objections to the Declaration of Dwight Lueck**

   1.   In Paragraph Three of his Declaration, Dwight Lueck states:

> Shortly before this action was transferred from Indiana, Defendants made a document production on or about October 31, 2007. I received that document production from Defendants' counsel of record in the action before it was transferred from Indiana. A true and correct copy of the October 30, 2007 cover letter accompanying the production that I received from Defendants' counsel of record, Freeborn & Peters LLP, is attached hereto as Exhibit 5. I have reviewed the production and among the documents produced by Defendants are the following:
>
> - Contract For Services made on January 1, 2004 between South Bay, Inc. and Candice Polich number-stamped GSB0024-29. It provides at p. GSB0029 that "Contractor [i.e., Candice Polich] agrees not to engage in the sales of 'competitive products.'" Bracket added. A true and correct copy of this document, GSB0024- 29, is attached hereto as Exhibit 6.
>
> - Contract For Services made on August 15, 2004 between South Bay, Inc. and Craig Frey number-stamped GSB0030-35. It provides at p. GSB0035 that "Contractor [i.e., Craig

917430.1                                              4

1
2
 Frey] agrees not to engage in the sales of 'competitive products.'" Bracket added. A true and correct copy of this document, GSB003035, is attached hereto as Exhibit 7.

3
4
5
6
 • An August 24, 2007 (Friday) email from Steve Woolson to Bob Gault, numberstamped [sic] GAULT0008 reflecting that Mr. Gault asked Dr. Woolson to switch prostheses or companies on Wednesday August 22, 2007. A true and correct copy of this document, GAULT0008, is attached hereto as Exhibit 8.

Defendants object to these statements in Paragraph Three, as well as Exhibits 6 through 8, on the following grounds: **lack of foundation, lack of personal knowledge, lack of authentication, misleading and irrelevant.** Fed. R. Evid. 401, 602, 901-902. Preliminarily, Mr. Lueck does not have personal knowledge of these three exhibits, two of which are contracts between GSB and its independent contractors, and the third of which is an email from Dr. Woolson to Gault. *See id.* 602. Additionally, Mr. Lueck failed to provide any foundation demonstrating that the exhibits are what he claims them to be, thus the documents have not been properly authenticated and are inadmissible. *See id.* 901-902.

With respect to Exhibits 6 through 7, which are the contracts between GSB and its sales representatives, DePuy claims that these documents contain covenants not to compete that limit the ability of GSB sales representatives to compete after termination of their contracts. However, a cursory review of these contracts reveal that they do not contain any covenants not to compete. Rather, they only contain a provision requiring the contractor to devote his or her "best efforts" to GSB and to not sell "competitive products," which are prohibitions that exist only *during the life of the agreements*, not after termination of the agreements like covenants not to compete. Therefore, since the documents do not contain covenants not to compete as DePuy so brazenly claims, its characterizations of those documents are misleading and disingenuous.

Finally, with respect to Exhibit 8, an e-mail that Gault received from Dr. Woolson *prior to the termination* of the Agreement with DePuy, this document is not relevant for purposes of the Motion for Partial Summary Judgment. *See* Fed. R. Evid. 401. The Motion focuses only on the validity of the covenant not to compete in the Agreement, which limits the ability of Defendants to compete *after* termination of the Agreement, not on the best efforts clause, which applies only

917430.1

5

1  to the conduct of Defendants *prior* to the termination of the agreement.  Further, Defendants do
2  not seek adjudication on the claims DePuy asserts for breach of duty and unfair competition,
3  which also focus on the conduct of Defendants *prior* to the termination of the Agreement.  Again,
4  the Motion only addresses the validity of the covenant not to compete, which by its terms only
5  applies *after* the Agreement was terminated.  Therefore, evidence relating to the conduct of
6  Defendants prior to termination, which includes Exhibit 8, is not relevant to the Motion for Partial
7  Summary Judgment.  *See* Reply at Part II.C.

DATED: March 31, 2008                    DOWNEY BRAND LLP


                                         By:        /s/ Tory E. Griffin
                                                TORY E. GRIFFIN
                                                Attorney for Defendants
                                                GAULT SOUTH BAY, INC. and ROBERT
                                                GAULT